## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

KEO RATHA, ET AL.,

*Plaintiffs-Appellants*,

v.

RUBICON RESOURCES, LLC,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Central
District of California, Case No. 2:16-cv-04271-JFW

## BRIEF OF MEMBERS OF CONGRESS REPRESENTATIVE NADLER, ET AL., AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS

Margaret Lee
Human Trafficking Legal Center
1030 15th St. NW #104B
Washington, D.C. 20005
(202) 849-5708
mlee@htlegalcenter.org

Aaron Halegua
  *Counsel of Record*
AARON HALEGUA, PLLC
524 Broadway, 11th Floor
New York, NY 10012
(646) 854-9061
 ah@aaronhalegua.com

*Attorneys for Amici Curiae*

# TABLE OF CONTENTS

**Page**

INTEREST OF AMICI ................................................................... 1

CERTIFICATE OF AUTHORSHIP ....................................... 4

ARGUMENT .................................................................................. 5

    I.     Congress Enacted a Comprehensive Statutory Scheme to Combat Forced Labor and Human Trafficking ................................................. 6

    II.    The Civil Remedy Congress Enacted Is Coextensive with the TVPRA's Criminal Provisions ............................................. 9

    III.   Congress Acted Quickly to Clarify the Scope of Attempt Liability After the Court's 2022 Ruling .......................................... 10

CONCLUSION ................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Thompson*,
   374 F.3d 253 (4th Cir. 2004)……………………………………………13

*Nestle USA, Inc. v. Doe*,
   141 S. Ct. 1931 (2021)……………………………………………………7

*Ratha v. Phatthana Seafood*,
   35 F.4th 1159 (9th Cir. 2022)…………………………………………...5, 10

*Ricchio v. McLean*,
   853 F.3d 553 (1st Cir. 2017)…………………………………………......10

*Roe v. Howard*,
   917 F.3d 229 (4th Cir. 2019)……………………………………………10

**Statutes**

18 U.S.C. § 1589…………………………………………………………..9

18 U.S.C. § 1590…………………………………………………………..9

18 U.S.C. § 1591…………………………………………………………...9

18 U.S.C. § 1595………………………………………………………*passim*

18 U.S.C. § 1596…………………………………………………………...8

19 U.S.C. § 1307…………………………………………………………12

Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117-347,
   136 Stat. 6199 (2023)……………………………………...……1, 5, 6, 13

Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No.
   108-193, 117 Stat. 2875……………………………………………..8, 9

Victims of Trafficking and Violence Protection Act of 2000, Div. A.,
Pub. L. No. 106-386, 114 Stat. 1464……………………………….............8

William Wilberforce Trafficking Victims Protection Reauthorization
Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044…………………………8, 9

**Legislative Authorities**

168 Cong. Rec. H10018 (daily ed. Dec. 22, 2022)…………………………..13

168 Cong. Rec. S9658 (daily ed. Dec. 20, 2022)…………………………….13

*Legal Options to Stop Human Trafficking: Hearing Before the
Subcomm. on Human Rights & the Law of the S. Comm. on the
Judiciary*, 110th Cong. 18 (2007)…………………………………………...9

*Int'l Trafficking in Women and Children: Hearing Before the Subcomm.
On Near E. & S. Asian Aff. of the S. Comm. on Foreign Rel.*,
106th Cong. 56, at 15 (2000)……………………………………………..7–8

**Other Authorities**

Brief of Members of Congress Senator Blumenthal, et al., as
*Amici Curiae* Supporting Respondents, *Nestle USA, Inc. v. Doe I*, Nos. 19-416,
19-453, 2020 WL 6322316 (Oct. 21, 2020)………………………………7, 8, 9

Brief for Senator Robert Menendez, et al. as *Amici Curiae* in Support of
Plaintiffs-Appellees and Affirmance, *Rodriguez v. Pan American
Health Org.*, No. 20-7114, Dkt. No. 1908938
(D.C. Cir., Aug. 3, 2021)…………………………………………………..9–10

Brief of Human and Workers' Rights Orgs. as *Amici Curiae* in Support of
Plaintiffs-Appellants' Petition for Rehearing en banc,
*Ratha v. Phatthana Seafood*, No.18–55041,
Dkt. No. 97 (9th Cir., Apr. 21, 2022) …………………………...………………12

# INTEREST OF AMICI[1]

This brief is filed on behalf of the following members of Congress:

Congressman Jerrold Nadler is the Ranking Member of the House Judiciary Committee and shepherded the passage of the Abolish Trafficking Reauthorization Act of 2022 (ATRA).

