# In the United States Court of Appeals for the Ninth Circuit

Keo Ratha, et al.,
*Plaintiffs-Appellants*
v.
Rubicon Resources, LLC
*Defendant-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
No. 23-55299

**BRIEF OF HUMAN AND WORKERS' RIGHTS ORGANIZATIONS AND U.S. SHRIMP PRODUCERS AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS**

John Burton
THE LAW OFFICES OF JOHN BURTON
128 North Fair Oaks Avenue
Pasadena, California 91103
jb@johnburtonlaw.com
(626) 449-8300

Allison Gill
Johanna Lee
GLOBAL LABOR JUSTICE-
INTERNATIONAL LABOR
RIGHTS FORUM
1634 I St. NW, Suite 1000
Washington, DC 20006
allison@ilrf.org
(202) 347-4100

Avery Kelly
Alicia Brudney
CORPORATE ACCOUNTABILITY
LAB
6214 N Glenwood Ave.
Chicago, IL 60660
avery@corpaccountabilitylab.org
allie@corpaccountabilitylab.org
(773) 346-554

*Attorneys for Amici Curiae*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amici curiae* hereby submit the following corporate disclosure statements:

**Amnesty International** is a not-for-profit organization. It has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of Amnesty International.

**Centro de los Derechos del Migrante, Inc.** ("CDM") is a not-for-profit organization. It has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of CDM.

**Corporate Accountability Lab** ("CAL") is a not-for-profit organization. It has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of CAL.

The **Environmental Justice Foundation** ("EJF") is a not-for-profit organization. It has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of EJF.

**Freedom Network USA** ("FNUSA") is a not-for-profit organization. It has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of FNUSA.

**Global Labor Justice-International Labor Rights Forum** ("GLJ-ILRF") is a not-for-profit organization. It has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of GLJ-ILRF.

**Greenpeace USA** ("GPUS") is a not-for-profit organization. It has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of GPUS.

**Human Rights and Development Foundation** ("HRDF") is a not-for-profit organization. It has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of HRDF.

The **Human Trafficking Institute** ("HTI") is a not-for-profit organization. It has no parent corporation, does not issue stock, and no publicly held corporation owns any portion of HTI.

The **International Corporate Accountability Roundtable** ("ICAR") is a fiscally sponsored project of the Tides Foundation, a not-for-profit organization. The Tides Foundation has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of it.

The **Justice Defense Fund** ("JDF") is a not-for-profit organization. It has no parent corporation, does not issue stock, and no publicly held corporation owns any portion of JDF.

The **Labor Rights Foundation** ("LRF") is an arm of the Migrant Workers Rights Network ("MWRN"), which is a not-for-profit organization. It has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of MWRN.

The **Lantos Foundation for Human Rights & Justice** ("LFHRJ") is a not-for-profit organization. It has no parent corporation or company, it does not issue stock, and no publicly held corporation or company owns any portion of LFHRJ.

The **Law Office of Mary Joyce Carlson** is a for-profit corporation. It has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of it.

**Oxfam America** is a not-for-profit organization. It has no parent corporation, does not issue stock, and no publicly held corporation owns any portion of Oxfam America.

**Share (Asia Pacific) Limited** ("Liberty Shared") is a not-for-profit organization. It has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of Liberty Shared.

The **Solidarity Center** is a not-for-profit organization. It has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of the Solidarity Center.

The **Southern Shrimp Alliance** ("SSA") is a not-for-profit organization. It has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of SSA.

The **State Enterprises Workers' Relations Confederation** ("SERC") is the national labor organization in Thailand. It is a not-for-profit organization. It has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of SERC.

**Transparentsea Farm** is a U.S. for-profit company. It has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of it.

The **Uyghur Human Rights Project** ("UHRP") is a not-for-profit organization. It has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of UHRP.

The **Worker Rights Consortium** ("WRC") is a not-for-profit organization. It has no parent corporation, it does not issue stock, and no publicly held corporation owns any portion of the WRC.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... vi

INTEREST OF *AMICI CURIAE* .............................................................. 1

CERTIFICATE OF AUTHORSHIP ........................................................... 6

SUMMARY OF ARGUMENT .................................................................. 7

ARGUMENT ...........................................................................................10

**I.        Rubicon Knew, Recklessly Disregarded, and/or Should Have Known of the Human Trafficking and Forced Labor Occurring at Phatthana's Factory when it Attempted to Sell Shrimp Produced There to Walmart.** .........................................................................................**10**

A.   Human Rights Advocates Addressed Allegations of Labor Abuses at Phatthana's Factory Directly with Rubicon's Venture Partners and Customers. ... 10

B.   Knowledge of Human Trafficking and Forced Labor in the Thai Shrimp Industry was Widespread Before and During the Time in Question. ..................... 12

1.   Reports by Human Rights Organizations ................................. 13

2.   Report by the International Labour Organization ................................... 18

3.   Reports by the U.S. Government ............................................. 20

4.   Acknowledgment by Industry ................................................. 24

**II.       Accountability for Those Who Attempt to Reap Benefits from Forced Labor is Integral to the U.S. Government's Comprehensive Strategy to Combat Human Trafficking and Forced Labor Around the World............25**

A.   Attempt Liability Under the TVPRA is and has been Essential to the U.S. Government's Comprehensive Strategy to Combat Forced Labor Around the World. ................................................................................. 25

B.   Failure to Recognize Attempt Liability under the TVPRA Helps Perpetuate Forced Labor in Global Supply Chains. ............................................... 28

C.   Attempt Liability is Critical for Victims' Access to Justice. ......................... 30

CONCLUSION .......................................................................................31

# TABLE OF AUTHORITIES

**Cases**

*Ratha v. Phatthana Seafood*,
  35 F.4th 1159 (9th Cir. 2022) ..............................................................12

*Rodriguez v. Pan Am. Health Org.*, 29 F.4th 706 (D.C. Cir. 2022) .......................29

**Statutes**

18 U.S.C. § 1595 ............................................................................ 28, 30

18 U.S.C. § 1596 ................................................................................30

19 U.S.C. § 1307 .............................................................................9, 26

Abolish Trafficking Reauthorization Act of 2022,
  Pub. L. No. 117-347, 136 Stat. 6199 (2023)................................. 26, 30

Trafficking Victims Protection Reauthorization Act of 2003,
  Pub. L. No. 108-193, 117 Stat. 2875 (2003) ............................... 20, 21

Trafficking Victims Protection Reauthorization Act of 2005,
  Pub. L. No. 109-164, 119 Stat. 3558 (2005) .......................................23

Trafficking Victims Protection Act of 2000, Div. A.,
  Pub. L. No. 106-386, 114 Stat. 1464 (2000)...................................7, 20

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008,
  Pub. L. No. 110-457, 122 Stat. 5044 (2008)................................ *passim*