Congresswoman Rosa DeLauro is the Ranking Member of the House Appropriations Committee and the Ranking Member of its Labor, Health and Human Services, and Education Appropriations Subcommittee.

Congresswoman Veronica Escobar is a Member of the House Judiciary Committee, House Armed Services Committee, House Ethics Committee, and House Democratic Policy and Communications Committee.

Congresswoman Sheila Jackson Lee is a Member of the House Judiciary Committee and Ranking Member of its Subcommittee on Crime and Federal Government Surveillance, the House Homeland Security Committee, and the House Budget Committee.

Congressman Ted Lieu serves as Vice Chair for the Democratic Caucus and is a Member of the House Judiciary Committee, House Foreign Affairs Committee, and the House Science, Space and Technology Committee.

---

[1] Counsel for appellants and appellees have consented to the filing of this *amici* brief.

1

Congresswoman Susan Wild is a Member of the House Foreign Affairs Committee, the House Education and Labor Committee, the House Ethics Committee, and the Congressional-Executive Commission on China.

For more than twenty years, Congress has fought tirelessly to combat human trafficking and forced labor worldwide. Since first enacting the Trafficking Victims Protection Act of 2000, Congress has repeatedly strengthened it through successive reauthorizations, resulting in a comprehensive and multifaceted statutory scheme.[2] These laws are the result of years of committee work, legislation, and advocacy. The laws seek to ensure that those subjected to forced labor will have meaningful access to remedy and that the United States will not be a safe market for goods made with forced labor. Congress has expanded the statutory scheme, codified primarily in Chapter 77, Title 18 (Peonage, Slavery, and Trafficking in Persons), with each reauthorization.

Despite the clear intent of Congress, both in the plain language of the statutory text and its extensive legislative history, last year this Court interpreted the TVPRA to be narrower than Congress intended by finding that civil liability did not attach to those who attempted to knowingly benefit from participation in a venture involving forced labor. Understanding the wide-ranging and potentially

---

[2] *Amici* hereinafter refer to the Trafficking Victims Protection Act of 2000 along with its subsequent reauthorizations and amendments as the "TVPRA."

disastrous impact of the ruling, Congress acted swiftly to correct this misunderstanding. Less than nine months later and in direct response to the ruling, Congress unanimously passed a "Technical and Clarifying" amendment to 18 U.S.C. § 1595 to make explicit that attempt liability for criminal acts was, and always had been, coextensive with the civil remedy. Congress, including *Amici*, acted to clarify this Court's interpretation of the TVPRA as well as make clear that such action was only to reaffirm the scope of the liability that already existed under the TVPRA. Despite Congress's quick and purposeful action, the district court refused to reopen the plaintiffs' case.

Because the district court has twice misinterpreted Congress's intent, *Amici* submit this brief to ensure that the TVPRA is interpreted correctly. As the People's elected representatives and the legislative arm of the United States government, *Amici* have an interest in ensuring that the Court is properly interpreting the scope of its statutory schemes and not erroneously limiting the scope of relief that Congress intended.

## CERTIFICATE OF AUTHORSHIP

Under Federal Rule of Appellate Procedure 29(a)(4)(E), *Amici* certify that no counsel for a party authored this brief in whole or in part, and no party or counsel for a party contributed money intended to fund the preparation or submission of this brief. No one other than *Amici*, their members, or their counsel contributed money intended to fund the preparation or submission of this brief.

**ARGUMENT**

Last year, this Court held that civil liability under the TVPRA does not extend to those who attempt to benefit from forced labor. *Ratha v. Phatthana Seafood*, 35 F.4th 1159, 1176 (9th Cir. 2022). In so doing, this Court found that the plaintiffs, Cambodian villagers alleged to have been trafficked and forced into labor in a Thai seafood factory, could not receive any remedy from the defendant Rubicon Resources, LLC ("Rubicon"), which sought to sell that seafood in the United States. The Court reached this conclusion not because the plaintiffs had failed to sufficiently allege that they were subjected to forced labor or because they had failed to provide evidence that Rubicon knew that the two tons of shrimp that it attempted to sell to Walmart in the United States was produced with forced labor. Rather, the Court reached that conclusion solely because Walmart turned the shrimp away due to its suspicions that the shrimp had been produced with forced labor. The Court found that Rubicon had only *attempted* to benefit and, therefore, could not be held liable, even though the abuse and exploitation alleged by the plaintiffs had already been completed. *Ratha*, 35 F.4th at 1176.