**Other Authorities**

Alastair Leithead, *Burmese 'Slavery' Fishermen are Trafficked and Abused*, BBC
  (Apr. 25, 2011), https://www.bbc.com/news/world-asia-pacific-12881982 ...... 13

Brief of Members of Congress Senator Blumenthal, et al., as Amici Curiae
  Supporting Respondents, *Nestlé USA, Inc. v. Doe I*, 141 S. Ct. 1931 (2021) ... 28

Ed Cropley, *Child Laborers Toil in Thai Seafood Factories*, Reuters (Apr. 24, 2007), https://www.reuters.com/article/us-thailand-childlabour/child-laborers-toil-in-thai-seafood-factories-idUSBKK26683020070424 .............................. 13

Environmental Justice Foundation, *Smash & Grab: Conflict, Corruption and Human Rights Abuses in the Shrimp Farming Industry* (2003), https://ejfoundation.org/resources/downloads/smash_and_grab.pdf .................. 14

Human Rights Watch, *From the Tiger to the Crocodile: Abuse of Migrant Workers in Thailand* (2010), https://www.hrw.org/sites/default/files/reports/thailand0210webwcover_0.pdf ... .................................................................................................................. 16, 17

*In Thai Shrimp Industry, Child Labor and Rights Abuses Persist*, N.Y. Times (Apr. 25, 2007), https://www.nytimes.com/2007/04/25/business/worldbusiness/25iht-baht.4.5438244.html .......................................................................... 13

International Labour Organization, *About the ILO*, https://www.ilo.org/global/about-the-ilo/lang--en/index.htm ............................ 9

International Labour Organization, *The Mekong Challenge–Underpaid, Overworked and Overlooked: The Realities of Young Migrant Workers in Thailand* xvii (2006), https://www.ilo.org/wcmsp5/groups/public/---asia/---ro-bangkok/documents/publication/wcms_bk_pb_67_en.pdf ............................... 18

*International Trafficking in Women and Children: Hearing Before the Subcomm. on Near E. & S. Asian Aff. of the S. Comm. on Foreign Rel.*, 106th Cong. 78 (2000) (statement of Hon. William R. Yeomans) ........................................................ 28

Jason Motlagh, *Bad Cocktail: Burmese Migrants and the Thai Shrimp Industry*, Pulitzer Center (Nov. 2, 2012), http://pulitzercenter.org/reporting/bad-cocktail-burmese-migrants-and-thai-shrimp-industry .................................................... 13

Letter from Arvind Ganesan, Director, Business and Human Rights Division, Human Rights Watch, to Phatthana Seafood Co. Ltd. (Apr. 20, 2012), https://www.hrw.org/news/2012/04/20/letter-phatthana-seafood-co-ltd............ 11

Letter from Arvind Ganesan, Director, Business and Human Rights Division, Human Rights Watch, to Mr. Mike Duke, President of Walmart Stores, Inc.

(Apr. 16, 2012), https://www.hrw.org/news/2012/04/16/letter-mr-mike-duke-president-walmart-stores-inchttps://www.hrw.org/news/2012/04/16/letter-mr-mike-duke-president-walmart-stores-inc ...................................................... 11, 12

Letter from Arvind Ganesan, Director, Business and Human Rights Division, Human Rights Watch, to Mr. Mike Duke, President of Walmart Stores Inc. (June 1, 2012), https://www.hrw.org/news/2012/06/01/response-letter-mr-mike-duke-president-walmart-stores-inc............................................................................... 12

Open Letter to Thai Prime Minister – Request to Eliminate Human Trafficking and Forced Labour in the Thai Fishing Industry, Human Rights and Development Foundation (Apr. 29, 2011), http://hrdfoundation.org/?p=478..................... 17, 18

Patrick Winn, *Is your Seafood Harvested by Slaves?*, The World (Orig. pub. Nov. 9, 2009, ed. May 30, 2010) https://theworld.org/stories/2009-11-29/your-seafood-harvested-slaves ...................................................................................... 13

Paul Eckert, *Shrimp Industry Blasted for Modern Day Slavery*, Reuters (Apr. 23, 2008), https://www.reuters.com/article/uk-asia-shrimp-usa/shrimp-industry-blasted-for-modern-day-slavery-idUKN2342204020080423 ...................... 13, 15

Solidarity Center, *The Degradation of Work: The True Cost of Shrimp* (2008), https://www.solidaritycenter.org/wp-content/uploads/2014/12/pubs_True_Cost_of_Shrimp.pdf.................... 14, 15, 16

Southern Shrimp Alliance, *Know Your Supplier Continued: Eliminating Child and Forced Labor from the Shrimp Supply Chain* (Sept. 28, 2012), https://shrimpalliance.com/news-alert-know-your-supplier-continued-eliminating-child-and-forced-labor-from-the-shrimp-supply-chain/.................. 25

U.S. Customs and Border Protection, *CBP Issues Detention Order on Central Romana Corporation Limited* (Nov. 23, 2022), https://www.cbp.gov/newsroom/national-media-release/cbp-issues-withhold-release-order-central-romana-corporation. ......................................................... 27

U.S. Customs and Border Protection, *CBP Releases Operational Fiscal Year 2021 Statistics* (Jan. 3, 2022), https://www.cbp.gov/newsroom/national-media-release/cbp-releases-operational-fiscal-year-2021-statistics ............................... 26

U.S. Customs and Border Protection, *Forced Labor*, https://www.cbp.gov/trade/forced-labor (last mod. July 25, 2023) .................... 26

U.S. Customs and Border Protection, *Withhold Release Orders and Findings List* (last mod. July 26, 2023), https://www.cbp.gov/trade/forced-labor/withhold-release-orders-and-findings .............................................................................. 27

U.S. Dep't of Labor, *List of Goods Produced by Child Labor or Forced Labor* (2009), https://www.dol.gov/sites/dolgov/files/ILAB/reports/TVPRA%202009_WEB_.pdf ...................................................................................................... 23

U.S. Dep't of Labor, *List of Goods Produced by Child Labor or Forced Labor* (2010), https://www.dol.gov/sites/dolgov/files/ILAB/reports/2010TVPRA.pdf 23

U.S. Dep't of Labor, *List of Goods Produced by Child Labor or Forced Labor* (2011), https://www.dol.gov/sites/dolgov/files/ILAB/reports/2011TVPRA.pdf 23

U.S. Dep't of Labor, *List of Goods Produced by Child Labor or Forced Labor* (2012), https://www.dol.gov/sites/dolgov/files/ILAB/reports/2012TVPRA.pdf. ...................................................................................................................... 23

U.S. Dep't of State, *Trafficking in Persons Report* (2004), https://2009-2017.state.gov/documents/organization/34158.pdf ........................................... 21

U.S. Dep't of State, *Trafficking in Persons Report 2010* (2010), https://2009-2017.state.gov/documents/organization/142979.pdf ......................................... 22

U.S. Dep't of State, *Trafficking in Persons Report 2011: Country Narratives, Countries N Through Z* (2011), https://2009-2017.state.gov/documents/organization/164458.pdf ......................................... 22

U.S. Dep't of State, *Trafficking in Persons Report 2012: Country Narratives T Through Z and Special Case*, https://2009-2017.state.gov/documents/organization/192598.pdf ......................................... 22

U.S. Dep't of State, *Trafficking in Persons Report*, https://www.state.gov/trafficking-in-persons-report/ ................................... 21, 22

U.S. Dep't of State, *Trafficking in Persons Report: IV. Country Narratives – Tier 2* (2001), https://2009--2017.state.gov/j/tip/rls/tiprpt/2001/3928.htm................... 21

Zain Verge, et al., *Report ties U.S. retailers to sweatshop shrimp*, CNN, Apr. 24, 2008, https://www.cnn.com/2008/US/04/24/shrimp.retailers ............................ 15

# INTEREST OF *AMICI CURIAE*[1]

**Amnesty International** is a worldwide movement of more than ten million people in more than 150 countries and territories working for the respect, protection, and fulfillment of internationally recognized human rights.