In response to this Court's ruling, Congress acted swiftly and unanimously to pass a technical and clarifying amendment to the TVPRA as part of the Abolish Trafficking Reauthorization Act of 2022 (ATRA). The amendment makes clear that the civil remedy provided by § 1595 applies—as it always has—to attempts to

benefit from a forced labor venture.  *See* 18 U.S.C. § 1595 ("An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, *or attempts or conspires to benefit*, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) . . . .") (emphasis added).  Congress carefully and intentionally titled the amendment as a "Technical and Clarifying Update to Civil Remedy" to make plain that it was a mere clarification of what the law has always been.  On January 5, 2023, President Biden signed ATRA into law.  Pub. L. No. 117-347, 136 Stat. 6199 (2023).

Despite Congress's quick and deliberate actions to clarify this Court's misinterpretation of the TVPRA, the district court denied the plaintiffs' motion to reopen the matter on the ground that the amendment was a substantive expansion of liability and could not apply retroactively.  Because the district court's decision finding that the technical and clarifying amendment expands substantive liability and thus does not apply retroactively is erroneous, the district court's decision should be reversed.

I.    **Congress Enacted a Comprehensive Statutory Scheme to Combat Forced Labor and Human Trafficking**

Over the course of two decades, Congress has repeatedly expanded the scope of the TVPRA to ensure that it is a meaningful tool to combat the

transnational and complex problem of human trafficking. Congress has carefully developed this strategy, relying on detailed evidence gathering and extensive hearings. An in-depth backgrounder on Congress's efforts was submitted to (and relied upon by) the Supreme Court in *Nestle USA, Inc. v. Doe*, Nos. 19-416, 19-453, by 21 Members of Congress, including the relevant bill sponsors and committee chairs. *See* Brief of Members of Congress Senator Blumenthal, et al., as Amici Curiae Supporting Respondents, *Nestle USA, Inc. v. Doe*, Nos. 19-416, 19-453, 2020 WL 6322316 (Oct. 21, 2020) (hereinafter, "*Nestle* Members Br."); *see also Nestle*, 141 S. Ct. 1931, 1940 (2021) (Thomas, J., citing *Nestle* Members Br. at 9, 13).

Congress has long recognized that trafficking has emerged as "the dark side of globalization"—a transnational crime requiring global and far-reaching solutions. *Nestle* Members Br. at 9 (quoting H.R. Rep. No. 101-430, Pt. 1, at 33 (2007)). Forced labor and trafficking flourish because they are highly profitable activities—generating more than $150 billion in profits annually—and, thus, reducing the profitability of these activities is a critical piece of any plan to combat trafficking. *Id.* at 19. Through its extensive evidence gathering, Congress also came to understand the need to provide survivors of forced labor with an avenue to vindicate their rights and be compensated for their suffering. *Id.* at 20–21; *see also Int'l Trafficking in Women and Children: Hearing Before the Subcomm. On Near*

*E. & S. Asian Aff. of the S. Comm. on Foreign Rel.*, 106th Cong. 56, at 15 (2000) (statement of Hon. Frank E. Loy).  Accordingly, Congress identified the need for the TVPRA to be an expansive tool with a strong civil remedy and has continuously broadened its scope in each and every reauthorization of the statute.  The original statute was enacted in 2000 and, among other things, it defined and expanded criminal penalties for human trafficking, forced labor, and other modern-slavery practices at the federal level.  *See* Victims of Trafficking and Violence Protection Act of 2000, Div. A., Pub. L. No. 106-386, 114 Stat. 1464.  In the 2003 reauthorization, Congress created a civil remedy that was coextensive with certain criminal predicates in the statute, including forced labor.  *See* Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, 117 Stat. 2875.

Recognizing the pervasive issue of forced labor in global supply chains, Congress acted in 2008 to expand criminal and civil liability under 18 U.S.C. § 1595 to include those who knowingly benefit from participation in a venture involved in forced labor and human trafficking.  William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044; *see also Nestle* Members Br. at 24–25.  That same year, Congress also added 18 U.S.C. § 1596, which provides extraterritorial jurisdiction for violations of the TVPRA.  *Id.*  These expansions to the civil remedy provision grew from Congress's concern over the fact that "so few civil lawsuits" had been filed under

the TVPRA.  *See Nestle* Members Br. at 25–26 (quoting *Legal Options to Stop Human Trafficking: Hearing Before the Subcomm. on Human Rights & the Law of the S. Comm. on the Judiciary*, 110th Cong. 18 (2007) (statement of Sen. Durbin)).