**Centro de los Derechos del Migrante, Inc.** ("CDM") supports migrant workers to defend and protect their rights as they move between their home communities in Mexico and their workplaces in the United States.

**Corporate Accountability Lab** ("CAL") is an independent organization that uses innovative legal strategies and advocacy to address corporate impunity for human rights violations and environmental abuses.

**The Environmental Justice Foundation** ("EJF") exists to protect the natural world and defend our basic human right to a secure environment. EJF works internationally to inform policy and drive systemic, durable reforms to protect our environment and defend human rights. EJF investigates and exposes abuses and support environmental defenders, Indigenous peoples, communities, and independent journalists on the frontlines of environmental injustice.

---

[1] All parties to this appeal have consented to the filing of this brief.

**Freedom Network USA** ("FNUSA") is the largest alliance of advocates against human trafficking in the United States, including ninety-five members that serve more than 2,000 trafficking survivors per year in over forty cities.

**Global Labor Justice-International Labor Rights Forum** ("GLJ-ILRF") works transnationally to advance policies and laws that protect decent work, strengthen workers' ability to advocate for their rights, and hold corporations accountable for labor rights violations in their supply chains.

**Greenpeace USA** ("GPUS") is part of global Greenpeace, a network of independent campaigning organizations that expose global environmental problems and promote solutions that are essential to a green and peaceful future, including working to expose the nexus of forced labor and environmental destruction pervasive in the commercial fishing industry.

**Human Rights and Development Foundation** ("HRDF") promotes human rights, democracy, and peace in Thailand and has played a leading role in addressing human trafficking and forced labor in Thailand through strategic litigation, policy advocacy, and drafting legislation since its founding in 2000.

The **Human Trafficking Institute** ("HTI") works to stop human trafficking at its source by empowering police and prosecutors to stop traffickers.

The **International Corporate Accountability Roundtable** ("ICAR") is a coalition of over forty member and partner organizations committed to ending corporate abuse of the people and the planet and preventing corporate wrongdoing.

The **International Lawyers Assisting Workers Network** ("ILAW"), a program of the **Solidarity Center**, is a global network of lawyers and advocates dedicated to the promotion and defense of workers' rights worldwide, including the elimination of forced labor.

The **Justice Defense Fund** ("JDF") is a nonprofit organization dedicated to empowering survivors of sex trafficking, child sexual abuse material, and image-based sexual abuse to pursue justice through civil litigation.

The **Labor Rights Foundation** ("LRF") is an arm of the Migrant Workers Rights Network ("MWRN"), a membership-based organization for migrant workers from Myanmar residing and working mainly in Thailand.

The **Lantos Foundation for Human Rights & Justice** ("LFHRJ") was established to carry on Congressman Tom Lantos' proud legacy as a leading advocate for American engagement in human rights globally.

The **Law Office of Mary Joyce Carlson** specializes in domestic and international Public & Employment Law, with additional areas of practice in International Business Practices and Human Rights.

**Oxfam America** is a development and human rights organization with operations across the globe. It pushes companies to weed out forced labor in its agribusiness supply chains, with a particular focus on the seafood sector in Southeast Asia.

**Share (Asia Pacific) Limited** ("Liberty Shared") aims to prevent human trafficking through legal advocacy, technological interventions, and strategic collaborations with NGOs, corporations, and financial institutions globally.

**The Southern Shrimp Alliance** ("SSA") is an organization of shrimp fishermen, shrimp processors, and other members of the domestic industry in the eight warmwater shrimp producing states of Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, and Texas.

**State Enterprises Workers' Relations Confederation** ("SERC") is a national labor organization in Thailand, with more than 100,000 members. It works on labor protections and rights to create decent work in the workplace.

**Transparentsea Farm** is a U.S. shrimp producer. It does not import or process shrimp from Thailand or any other foreign country.

The **Uyghur Human Rights Project** ("UHRP") is a research-based advocacy organization that promotes the rights of the Uyghurs and other Turkic Muslim peoples in East Turkistan, referred to by the Chinese government as the Xinjiang Uyghur Autonomous Region.

The **Worker Rights Consortium** ("WRC") is an independent labor rights monitoring organization that investigates working conditions in factories around the globe. The WRC's purpose is to document and combat sweatshop conditions; identify and expose the practices of global brands and retailers that perpetuate labor rights abuses; and protect the rights of workers who make apparel and other products.

## CERTIFICATE OF AUTHORSHIP

Pursuant to Rule 29(a)(2) of the Federal Rule of Appellate Procedures, *amici curiae* file this brief with the consent of Plaintiffs' and Defendants' counsel. Per Rule 29(a)(4)(E), *amici* certify that no counsel for a party authored this brief in whole or in part, and no party or counsel for a party contributed money intended to fund the preparation or submission of this brief. No one other than *amici*, their members, or their counsel contributed money intended to fund the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

Plaintiffs, who allege that they are victims of forced labor, from which Defendant Rubicon Resources ("Rubicon") attempted to benefit, are entitled to their day in court. In this brief, amici urge this Court to reverse the District Court's denial of Plaintiffs' motion to reopen the judgment against Rubicon. We argue that Rubicon knew, recklessly disregarded, and/or should have known that forced labor was occurring at former defendant Phatthana Seafood Co. Ltd.'s ("Phatthana") factory in Songkhla, Thailand when Rubicon tried to sell products made there to Walmart. Additionally, amici argue that attempt liability under the Trafficking Victims Protection Act of 2000 and its progeny, the Trafficking Victims Protection Reauthorization Acts ("TVPRA"), is essential to the comprehensive framework under federal law to combat human trafficking and forced labor.