## II. The Civil Remedy Congress Enacted Is Coextensive with the TVPRA's Criminal Provisions

When Congress created the civil remedy in 2003, the provision cited to three criminal predicates—§§ 1589, 1590 and 1591—and made civil liability coextensive with those offenses.  *See* Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, § 4, 117 Stat. 2875, 2878 ("An individual who is a victim of a violation of section 1589, 1590, or 1591 of this chapter may bring a civil action against the perpetrator . . . .").  In 2008, Congress expanded the scope of criminal and civil liability using the same criminal predicate structure: amending the civil remedy to apply to "any violation of this chapter." William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 221, 122 Stat. 5044, 5067.

Congress's intention has always been that the civil remedy provision under the TVPRA be coextensive with the criminal liability provisions.  *See Nestle* Members Br. at 33 ("§ 1595 establishes civil liability coterminous with the TVPRA's criminal provisions."); *see also* Brief for Senator Robert Menendez, et al. as *Amici Curiae* in Support of Plaintiffs-Appellees and Affirmance, *Rodriguez v. Pan American Health Org.*, No. 20-7114, Dkt. No. 1908938, at 4 (D.C. Cir.,

Aug. 3, 2021) ("The TVPRA also provides victims of human trafficking and forced labor a private civil cause of action coextensive with its criminal provisions."). Indeed, every other circuit to address this question correctly recognized that the TVPRA's civil remedy provision applies coextensively with the criminal provisions—including on the specific issue of an "attempt" to knowingly benefit from a forced labor venture. *See Roe v. Howard*, 917 F.3d 229, 243 (4th Cir. 2019) ("[T]he text of § 1595 shows that it applies coextensively with its predicate offenses, omitting any qualifying or modifying language . . . ."); *Ricchio v. McLean,* 853 F.3d 553, 557–58 (1st Cir. 2017) (finding that the complaint properly pled claims for both attempting and conspiring to benefit from participation in a venture involving forced labor). Nevertheless, this Court found that the civil remedy provision did not impose liability on those who attempt to benefit from participation in a venture engaged in forced labor.

## III. Congress Acted Quickly to Clarify the Scope of Attempt Liability After the Court's 2022 Ruling

After this Court held that attempt liability did not extend to certain civil claims under § 1595 because it "presumed" that this was the intent of Congress, *Ratha*, 35 F.4th at 1176, Congress was promptly made aware of this misinterpretation of the scope of the TVPRA's civil remedy. Given the intention to establish broad civil liability for forced labor victims that is coextensive with criminal liability under the TVPRA—a fact recognized by all other circuit courts

that previously addressed this issue—members of Congress were surprised and disappointed by this Court's holding.

The Court's holding in *Ratha* was particularly troubling to members of Congress because *Ratha* is precisely the type of case that Congress sought to reach with the 2008 amendments. As alleged, the majority owner of Phatthana Seafood, the factory where the plaintiffs allege that they were subjected to forced labor, was part of a group of Thai seafood producers who created Rubicon to expand seafood sales into the United States. Thus, as alleged, Rubicon was created as a vehicle to sell shrimp manufactured at a discount with forced labor into the U.S. markets for significant profits. This venture, in which Rubicon is alleged to have knowingly sought to benefit by bringing two tons of shrimp allegedly made with forced labor into the United States, is precisely the type of conduct that Congress sought to make actionable. Without holding entities such as Rubicon accountable, U.S. consumers will unwittingly become purchasers of goods made with forced labor. Moreover, legitimate, law-abiding U.S. businesses may be driven out of the market because they simply cannot compete with the low prices of goods made with forced labor. In fact, in this case, the plaintiffs presented the district court with a declaration from the President of the Louisiana Shrimp Association, in which he detailed the negative effects of shrimp produced with forced labor in Thailand being sold in the market in the United States, including significant price declines of

shrimp in the domestic market with which Louisiana shrimpers struggle to compete. 6-ER-1392–1397 (Declaration of Acy Cooper). None of these compelling reasons to hold Rubicon liable are undone simply because Walmart rightly refused to accept the shrimp made with forced labor.