Amici include organizations that have investigated and publicized the pervasiveness of human trafficking and forced labor in the Thai seafood sector prior to and during the period set out in Plaintiffs' complaint. Plaintiffs' allegations that they are victims of forced labor are supported by publicly available data demonstrating that these practices were commonplace in the Thai shrimp industry during the relevant period. Plaintiffs allege that they were trafficked from Cambodia to Thailand, beaten and otherwise abused during the journey, and then forced to work at Phatthana's shrimp processing facility in Songkhla. There, they worked

excessively long shifts for wages so low they rarely had enough to eat and often became faint (some had to scrounge for fish scraps washed up on the beach for survival); they were exposed, unprotected, to hazardous chemicals (one Plaintiff was hospitalized for coughing up blood after handling chlorine); they had their pay docked when they became ill; they were continually threatened with punishment and arrest; they were forced to live in squalid, bug-infested quarters made of plywood and concrete where they had no water to bathe; and they were unable to leave. 10-ER-2154-2191 at paras. 1-13, 84; 2-ER-177-183 at para. 14.

Rubicon knew, recklessly disregarded, and/or should have known that forced labor was occurring at Phatthana's Songkhla factory when Rubicon tried to sell packaged shrimp it procured from Phatthana to Walmart because human rights groups had raised the issue of labor abuses occurring at that factory directly to companies in the supply chain that Rubicon was part of, including to Phatthana and Walmart. Furthermore, there was widespread knowledge of human trafficking and forced labor in the Thai shrimp industry before and during the time frame set out in Plaintiffs' complaint. Human rights groups, including amici, the International Labour Organization ("ILO"),[2] and the U.S. government have extensively

_____

[2] The International Labour Organization is one of the oldest intergovernmental organizations in the world. It is a UN agency mandated to promote labor standards and combat human rights abuses, including forced labor. It has a tripartite structure in which employers, governments, and workers are represented. *See* International

documented labor rights abuses in the industry since the early 2000s. Even industry sources demonstrate that knowledge on these issues was widespread.

Additionally, attempt liability under the TVPRA is integral to the U.S. government's multi-layered anti-trafficking framework to combat human trafficking and forced labor. This framework includes civil liability for offenders and federal criminal enforcement under the TVPRA, as well as import prohibitions on goods made with forced labor abroad under Section 307 of the U.S. Tariff Act of 1930 ("Section 307"), 19 U.S.C. § 1307. Mechanisms to target those who attempt to benefit from trafficking and forced labor are essential to this framework, and failure to recognize attempt liability undermines Congressional intent. For example, where U.S. Customs and Border Protection ("CBP") prohibits goods produced with forced labor from entering the United States under Section 307, CBP prevents implicated companies from benefiting from forced labor; their acts remain "only" attempts or conspiracies to benefit from these abuses. Without attempt liability under the TVPRA, victims of forced labor by some of the worst offenders, namely those that come to CBP's attention and whose products CBP prohibits from accessing the U.S. market, would be precluded from seeking civil remedy.

---

Labour Organization, *About the ILO*, https://www.ilo.org/global/about-the-ilo/lang--en/index.htm.

This Court should therefore reverse the District Court's denial of Plaintiffs' motion to reopen the judgment against Rubicon. Plaintiffs are entitled to seek remedy under the TVPRA from Defendant Rubicon, who knew, recklessly disregarded, and/or should have known of the egregious abuses occurring at Phatthana's factory and attempted to benefit from those abuses. Reopening this judgment is necessary for the TVPRA to effectively protect victims, punish offenders, and deter would-be offenders, as Congress intended.

## ARGUMENT

I. **Rubicon Knew, Recklessly Disregarded, and/or Should Have Known of the Human Trafficking and Forced Labor Occurring at Phatthana's Factory when it Attempted to Sell Shrimp Produced There to Walmart.**

A. Human Rights Advocates Addressed Allegations of Labor Abuses at Phatthana's Factory Directly with Rubicon's Venture Partners and Customers.

Rubicon's venture partners and customers were informed directly of the prevalence and severity of the abuses at Phatthana's Songkhla factory. Before Rubicon attempted to sell shrimp processed at this factory to Walmart, which it did indisputably from June to September 2012 (7-ER-1558; 6-ER-1294), human rights advocates corresponded with Rubicon's venture partners and customers, raising concerns about conditions indicating forced labor. For example, advocates contacted Phatthana in April 2012, when Human Rights Watch wrote a letter to Mr. Paiboon Dussadeevutikul, Phatthana's Managing Director, informing the company that it had

"received credible allegations indicating that serious labor rights abuses have been occurring at the Songkhla factory, as well as in connection with recruitment companies who supply workers to the factory." *See* Letter from Arvind Ganesan, Director, Business and Human Rights Division, Human Rights Watch, to Phatthana Seafood Co. Ltd. (Apr. 20, 2012), https://www.hrw.org/news/2012/04/20/letter-phatthana-seafood-co-ltd. In the letter, Human Rights Watch raised multiple serious allegations, including migrant worker recruitment fees, retention of identity documents, payment below the minimum wage, failure to provide housing as promised, and excessive working hours. *Id*. The letter noted that Phatthana's Songkhla factory was a major supplier to Walmart and that Walmart's "Standards for Suppliers" proscribed the alleged abuses. *Id*. Phatthana acknowledged receipt of the letter in a response to Human Rights Watch on May 4, 2012. *Id*.

Human rights advocates also raised concerns with Walmart about the Thai shrimp supply chain involving the Phatthana factory at issue. Human Rights Watch sent a letter in April 2012 to Mike Duke, Walmart's President and CEO, regarding labor abuses in Phatthana's Songkhla factory. Letter from Arvind Ganesan, Director, Business and Human Rights Division, Human Rights Watch, to Mr. Mike Duke, President of Walmart Stores, Inc. (Apr. 16, 2012), https://www.hrw.org/news/2012/04/16/letter-mr-mike-duke-president-walmart-stores-inc. This letter included the information about labor rights abuses provided to

Phatthana and inquired about "Walmart's possible role in this situation." *Id*. Human Rights Watch noted that Phatthana was a "member of the Rubicon Group, a leading supplier of seafood and shrimp to Walmart and Sam's Club stores across the United States and other countries." *Id*. Walmart responded to Human Rights Watch on April 19, 2012, and Human Rights Watch sent follow up correspondence about the alleged abuses and Walmart's role on June 1, 2012. *Id*; Arvind Ganesan, Letter in Response to Mr. Mike Duke, President of Walmart Stores Inc., Human Rights Watch (June 1, 2012), https://www.hrw.org/news/2012/06/01/response-letter-mr-mike-duke-president-walmart-stores-inc.

Additionally, Rubicon and Wales, a Thai company doing business in the United States and a former defendant in this case, admitted to knowing about abuses at Phatthana's factory when a whistleblower report was issued in February 2012. *See Ratha v. Phatthana Seafood*, 35 F.4th 1159, 1176 (9th Cir. 2022).

B. Knowledge of Human Trafficking and Forced Labor in the Thai Shrimp Industry was Widespread Before and During the Time in Question.