Congress also understands the potential impact that this Court's ruling on the scope of attempt liability could have on other efforts to combat forced labor. For example, Section 307 of the Tariff Act provides for the seizure of goods made by forced labor to deter and punish those who attempt to profit from the importation of such products before they actually do. 19 U.S.C. § 1307; *see also* Brief of Human and Workers' Rights Orgs. as *Amici Curiae* in Support of Plaintiffs-Appellants' Petition for Rehearing en banc, *Ratha v. Phatthana Seafood*, No.18–55041, Dkt. No. 97, at 6–8 (9th Cir., Apr. 21, 2022). Pursuant to this authority, U.S. Customs and Border Protection ("CBP") has issued dozens of "Withhold and Release Orders" (WROs) against entities that are attempting to import products made with forced labor. Indeed, since 1991, CBP has issued 35 WROs against firms in China, including many in the Xinjiang region. However, under this Court's ruling, every time that CBP intercepts goods made with forced labor (i.e., succeeds in eliminating the financial benefit that the importer hoped to derive from a forced labor venture), the workers forced to produce that good would be stripped of their right to pursue a civil remedy against that importer. The workers would be

deprived of any remedy even though they have already suffered the harm of forced labor simply because the importer ultimately did not actually benefit. Congress never intended to create a civil remedy in which the worst actors—those who have been identified by CBP—are shielded from liability.

Accordingly, after this Court's ruling, Congress acted promptly to ensure that victims of forced labor are not wrongfully deprived of the ability to seek compensation for their suffering. Just nine months after this Court's decision, Congress amended the TVPRA to reaffirm what was always the case—that § 1595 applies to attempts to benefit from a forced labor venture. *See* Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117-347, § 102, 136 Stat. 6199 (2023). The amendment itself was titled a "Technical and Clarifying Update to Civil Remedy" to make clear that the added language was intended to eliminate any alleged ambiguity as to what Congress had always intended and was not a substantive expansion of liability. *See* 168 Cong. Rec. H10018 (daily ed. Dec. 22, 2022); 168 Cong. Rec. S9658 (daily ed. Dec. 20, 2022).

Indeed, the title of the amendment was deliberately chosen because members of Congress were aware that federal courts have found this terminology to be the most convincing evidence of the clarifying nature of an amendment. *See Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004) ("Most significant to our determination here, Congress formally declared in the titles of the relevant

subsections of [Medicare Prescription Drug, Improvement, and Modernization Act of 2003] that the amendments of [Medicare Secondary Payer Provisions] were 'clarifying' and 'technical'.").  In labeling the amendment as "Technical and Clarifying," Congress intended to signal that the amendment was to apply retroactively in accordance with the well-established case law on clarifying amendments, as discussed at length in the Appellants' opening brief.  Appellants Br. at 23–37.  Notably, this technical and clarifying amendment was passed unanimously—without objection by any Member—less than nine months after this Court's decision in *Ratha*.

Congress could not have made a clearer statement of the intended scope of the TVPRA's civil remedy.  After this Court's ruling on attempt liability, Congress acted immediately in response, adding the precise language that this Court had claimed was missing, and adding the specific language—"Technical and Clarifying"—that makes clear Congress's intent to clarify a misinterpretation by a single court of the plain language of the statute.  Despite these efforts, the district court disregarded Congress's clear intention to reaffirm the breadth of the civil remedy and refused to apply the technical and clarifying amendment to 18 U.S.C. § 1595 retroactively.  This erroneous decision should be reversed.

## CONCLUSION

Congress acted swiftly to reaffirm the intended scope of the TVPRA after this Court found the scope of attempt liability under the TVPRA's civil remedy to be narrower than Congress intended. Congress removed any ambiguity and made plain that Congress always intended for the civil remedy to be coextensive with the criminal predicates in the TVPRA. The district court erred when it failed to recognize the 2023 Amendment for what it was—an explicit statement of the scope of civil liability that has existed since 2008. This Court should abide by the clear intent of Congress and reverse the holding of the district court.

Respectfully submitted,

*/s/ Aaron Halegua*

Margaret Lee
The Human Trafficking Legal Center
1030 15th St. NW #104B
Washington, D.C. 20005
(202) 849-5708
mlee@htlegalcenter.org

Aaron Halegua
  *Counsel of Record*
AARON HALEGUA, PLLC
524 Broadway, 11th Floor
New York, NY 10012
(646) 854-9061
 ah@aaronhalegua.com

*Attorneys for Amici*

Dated: August 21, 2023

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** _____23-55299_____

    I am the attorney or self-represented party.

    **This brief contains** _____3,160_____ **words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

    I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[x] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** */s/ Aaron Halegua*          **Date:** 8/21/2023

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Respectfully submitted,

*/s/ Aaron Halegua*
AARON HALEGUA PLLC