As evidenced by countless public reports, there was widespread knowledge of human trafficking and forced labor in the Thai shrimp sector before and during the time period in which Plaintiffs allege they suffered from human trafficking and forced labor and when Rubicon attempted to sell shrimp produced at Phatthana's factory to Walmart. The breadth and depth of awareness is demonstrated by the

diverse sources on this subject, including extensive reporting by human rights groups, the ILO, and the U.S. government, as well as industry knowledge.[3]

## 1.  Reports by Human Rights Organizations

Organizations, including amici, have been investigating and publicizing the pervasiveness of human trafficking and forced labor in the Thai shrimp sector for years, both prior to and during the time frame plaintiffs allege they were subjected to human trafficking and forced labor. These and other organizations have reported on labor abuses in the Thai shrimp sector since the early-mid 2000s.

In 2003, amicus the Environmental Justice Foundation ("EJF") published a report raising red flags about poor working conditions associated with the production of shrimp globally, explaining: "Employment on shrimp farms and processing plants

---

[3] Labor abuses in the Thai seafood industry have also been extensively documented by credible news sources since at least 2007. *See, e.g.*, Ed Cropley, *Child Laborers Toil in Thai Seafood Factories*, Reuters (Apr. 24, 2007), https://www.reuters.com/article/us-thailand-childlabour/child-laborers-toil-in-thai-seafood-factories-idUSBKK26683020070424; *In Thai Shrimp Industry, Child Labor and Rights Abuses Persist,* N.Y. Times (Apr. 25, 2007), https://www.nytimes.com/2007/04/25/business/worldbusiness/25iht-baht.4.5438244.html; Paul Eckert, *Shrimp Industry Blasted for Modern Day Slavery*, Reuters (Apr. 23, 2008), https://www.reuters.com/article/uk-asia-shrimp-usa/shrimp-industry-blasted-for-modern-day-slavery-idUKN2342204020080423; Patrick Winn, *Is your Seafood Harvested by Slaves?*, The World (Orig. pub. Nov. 9, 2009, ed. May 30, 2010), https://theworld.org/stories/2009-11-29/your-seafood-harvested-slaves; Alastair Leithead, *Burmese 'Slavery' Fishermen are Trafficked and Abused*, BBC (Apr. 25, 2011), https://www.bbc.com/news/world-asia-pacific-12881982; Jason Motlagh, *Bad Cocktail: Burmese Migrants and the Thai Shrimp Industry*, Pulitzer Center (Nov. 2, 2012), http://pulitzercenter.org/reporting/bad-cocktail-burmese-migrants-and-thai-shrimp-industry.

is frequently linked to very poor working conditions and exploitation of workers."
Environmental Justice Foundation, *Smash & Grab: Conflict, Corruption and Human Rights Abuses in the Shrimp Farming Industry* 2 (2003), https://ejfoundation.org/resources/downloads/smash_and_grab.pdf. EJF reported shifts of up to twenty hours a day and that in some shrimp processing factories, women had to "stand all day and [. . .] ask permission to visit the toilet." *Id*. at 22. Additionally, EJF reported that in southern Thailand (where Songkhla is located), migrant workers alleged they were locked in factories "unable to leave the premises 24 hours a day – where average wages are half the legal minimum and where strike activity has been met with violence and harassment." *Id*. The report also presented information on serious retaliatory violence against migrant workers: "in November 2001, two Burmese migrant workers (Nai Myo Win, a 37-year old man, and Mi Tin Shwe, a 46- year old woman) were beaten to death in front of co-workers at the Wat Jed shrimp processing factory, apparently having been accused of stealing prawns." *Id*.

In 2008, amicus the Solidarity Center published a report on abusive labor conditions and the "true cost" of shrimp production in Thailand and Bangladesh. Solidarity Center, *The Degradation of Work: The True Cost of Shrimp* (2008), https://www.solidaritycenter.org/wp-content/uploads/2014/12/pubs_True_Cost_of_Shrimp.pdf ("Solidarity Center 2008

Report") (8-ER-1815-1854). *See also* Zain Verge, et al., *Report ties U.S. retailers to sweatshop shrimp*, CNN, Apr. 24, 2008, https://www.cnn.com/2008/US/04/24/shrimp.retailers/; Eckert, *supra*. The report described the global demand for cheap shrimp as being met only by means of the brutal exploitation of workers: "The costs are borne largely by workers in the shrimp processing plants. They are integral to the profitability of companies along the shrimp supply chain, yet the world largely ignores their hardships." Solidarity Center 2008 Report at 7. The Solidarity Center included cases in which workers were forced to live in deplorable conditions on site, where companies had control over workers' movements and could keep them from leaving. Employers often charged workers for room and board, equipment, and other items migrant workers need to survive. *See id*. at 19, 22. In fact, Thai police had found that "managers demanded months of unpaid work to meet debts to labor agents, or to pay for basic safety equipment, housing, even food and medicine." *Id*. at 20. One woman who was interviewed reported peeling about 40 pounds of shrimp each day and that "she worked for three months without pay and even then received only 200 baht ($5.60) the fourth month, after 500 baht ($14.10) was deducted from her wages to pay her labor agent's fee and to cover meals, housing, and safety equipment." *Id*. The Solidarity Center noted that migrant workers in Thai seafood processing plants often did not have written contracts for their jobs and that even when they did, employers generally ignored

contract terms, subjecting workers to abusive working and living conditions, and used threats, intimidation, and consistent dehumanization and degradation to keep them working. *Id*. at 19, 27.

The report included a harrowing case study on conditions at the Ranya Paew shrimp processing factory in Samut Sakhon, Thailand, which was raided by police in 2006:

> Ranya Paew was more like a fortress than a factory, with 16-foot-high barbed-wire capped walls, an armed guard force, and an extensive internal closed-circuit television system. Behind the walls, the police found a scene that one report described as "little short of medieval," with hundreds of workers literally trapped inside the compound, living in squalid conditions, forced to work long hours, and subjected to physical, emotional, and sexual intimidation and abuse. Workers who angered the employer were often "put to shame" in front of others by having their hair cut or shaved in patches. Women and girls were stripped naked and publicly beaten as a form of discipline.

*Id*. at 19-20. Workers at the Ranya Paew factory reported that "if they made a mistake on the shrimp peeling line, asked for sick leave, or tried to escape, they could expect to be beaten, sexually molested, or publicly tortured." *Id*. at 20.

In 2010, Human Rights Watch published a report on abusive conditions that migrant workers faced in Thailand, where the seafood processing industry and others had become completely reliant on workforces dominated by migrants who "face an existence straight out of a Thai proverb – escaping from the tiger, but then meeting the crocodile – that is commonly used to describe fleeing from one difficult or deadly situation into another that is equally bad, or sometimes worse. Migrant workers are

effectively bonded to their employers [. . .]." Human Rights Watch, *From the Tiger to the Crocodile: Abuse of Migrant Workers in Thailand* 1 (2010), https://www.hrw.org/sites/default/files/reports/thailand0210webwcover_0.pdf (4-ER-573-688). The report identified "many serious abuses of migrants' rights at work," including "intimidation and threats, especially in cases when workers seek to organize and collectively assert their rights, and cases of retaliation when workers filed grievances with Thai authorities against their employers." *Id*. at 52, 53. Human Rights Watch also noted the widespread practice of paycheck deductions that often left workers in cycles of debt bondage: by charging workers for their food, accommodations, and equipment, employers "leav[e] migrants in situations where they cannot repay the escalating debt." *Id*. at 53. Additionally, the report found that "[c]orruption and criminal behavior by local police and other officials fuels a system of impunity in which rights violations by the authorities and common crimes against migrants frequently are either not investigated or fail to receive proper follow-up." *Id*. at 5.

In 2011, amicus Human Rights and Development Foundation wrote an open letter to the Prime Minister of Thailand, asking him to take steps to eliminate human trafficking and forced labor in the Thai fishing industry – including seafood packaging and processing factories. *See, e.g.*, *Open Letter to Thai Prime Minister – Request to Eliminate Human Trafficking and Forced Labour in the Thai Fishing*

*Industry*, Human Rights and Development Foundation (Apr. 29, 2011), http://hrdfoundation.org/?p=478.

This extensive reporting on labor abuses in the Thai shrimp industry before and during the time period set out in Plaintiffs' complaint indicate that Rubicon knew, recklessly disregarded, and/or should have known of the abuses occurring at Phatthana's factory by 2012.

### 2. *Report by the International Labour Organization*

In 2006, the ILO issued a significant report documenting human trafficking and forced labor practices in Thailand, especially perpetrated against migrant workers, who were "often prohibited from leaving their place of employment – they are effectively imprisoned and indentured slaves." International Labour Organization, *The Mekong Challenge – Underpaid, Overworked and Overlooked: The Realities of Young Migrant Workers in Thailand* xvii (2006), https://www.ilo.org/wcmsp5/groups/public/---asia/---ro-bangkok/documents/publication/wcms_bk_pb_67_en.pdf. The ILO report was based on interviews with migrant workers in Thailand, and it documented labor exploitation in several sectors, including in the seafood processing sector. Seafood processing workers reported numerous internationally recognized indicators of forced labor to the ILO, including employers retaining their identity documents and requiring them to live on site, verbal abuse during work, excessively long working

hours and mandatory overtime, and payment of less than the minimum wage. *Id.* at 34, 83-86. In comparing exploitative conditions across several industries in Thailand, the report found that "[f]ish processing workers [. . .] suffered from worse working conditions, more confinement and constraints related to employer coercion than workers in agriculture or domestic work," and that workers in seafood processing generally earned only 60 percent of the minimum wage. *Id.* at 32, 48.

The ILO report highlighted that debt bondage, a key indicator of forced labor, was common in industries including seafood processing. Debt from early-incurred recruitment fees and subsequent deductions by employers often followed workers for months or even years, bonding them to work, no matter how deplorable the conditions. *Id.* at 83-86. The report also noted that many migrant workers in the Thai seafood processing sector were undocumented and that even migrant workers who were legally present in Thailand were sometimes forced to remain working in seafood processing due to documentation vulnerabilities – employers commonly withheld workers' identity documents, such as passports, to prevent them from leaving. *Id.* at 38. This practice is consistent with Plaintiffs' testimony that they asked their employers multiple times to return their identity documents, to no avail. 2-ER-181; 3-ER-538 at 21. The ILO quoted a seafood processing employer who explained: "We'd better keep (the original copy). If it is with them (workers), they would change jobs. They would think they were the same as Thais, and could go

anywhere independently." *Id*. at 38. The ILO's report is evidence of widespread knowledge on human rights abuses, showing that Rubicon knew, recklessly disregarded, and/or should have known of the abuses occurring at Phatthana's factory.

### 3. *Reports by the U.S. Government*

The U.S. government has also repeatedly documented widespread abuses in the Thai shrimp industry. Since passing the Trafficking Victims Protection Act of 2000, Congress has required the Department of State to compile an annual list classifying countries based upon their compliance with national and international standards, called the Trafficking in Persons Report ("TIP Report"). The TIP Report designates three tiers: Tier 1 countries where governments "fully comply" with applicable minimum standards for eliminating human trafficking; Tier 2 countries where governments "do not yet fully comply with such standards but are making significant efforts to bring themselves into compliance;" and Tier 3 countries "whose governments do not fully comply with such standards and are not making significant efforts to bring themselves into compliance." [Tier 3]. Div. A., Pub. L. No. 106-386, § 110(b)(1), 114 Stat. 1464.

The TVPRA later established a "Special Watch List," identifying countries in which trafficking is of particular concern because "the absolute number of victims of severe forms of trafficking is very significant or is significantly increasing,"

20

and/or "there is a failure to provide evidence of increasing efforts to combat severe forms of trafficking in persons from the previous year [.]" Pub. L. No. 108-193, § 6(e)(3), 117 Stat. 2875 (2003).

In the 2001 TIP Report, the first year the report was issued, Thailand was designated as Tier 2 and identified as "a destination, source, and transit country for trafficked persons," with many victims trafficked from Cambodia. U.S. Dep't of State, *Trafficking in Persons Report: IV. Country Narratives – Tier 2* (2001), https://2009-2017.state.gov/j/tip/rls/tiprpt/2001/3928.htm. The report indicated that the weak rule of law, corruption, and insufficient training of law enforcement on combating human trafficking exacerbated levels of these abuses in Thailand. *Id*. In the 2004 TIP Report, the first year that the "Special Watch List" was implemented, Thailand was downgraded to the Tier 2 Watch List and identified as a source, transit, and destination country for persons trafficked for forced labor. U.S. Dep't of State, *Trafficking in Persons Report* 39, 109 (2004), https://2009-2017.state.gov/documents/organization/34158.pdf.

Thailand continued to be ranked Tier 2 or Tier 2 Watch List every year from 2004 to 2012 to the present.[4] *See* U.S. Dep't of State, *Trafficking in Persons Report*,

---

[4] In fact, Thailand has been designated a Tier 2, Tier 2 Watch List, or Tier 3 country every year dating back to the first TIP Report released through the present.

https://www.state.gov/trafficking-in-persons-report/ (website hosting twenty years of TIP reports).

The 2010, 2011, and 2012 TIP reports each designated Thailand as a Tier 2 Watch List state. All three of those reports acknowledged that most victims in Thailand were trafficked from neighboring countries. U.S. Dep't of State, *Trafficking in Persons Report 2010* (2010), https://2009-2017.state.gov/documents/organization/142979.pdf; U.S. Dep't of State, *Trafficking in Persons Report 2011: Country Narratives, Countries N Through Z* (2011), https://2009-2017.state.gov/documents/organization/164458.pdf; U.S. Dep't of State, *Trafficking in Persons Report 2012: Country Narratives T Through Z and Special Case* (2012) ("2012 TIP Report"), https://2009-2017.state.gov/documents/organization/192598.pdf. The 2012 report stated that "[a] significant portion of labor trafficking victims within Thailand are exploited in commercial fishing [and] fishing-related industries, [. . .]" 2012 TIP Report, *supra* at 338. In fact, the report noted that the majority of workers in the seafood industry experienced conditions of forced labor and that foreign workers in Thailand were at the greatest risk of being trafficked. Undocumented workers were "particularly vulnerable to trafficking, due to their economic status, education level, language barriers, and lack of knowledge of Thai law." *Id*. The 2012 report also noted that widespread corruption of police and other public authorities and weak rule of law

had facilitated human trafficking and forced labor of migrants in the Thai seafood processing sector: "[d]irect involvement in and facilitation of human trafficking by law enforcement officials reportedly remained a significant problem in Thailand." *Id*. at 339.

The U.S. Department of Labor's periodic reports on goods produced by forced or child labor around the world, which the TVPRA requires the Bureau of International Labor Affairs to publish each year, have also pointed to the prevalence of forced labor in the Thai seafood industry for years, including before and during the time frame in which Plaintiffs allege they were subject to such abuse. *See* Pub. L. No. 109-164 § 105(b)(2), 119 Stat. 3558 (2005). Thai shrimp has consistently appeared on the forced labor list since it was first released in 2009. *See e.g.* U.S. Dep't of Labor ("DOL"), *List of Goods Produced by Child Labor or Forced Labor* 20 (2009), https://www.dol.gov/sites/dolgov/files/ILAB/reports/TVPRA%202009_WEB_.pdf ; U.S. DOL, *List of Goods Produced by Child Labor or Forced Labor* 16 (2010), https://www.dol.gov/sites/dolgov/files/ILAB/reports/2010TVPRA.pdf; U.S. DOL, *List of Goods Produced by Child Labor or Forced Labor* 14 (2011), https://www.dol.gov/sites/dolgov/files/ILAB/reports/2011TVPRA.pdf; U.S. DOL, *List of Goods Produced by Child Labor or Forced Labor* 24 (2012), https://www.dol.gov/sites/dolgov/files/ILAB/reports/2012TVPRA.pdf. These U.S.

government reports are yet another indicator of widespread knowledge of abuses in the Thai shrimp industry during the time in question, indicating that Rubicon knew, recklessly disregarded, and/or should have known of the abuses occurring at its supplier's factory in Thailand at the time it attempted to benefit from the sale of shrimp produced there.

### 4. Acknowledgment by Industry

In fact, the U.S. shrimp industry was aware of reports and media coverage of forced labor in the Thai shrimp industry before and during the time frame in question. The long-standing President of the Louisiana Shrimp Association testified: "[. . .] I have seen report after report about human trafficking by the Thai shrimp industry. With all of the information out there about human trafficking and forced labor in Thailand, including the 2009 placement of Thai shrimp on the Department of Labor's list of goods produced with forced labor, I cannot believe that anyone in the shrimp industry could have been unaware of these problems by 2010." 6-ER-1392-1397 at para. 10.

Amicus the Southern Shrimp Alliance ("SSA"), a trade association of Gulf Coast shrimpers, has known about forced labor in the Thai shrimp industry since before 2008, when it responded to a Department of Labor request for evidence and comments on labor abuse in the Thai shrimp industry. 6-ER-1398-1405 at para. 17. The SSA continued to monitor and advocate around this issue and even published

an article on forced labor in the Thai shrimp industry in 2012. Southern Shrimp Alliance, *Know Your Supplier Continued: Eliminating Child and Forced Labor from the Shrimp Supply Chain*, (Sept. 28, 2012), https://shrimpalliance.com/news-alert-know-your-supplier-continued-eliminating-child-and-forced-labor-from-the-shrimp-supply-chain/. Actual knowledge by the U.S. shrimp industry of the abuses occurring in the processing of shrimp in Thai factories is another indicator that Rubicon knew, recklessly disregarded, and/or should have known of the ongoing abuses at Phatthana's processing facility when it sought to profit from the sale of products made there.

## II. Accountability for Those Who Attempt to Reap Benefits from Forced Labor is Integral to the U.S. Government's Comprehensive Strategy to Combat Human Trafficking and Forced Labor Around the World.

### A. Attempt Liability Under the TVPRA is and has been Essential to the U.S. Government's Comprehensive Strategy to Combat Forced Labor Around the World.

Forced labor is a feature, not a bug, of global supply chains, entrenched as such by its corporate beneficiaries. The United States leads the fight to eliminate human trafficking globally, and Congress has established a comprehensive strategy to combat human trafficking and forced labor that includes initiatives to target direct perpetrators and those who benefit and attempt to benefit from these practices. This is indisputable following the passage of the Abolish Trafficking Reauthorization Act ("ATRA"), which clarified that Congress intends for those who try but do not

succeed in reaping benefits from forced labor to be held accountable under the TVPRA. *See* Pub. L. No. 117-347, § 102, 136 Stat. 6199 (2023).

This is also in line with the U.S. government's broader anti-trafficking framework that includes these interlocking parts: civil liability for offenders, federal criminal enforcement, and CBP detention orders on the importation of goods made with forced labor.

For example, Section 307 of the Tariff Act of 1930 is a powerful tool to fight forced labor abroad. It permits CBP to issue detention orders (Withhold Release Orders, or "WROs") to prevent foreign merchandise produced in whole or in part using forced labor from being imported into the United States. 19 U.S.C. § 1307. In FY2021 alone, CBP detained 1,469 shipments of goods valued at nearly $500 million pursuant to Section 307 of the Tariff Act; between October 1, 2022 and June 30, 2023, CBP stopped 3,455 shipments of goods tainted with forced labor from entering the United States. CBP, *CBP Releases Operational Fiscal Year 2021 Statistics* (Jan. 3, 2022), https://www.cbp.gov/newsroom/national-media-release/cbp-releases-operational-fiscal-year-2021-statistics; CBP, *Forced Labor*, https://www.cbp.gov/trade/forced-labor (last mod. July 25, 2023).

CBP issues WROs against goods from a range of industries and targets some of the worst offenders in rooting out forced labor in global supply chains. For example, because of reasonable suspicions of forced labor, CBP has issued WROs

on cotton produced both in the Xinjiang Uyghur Autonomous Region of the People's Republic of China ("Uyghur Region") and Turkmenistan; sugar and sugar products produced by Central Romana in the Dominican Republic; seafood from numerous Taiwanese flagged fishing vessels; and all tobacco from Malawi. CBP, *Withhold Release Orders and Findings List* (last mod. July 26, 2023), https://www.cbp.gov/trade/forced-labor/withhold-release-orders-and-findings.

CBP is conscientious about fighting forced labor and stopping goods produced with forced labor from reaching the U.S. market. After issuing a WRO against raw sugar and sugar-based products from the notorious Dominican company Central Romana Corporation Limited, CBP Acting Commissioner Troy Miller said:

> "This [WRO] demonstrates CBP's commitment to protect human rights and international labor standards and to promote a fair and competitive global marketplace […] The agency will continue to set a high global standard by aggressively investigating allegations of forced labor in U.S. supply chains and keeping tainted merchandise out of the United States."

CBP, *CBP Issues Detention Order on Central Romana Corporation Limited* (Nov. 23, 2022), https://www.cbp.gov/newsroom/national-media-release/cbp-issues-withhold-release-order-central-romana-corporation.

This Circuit's reading eliminating attempt liability under the TVPRA would mean that forced labor victims who produced goods that CBP blocks from entry into the U.S. market would be precluded from civil recovery, as the U.S. government's determination not to admit the goods would prevent the defendant corporation from

27

actually profiting. This carve-out for "attempt" would have far-reaching and damaging implications. Ironically, it would protect some of the worst actors: those who have come to CBP's attention because of their egregious conduct. It would effectively repeal § 1595 of the TVPRA, which Congress passed to provide victims of forced labor a civil remedy, *see* 18 U.S.C. § 1595, with respect to any victims forced to produce goods or merchandise that CBP prohibits from entering the U.S. market. When this Court erroneously read attempt liability out of the statute, Congress quickly acted to make its intentions clear with the passage of the ATRA, so that these victims and others with pending cases would not be stripped of a remedy.

B. Failure to Recognize Attempt Liability under the TVPRA Helps Perpetuate Forced Labor in Global Supply Chains.

In amending the TVPRA to expand liability to those who knowingly benefit from a violation of the statute, Congress recognized that forced labor and human trafficking represent the "dark side of globalization." Brief of Members of Congress Senator Blumenthal, et al., as Amici Curiae Supporting Respondents, *Nestlé USA, Inc. v. Doe I*, 141 S. Ct. 1931 (2021) at 9 (quoting H.R. Rep. No. 101-430, Pt. 1 at 33 (2007)). Moreover, it recognized that the law must not "provide a liability shield between the direct oppressor and the economic beneficiary of the slave labor." *International Trafficking in Women and Children: Hearing Before the Subcomm. on*

*Near E. & S. Asian Aff. of the S. Comm. on Foreign Rel.*, 106th Cong. 78 (2000) (statement of Hon. William R. Yeomans).

Accountability for companies that attempt to benefit from the sale of goods made with forced labor is essential to eliminating human trafficking in global supply chains because attempts are part of what creates the market for goods made with forced labor. Companies continually try to sell goods made with forced labor and are often not deterred by an unsuccessful attempt, such as those caused by a retailer's rejection or the implementation of a WRO. Even at that point, companies are incentivized by the balance of risk and potential reward to continue to market the illicitly produced goods. This, in turn, disadvantages ethical businesses with fair labor practices, as unscrupulous businesses using forced labor inject low-priced goods into the market and gain a competitive commercial advantage. *See Rodriguez v. Pan Am. Health Org.*, 29 F.4th 706, 716 (D.C. Cir. 2022).

Without any meaningful consequences, companies will continue to attempt, and to conspire, to benefit financially from the sale of goods made with forced labor. When the profits to be made are so high and the risk of being held accountable so low, the cost of attempting to benefit from forced labor is worth it for these companies. Put plainly, the ability to hold intermediary companies accountable under the TVPRA, when they attempt to benefit from the sale of goods made with forced labor, is essential to fighting forced labor in global supply chains. Requiring

as a prerequisite for victims' civil recovery that companies actually profit from the abuses would insulate businesses that perpetuate human trafficking by attempting to benefit from it.

C. Attempt Liability is Critical for Victims' Access to Justice.

Remedy is a critical component of ensuring that victims have avenues to access justice, and it is core to the legislative purpose of the TVPRA. Forced labor has a devastating impact on victims, who suffer a variety of long-lasting physical, psychological, social, and financial difficulties after they escape from their trafficking situation.

Since 2000, Congress has passed a series of amendments to the TVPRA to better protect victims. For example, the 2003 reauthorization provided for a civil remedy in § 1595 so that victims can directly sue their traffickers; and the 2008 reauthorization amended § 1595 to extend civil liability to those who benefit from a violation of the TVPRA and added § 1596 to codify extraterritorial jurisdiction. *See* 18 U.S.C. § 1595-1596.

Most recently, in response to this Court's failure to recognize attempt liability under the TVPRA, Congress passed the ATRA, clarifying that those who "attempt or conspire to benefit" from ventures where human trafficking occurs are – and have always been – just as much targets for accountability as those who actually benefit. *See* Pub. L. No. 117-347, § 102, 136 Stat. 6199 (2023).

Notably, even where a company like Rubicon attempts to benefit financially from forced labor but fails to achieve its objective because the goods are seized or rejected, the company has already caused real harm to victims. Rubicon was involved in a long-term commercial venture with a supplier that it knew relied on forced labor, recklessly disregarded information of such reliance, and/or should have known of such reliance, and it procured products created by forced labor from that supplier. Failure to recognize attempt liability deprives the victims of this abuse of any remedy – simply because external forces were successful in blocking the sale of the goods created by means of their forced labor.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's denial of Plaintiffs' request for relief from dismissal of claims against Defendant Rubicon and allow these victims of forced labor and human trafficking to have their day in court.

Dated: August 21, 2023                    Respectfully submitted,

 /s/ John Burton
John Burton
THE LAW OFFICES OF JOHN
BURTON

Avery Kelly
Alicia Brudney
CORPORATE ACCOUNTABILITY
LAB

Allison Gill
Johanna Lee
GLOBAL LABOR JUSTICE-
INTERNATIONAL LABOR
RIGHTS FORUM

*Attorneys for* Amici Curiae

**CERTIFICATE OF COMPLIANCE**

I certify that:

This brief complies with the length limitations of Fed. R. App. P. 29(a)(5) and Ninth Circuit Rule 32-1 because this brief contains 6,356 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using Microsoft Word in 14-point Times New Roman font.

Dated: August 21, 2023                          Respectfully submitted,

                                                        /s/ John Burton
                                                       _____
                                                       John Burton
                                                       Avery Kelly
                                                       Alicia Brudney
                                                       Allison Gill
                                                       Johanna Lee

                                                       *Attorneys for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Respectfully submitted,

/s/ John Burton
John Burton
Avery Kelly
Alicia Brudney
Allison Gill
Johanna Lee

*Attorneys for Amici Curiae*

Dated: August 21, 2023

## STATEMENT OF RELATED CASES

Counsel for *amici* is unaware of any related cases, as defined in Ninth

Circuit Rule 28-2.6.

Respectfully submitted,

/s/ John Burton
_____

John Burton
Avery Kelly
Alicia Brudney
Allison Gill
Johanna Lee

*Attorneys for Amici Curiae*

Dated: August 21, 2023