No. 23-55299

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

KEO RATHA; SEM KOSAL; SOPHEA BUN; YEM BAN;
NOL NAKRY; PHAN SOPHEA; SOK SANG,

*Plaintiffs-Appellants*,

v.

RUBICON RESOURCES, LLC,

*Defendant-Appellee.*

———————————

On Appeal from the United States District Court for the
Central District of California, No. 2:16-cv-04271-JFW-AS
Hon. John F. Walter, U.S. District Judge

———————————

## BRIEF OF PROFESSOR DAVID ABRAMOWITZ AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS

———————————

Julia Romano
KING & SPALDING LLP
633 West Fifth Street
Los Angeles, CA 90071
(213) 443-4355
jromano@kslaw.com

Anne M. Voigts
KING & SPALDING LLP
601 South California Avenue
Palo Alto, CA 94304
(650) 422-6700
avoigts@kslaw.com

Zoe M. Beiner
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
zbeiner@kslaw.com

*Counsel for Amicus Curiae*

August 21, 2023

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................ii

INTEREST OF *AMICUS CURIAE* .............................................1

    A.   Experience as Chief Counsel and Parliamentarian ...............2

    B.   Experience With Human Trafficking Statutes .......................3

BACKGROUND .........................................................................4

ARGUMENT ...............................................................................7

I.    Legal Framework ............................................................8

II.   The District Court Erroneously Concluded That The ATRA Is Not A Technical And Clarifying Amendment ...........................12

III.  Applying The Relevant Factors, The ATRA Is A Technical And Clarifying Amendment. ...........................................16

CONCLUSION ........................................................................19

# TABLE OF AUTHORITIES

## Cases

*ABKCO Music, Inc. v. LaVere,*
217 F.3d 684 (9th Cir. 2000)........................................................10, 13

*Beaver v. Tarsadia Hotels,*
816 F.3d 1170 (9th Cir. 2016)...............................................................14

*Beverly Cmty. Hosp. Ass'n v. Belshe,*
132 F.3d 1259 (9th Cir. 1997)....................................................9, 10, 13

*Boddie v. Am. Broad. Cos.,*
881 F.2d 267 (6th Cir. 1989)................................................................11

*Bowen v. Georgetown Univ. Hosp.,*
488 U.S. 204 (1988)..............................................................................9

*Brown v. Marquette Sav. & Loan Ass'n,*
686 F.2d 608 (7th Cir. 1982)................................................................15

*Brown v. Thompson,*
374 F.3d 253 (4th Cir. 2004)....................................................11, 13, 16

*Callejas v. McMahon,*
750 F.2d 729 (9th Cir. 1984)....................................................12, 15, 17

*Cookeville Reg'l Med. Ctr. v. Leavitt,*
531 F.3d 844 (D.C. Cir. 2008) ..............................................................11

*Crow Tribal Hous. Auth. v. U.S. Dep't of Hous. & Urb. Dev.,*
781 F.3d 1095 (9th Cir. 2015)..............................................................13

*Ditullio v. Boehm,*
662 F.3d 1091 (9th Cir. 2011) ..............................................................16

*Johnson v. Apfel,*
189 F.3d 561 (7th Cir. 1999)................................................................11

*Landgraf v. USI Film Prods.,*
511 U.S. 244 (1994) ................................................................9, 10, 16

*Leshinsky v. Telvent GIT, S.A.*,
  873 F. Supp. 2d 582 (S.D.N.Y. 2012) .................................................. 12

*Levy v. Sterling Holding Co.*,
  544 F.3d 493 (3d Cir. 2008) ................................................................ 11

*Liquilux Gas Corp. v. Martin Gas Sales*,
  979 F.2d 887 (1st Cir. 1992) ............................... 11, 12, 14, 17

*Manhattan Gen. Equip. Co. v. Commissioner*,
  297 U.S. 129 (1936) .............................................................................. 11

*Owino v. CoreCivic, Inc.*,
  No. 17-CV-1112 JLS (NLS),
  2018 WL 2193644 (S.D. Cal. May 14, 2018) ...................................... 15

*Piamba Cortes v. Am. Airlines, Inc.*,
  177 F.3d 1272 (11th Cir. 1999) .......................................................... 11

*Pope v. Shalala*,
  998 F.2d 473 (7th Cir. 1993) ............................................................... 11

*Ratha v. Phatthana Seafood Co. (Ratha I)*,
  35 F.4th 1159, 1176 (9th Cir. 2022) ............................................... 6, 14

*Ricchio v. McLean*,
  853 F.3d 553 (1st Cir. 2017) ............................................................... 17

*Soc'y for Propagation of Gospel v. Wheeler*,
  22 F. Cas. 756 (C.C.D.N.H. 1814) (No. 13,156) ................................... 9

*T.P. v. Wyndham Hotels & Resorts, Inc.*,
  No. 2:21-CV-04933,
  2022 WL 17363234 (S.D. Ohio Dec. 1, 2022) ................................... 15

*United States v. Pepe*,
  895 F.3d 679 (9th Cir. 2018) ......................................................... 17, 18

*United States. v. Donaghe*,
  50 F.3d 608 (9th Cir. 1994) .................................................................. 9

**Statutes**

18 U.S.C. § 1589(b) ......................................................................5

18 U.S.C. § 1594(a) ......................................................................5

18 U.S.C. § 1595.............................................................. 1, 5, 15

Pub. L. No. 117-347,
136 Stat. 6199 (2023) ..............................................................7

**Other Authorities**

153 Cong. Rec. H14113 (daily ed. Dec. 4, 2007)
(statement of Rep. Sheila Jackson Lee) ...............................6

153 Cong. Rec. H14121 (daily ed. Dec. 4, 2007)
(statement of Rep. Steve Pearce) .........................................6

H.R. Rep. No. 108-264 (2003).....................................................5

H.R. Rep. No. 110-430 (2007).....................................................4

Martina E. Vandenberg & Maggie Lee,
*Congress Amends the TVPRA to Correct Ninth Circuit's
Erroneous Ruling in Ratha,* Transnational Litigation Blog,
(Aug. 1, 2023), https://tlblog.org/congress-amends-the-tvpra-to-
correct-ninth-circuits-erroneous-ruling-in-ratha ..............................17

# INTEREST OF *AMICUS CURIAE*[1]

This appeal presents a critical question about the effect of the Abolish Trafficking Reauthorization Act of 2022.  Correctly construed, the ATRA applies retroactively because it simply clarifies that the Trafficking Victims Protection Reauthorization Act's civil remedy provision, 18 U.S.C. § 1595(a), makes an "attempt[]" to benefit from a human trafficking violation actionable.  The district court, however, construed the ATRA incorrectly, concluding that it represents a change in substantive law and thus cannot be applied retroactively.

Because that decision is wrong, Professor David Abramowitz respectfully submits this brief as *amicus curiae* in support of Plaintiffs.  Professor Abramowitz has extensive experience relating to the federal legislative process and human rights.  Indeed, he was heavily involved in the drafting and House passage of both the Trafficking Victims Protection Reauthorization Act of 2003, which established a civil remedy, and the amendments contained in the 2008 Trafficking Victims

[1] Counsel for both parties have given blanket consent to the filing of *amicus* briefs in this matter.  No counsel for any party authored this brief in whole or in part, and no entity or person, aside from *amicus curiae*, or his counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

Protection Act, which added the language at issue in this litigation. Professor Abramowitz has participated as *amicus curiae* in several cases, like this one, which affect the way anti-trafficking laws are interpreted and applied.

## A.    Experience as Chief Counsel and Parliamentarian

During his ten years working in the Office of the Legal Adviser at the Department of State from 1989 to 1999, Professor Abramowitz was responsible for interpreting legislation on foreign affairs that affected the Department. In addition to drafting many of the Department's legislative proposals, he was also responsible for reviewing congressional legislation, offering technical assistance, and suggesting substantive amendments.

Professor Abramowitz joined the legislative staff of the Committee on Foreign Affairs of the House of Representatives in 1999, first as Democratic (minority) Chief Counsel and then from 2007 to 2009 as Chief Counsel and Parliamentarian for the Committee in the majority. During his time as Democratic Chief Counsel, he also advised the Ranking Minority Member and the Committee's Democratic members on all legal, procedural, and parliamentary matters. After joining the private sector

for 10 years, where he continued to work on human trafficking legislation, Professor Abramowitz joined the majority staff Committee on Financial Services of the U.S. House of Representatives as General Counsel and Parliamentarian. He served in this position from 2019 to 2021.

During his period working for the Committees, Professor Abramowitz was responsible for advising the relevant Chairs, Ranking Members, Democratic members, and Committee and individual members and staff on drafting legislation, the form of amendments, the effects of amendments on existing law, and other technical matters relating to the legislative process.

### B.    Experience With Human Trafficking Statutes

Professor Abramowitz was involved with almost all major human trafficking legislation between 2000 and 2009. In addition to his other responsibilities, he was the member of the Democratic staff primarily responsible for drafting, negotiating, and helping pass on the House floor the Trafficking Victims Protection Act of 2000, the Trafficking Victims Protection Reauthorization Act of 2003, the Trafficking Victims Protection Reauthorization Act of 2005, and the William Wilberforce

Trafficking Victims Protection Reauthorization Act of 2008. With respect to the 2008 Act, he advised the Chairman of the House Foreign Affairs Committee on all aspects of the Act and negotiated its final form with the Senate. That legislation passed both the House and Senate unanimously.

Currently Professor Abramowitz is a professor at Georgetown University Law Center, where he teaches a seminar on human trafficking. He also advises the law school's Human Rights Institute and Center on Inclusive Trade and Development on human trafficking issues. His experience, both in general as a former parliamentarian, and specifically as an expert on human trafficking, means that he has both a particular interest and expertise in the issues raised by this appeal.

## BACKGROUND

In 2000, Congress passed the Trafficking Victims Protection Act ("TVPA")—the first comprehensive piece of U.S. legislation aimed at prosecuting and preventing human trafficking, including labor trafficking. Over the next two decades, Congress repeatedly broadened the scope of the TVPA through multiple reauthorizations to address this "dark side of globalization." H.R. Rep. No. 110-430, pt. 1, at 33-34 (2007).

***2003 Amendments***.   The   Trafficking   Victims   Protection Reauthorization Act of 2003 ("TVPRA") included a civil remedy, 18 U.S.C. § 1595.  Congress created this new civil liability based on the belief "that the additional enforcement activity resulting from private civil actions [would be] worthwhile."  H.R. Rep. No. 108-264, pt. 2, at 16 (2003).

***2008 Amendments***.   The 2008 TVPRA further expanded civil remedies (and other federal statutes) to address issues that are both connected to and adjacent to human trafficking, such as criminalizing abuses in foreign labor recruiting.  That is, the 2008 TVPRA dealt with the problems around those who knowingly received goods made with forced labor but argued that they should not bear any responsibility because they themselves were not involved in forced labor.  The 2008 amendments thus created grounds for relief based on principles of secondary liability for anyone who "knowingly benefits" financially or otherwise from a human trafficking venture, 18 U.S.C. § 1595. Consistent with the coterminous structure of liability, the 2008 amendments also criminalized financially benefitting from forced labor, 18 U.S.C. § 1589(b), and *attempting* to benefit from forced labor, 18 U.S.C. § 1594(a).

In enacting these amendments, Congress understood that making human trafficking less profitable would shrink the industry because traffickers are aided by people who profit from the abuse, and who therefore have every incentive to do nothing to stop that abuse. Congress intended the 2008 TVPRA to interrupt this flow of money by imposing secondary liability, thereby eliminating the incentive to turn a blind eye to exploitation. Legislators across both aisles praised the 2008 amendments as the culmination of decades of work "to ramp up our country's efforts to prevent trafficking, protect victims and prosecute perpetrators." *See, e.g.*, 153 Cong. Rec. H14113 (daily ed. Dec. 4, 2007) (statement of Rep. Sheila Jackson Lee); *id.* at H14121 (statement of Rep. Steve Pearce) (observing this amendment "will help us stop this terrible trade, give victims the ability to be free and face their accusers, and help America shine our lights around the world").

Despite the TVPRA's plain language, this Court held that the statute did not reach defendants who unsuccessfully attempted to profit from forced labor. *Ratha v. Phatthana Seafood Co.* (*Ratha I*), 35 F.4th 1159, 1176 (9th Cir. 2022), *as amended* (May 31, 2022), *cert. denied*, 143 S. Ct. 491 (2022) (Mem.).

***2022 Amendments***. On January 5, 2023, roughly seven months after this Court issued its decision in *Ratha I*, President Biden signed the Abolish Trafficking Reauthorization Act of 2022 into law. Pub. L. No. 117-347, 136 Stat. 6199 (2023). In addition to reauthorizing the TVPRA, the ATRA clarified that, like its criminal counterpart, Section 1595 makes the "attempt" to benefit from human trafficking actionable by inserting "or attempts or conspires to benefit" after "whoever knowingly benefits" in 18 U.S.C. Section 1595(a). *Id.*, § 102, 136 Stat. at 6200. That clarification is contained in Section 102 of ATRA, which is unambiguously titled: "TECHNICAL AND CLARIFYING UPDATE TO CIVIL REMEDY." *Id.*

## ARGUMENT

Despite that title, the district court erroneously concluded that the ATRA is not a technical, clarifying amendment and thus refused to accord it the retroactive effect that Congress intended. In so holding, the district court dismissed the express statutory language labeling the amendment as technical and clarifying, and ignored decades of Congressional efforts to eradicate human trafficking through a comprehensive statutory scheme containing expansive civil and criminal

remedies. The district court instead relied on the absence of a date or an express statement of retroactivity. And without even addressing the significant differences between the 2003 and 2008 amendments and the ATRA, the district court assumed that cases concluding that those amendments were not clarifying compelled the same result here.

This Court should not follow suit. The district court failed to appreciate the ATRA's unambiguous language, the TVPRA's ambiguity (and the speed with which Congress moved to clarify upon learning of the ambiguity), and how easily the ATRA squares with a reasonable interpretation of the TVPRA and its legislative history. In brief, the ATRA is *precisely* the type of amendment meant to clarify prior legislation and apply retroactively. This Court should therefore reverse the district court's order denying plaintiffs' motion for relief under Federal Rule of Civil Procedure 60(b)(6).

## I. Legal Framework

As a general rule, new legislative action "which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past" does not apply retroactively.

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994) (quoting *Soc'y for Propagation of Gospel v. Wheeler*, 22 F. Cas. 756, 767 (C.C.D.N.H. 1814) (No. 13,156)). This "deeply rooted" presumption against retroactivity "has consistently been explained by reference to the unfairness of imposing new burdens on persons after the fact." *Id.* at 265, 270. Understandably so, as the retroactive application of a substantial change in the law "would pose a series of potential constitutional problems." *Beverly Cmty. Hosp. Ass'n v. Belshe*, 132 F.3d 1259, 1265 (9th Cir. 1997). By way of example, in *United States. v. Donaghe*, this court refused to give retroactive effect to an amendment to the sentencing guidelines because doing so would violate the ex post facto clause. 50 F.3d 608, 612-13 (9th Cir. 1994). Thus, to avoid running afoul of such constitutional protections, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Landgraf*, 511 U.S. at 264 (quoting *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988)).

But a court need not engage in an analysis under *Landgraf* and its progeny where a legislative action is simply technical or clarifying. And the sort of constitutional concerns underpinning *Landgraf* evaporate

where, as here, a new enactment "merely clarifies" what prior legislation "was originally intended to mean." *Beverly Cmty. Hosp.*, 132 F.3d at 1265. As this Court has held, if "the only function of [the new statute] in this situation is to state more clearly what the law already was — it has no retroactive effect that might be called into constitutional question." *Id.*

Indeed, retroactive amendments are often necessary, "whether to respond to emergencies, correct mistakes, to prevent circumvention of a new statute in the interval immediately preceding its passage, or simply to give comprehensive effect to a new law Congress considers salutary." *Landgraf*, 511 U.S. at 268. This Court has therefore "long recognized that clarifying legislation is not subject to *any* presumption against retroactivity." *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 689 (9th Cir. 2000) (emphasis added). To the contrary, "[n]ormally, when an amendment is deemed clarifying rather than substantive, it is applied retroactively." *Id.* at 689 (quotation marks omitted).

Although clarification "effective *ab initio* is a well-recognized principle," neither this Court nor its sister circuits[2] have recognized a bright-line test distinguishing a substantive legislative action from a clarifying one. *Liquilux Gas Corp. v. Martin Gas Sales*, 979 F.2d 887, 890 (1st Cir. 1992). However, a survey of the case law reveals that courts generally look to (1) statements by the enacting body of its intent to clarify prior legislation; (2) whether a conflict existed prior to the amendment; and (3) whether the amendment is consistent with a

---

[2] A number of circuit courts have likewise found "retroactivity to be a non-issue with respect to new laws that clarify existing law." *Levy v. Sterling Holding Co.*, 544 F.3d 493, 506-08 (3d Cir. 2008); *see also Cookeville Reg'l Med. Ctr. v. Leavitt*, 531 F.3d 844, 849 (D.C. Cir. 2008) (finding "no problem of retroactivity" where the Deficit Reduction Act "simply clarified an ambiguity in the existing legislation"); *Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004) (when an amendment alters, even "significantly alters," the original statutory language, this does "not necessarily" indicate that the amendment institutes a change in the law." (quoting *Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1283 (11th Cir. 1999) ("[C]oncerns about retroactive application are not implicated when an amendment . . . is deemed to clarify relevant law rather than effect a substantive change in the law.")); *Pope v. Shalala,* 998 F.2d 473, 483 (7th Cir. 1993) ("A rule simply clarifying an unsettled or confusing area of the law . . . does not change the law, but restates what the law according to the agency is and has always been: 'It is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand.' " (quoting *Manhattan Gen. Equip. Co. v. Commissioner,* 297 U.S. 129, 135 (1936))), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 563 (7th Cir. 1999); *Boddie v. Am. Broad. Cos.*, 881 F.2d 267, 269 (6th Cir. 1989) (same).

reasonable interpretation of the prior enactment and its legislative history. *See, e.g.*, *Leshinsky v. Telvent GIT, S.A.*, 873 F. Supp. 2d 582, 590 (S.D.N.Y. 2012) (distilling these three factors from circuit case law). Some courts, including this one, also find the speed with which an enactment follows the discovery of a conflict persuasive. *See Liquilux*, 979 F.2d at 890 (citing *Callejas v. McMahon*, 750 F.2d 729, 731 (9th Cir. 1984), *as amended* (Jan. 2, 1985)). At root, the court has a duty "to consider time and circumstances surrounding the enactment as well as the object to be accomplished by it." *Callejas*, 750 F.2d at 731.

## II. The District Court Erroneously Concluded That The ATRA Is Not A Technical And Clarifying Amendment

Here, instead of addressing those factors, the district court (1) erroneously dismissed the statutory language explaining the ATRA is a technical, clarifying change; (2) gave undue weight to the absence of a date of enactment or an express statement of retroactivity; and (3) incorrectly relied on caselaw analyzing prior TVPRA amendments. Accordingly, the district court wrongly concluded that, under *Landgraf,* absent a clear statement from Congress, the ATRA cannot (and does not) apply retroactively.

To begin, the district court failed to appreciate the significance of the statutory language explicitly labeling this amendment "technical and clarifying." This Court has emphasized that "[g]iven the extraordinary difficulty that the courts have found in divining the intent of the original Congress, a decision by the current Congress to intervene by expressly clarifying the meaning of the statute is worthy of real deference . . . . We therefore honor Congress' 'clarification' label and accept the new provisions as a statement of what the statute has meant all along." *ABKCO*, 217 F.3d at 689-90 (cleaned up) (quoting *Beverly Cmty. Hosp.*, 132 F.3d at 1266); *see also Crow Tribal Hous. Auth. v. U.S. Dep't of Hous. & Urb. Dev.*, 781 F.3d 1095, 1101 (9th Cir. 2015) (same). Other courts have likewise treated the title of an amendment as the "[m]ost significant" factor in determining whether an amendment clarifies or changes existing law. *Brown v. Thompson*, 374 F.3d 253, 259-60 (4th Cir. 2004) ("Congress formally declared in the titles of the relevant subsections of MMA that the amendments of MSP were 'clarifying' and 'technical.'").

To be sure, in *Beaver v. Tarsadia Hotels*, this Court deemed substantive "[a]n act to amend the Interstate Land Sales Full Disclosure

Act to *clarify* how the Act applies to condominiums," notwithstanding the Act's label. 816 F.3d 1170, 1187 (9th Cir. 2016) (emphasis added). But, as the district court failed to appreciate here, in *Beaver*, the new Act "discard[ed] an old application" of the law that had prevailed for decades prior. *Id.* However, as discussed in more detail *infra*, the ATRA is by no means a departure from a readily accepted interpretation of the TVPRA—to the contrary, section 1595 has covered attempts to financially benefit from trafficking since the 2008 amendments.

Moreover, *Beaver* further reasoned that the significant lapse between the bill's enactment and effective date suggested a substantive change. *Id.* Here, of course, Congress passed the ATRA without any opposition less than nine months after this Court concluded that section 1595 does *not* extend to attempts to benefit. *Ratha I*, 35 F.4th at 1176. A Congressional action that "follows fast upon [an] ambiguity's discovery" weighs in favor of clarification. *Liquilux*, 979 F.2d at 890.

In a similar vein, the district court afforded an inordinate amount of weight to the ATRA's lack of an (1) effective date; and (2) explicit statement of retroactivity. But these elements alone cannot override the deference owed to the ATRA's unambiguous title, particularly where, as

here, Congress amended the statute on the heels of a conflicting interpretation. *See Callejas*, 750 F.2d at 731 (finding an amendment enacted "not long after a controversy arose" clarifying largely because "a 'dispute or ambiguity . . . [is] an indication that a subsequent amendment is intended to clarify, rather than change, the existing law' ") (quoting *Brown v. Marquette Sav. & Loan Ass'n*, 686 F.2d 608, 615 (7th Cir. 1982)).

Finally, the district court erroneously relied on cases concluding that the 2003 and 2008 amendments to Section 1595 were not technical amendments.[3] Even so, it is hardly surprising that this Court refused to apply the 2003 TVPRA retroactively because those amendments created civil liability where it did not previously exist. 18 U.S.C. § 1595. In *Ditullio v. Boehm*, this Court did not even consider whether the addition of section 1595 was "clarifying," instead proceeding directly to a *Landgraf* analysis and arriving at the unremarkable conclusion that an entirely

---

[3] Several of the cases upon which the district court relied likewise did not address whether an amendment was clarifying at all. *See, e.g.*, *Owino v. CoreCivic, Inc.,* No. 17-CV-1112 JLS (NLS), 2018 WL 2193644, at *12-13 (S.D. Cal. May 14, 2018) (analyzing the 2008 TVPA amendments under *Landgraf*); *T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-CV-04933, 2022 WL 17363234, at *5 (S.D. Ohio Dec. 1, 2022) (same).

new cause of action changed substantive law. 662 F.3d 1091, 1100 (9th Cir. 2011).

Similarly, the 2008 amendments introduced a new crime: secondary liability. Such an enactment, by definition, "attaches new legal consequences" to prior conduct. *Landgraf*, 511 U.S. at 270. And, as a result, that amendment was also deemed substantive, not clarifying.

The ATRA is nothing like either the 2003 or 2008 amendments. It does not introduce an entirely new cause of action nor create a crime. Rather, the ATRA reaffirms that civil liability is coextensive with criminal liability under the TVPRA.

## III. Applying The Relevant Factors, The ATRA Is A Technical And Clarifying Amendment.

Had the district properly applied the relevant factors, it would have concluded that the ATRA is a technical and clarifying amendment.

*First*, Congress unambiguously labeled the ATRA a "technical and clarifying" amendment. As explained, the significance of this formal declaration cannot be ignored. *Thompson*, 374 F.3d at 259-60.

*Second*, the TVPRA's ambiguity prior to amendment is indisputable. True, this case does not present a longstanding circuit split. Before this Court's opinion in *Ratha*, only the First Circuit had

touched on this issue. *See Ricchio v. McLean*, 853 F.3d 553, 556-57 (1st Cir. 2017). But *Ricchio* came to the opposite conclusion, suggesting that section 1595 encompasses attempts and conspiracies. *Id.* Notably, Congress did not swiftly move to amend the statute after *Ricchio*.

It did, however, after *Ratha I,* and Congress's quick work evinces its intent to clarify, rather than change, the law. *Callejas*, 750 F.2d at 731; *Liquilux*, 979 F.2d at 890. Not only does this court "presume . . . Congress was well aware of prior judicial interpretations" of an amended statute, *United States v. Pepe*, 895 F.3d 679, 692 (9th Cir. 2018) (Thomas, J., dissenting), here advocacy groups actually alerted members of Congress and executive branch officials to this Court's decision. Martina E. Vandenberg & Maggie Lee, *Congress Amends the TVPRA to Correct Ninth Circuit's Erroneous Ruling in Ratha,* Transnational Litigation Blog, (Aug. 1, 2023), https://tlblog.org/congress-amends-the-tvpra-to-correct-ninth-circuits-erroneous-ruling-in-ratha.

*Third,* the amendment is consistent with a reasonable interpretation of the TVPRA and its legislative history. Recall that over the years, Congress has repeatedly affirmed its commitment to combatting human trafficking in all its forms through multiple

reauthorizations and expansions of anti-trafficking laws.  In particular, the 2008 amendments (1) created secondary liability for individuals who benefit financially from forced labor under section 1589; and (2) amended the civil liability provision, section 1595, to cover all crimes contained in Chapter 77—including section 1589.  The structure of these amendments ensures section 1595's civil remedy is coextensive with the TVPRA criminal predicates. To illustrate, in the criminal context, section 1589(b) covers *anyone* who "knowingly benefits" from participation in a labor trafficking venture.  Section 1594, in turn, prohibits an *attempt* to violate section 1589(b).  It follows that under a regime of coextensive civil and criminal liability, Congress has intended since 2008 for those who attempt to financially benefit from participating in a venture to also face civil liability under section 1595.

In short, the ATRA's addition of "attempts" to section 1595 does not "alter existing law as to construction of" the TVPRA, as amended in 2008. *Pepe*, 895 F.3d at 694 (Thomas, J., dissenting).  The amendment simply makes explicit what has been implicit in the TVPRA's structure all along.

## CONCLUSION

For the reasons set forth above, this Court should reverse and remand.

Respectfully submitted,

/s/ Anne M. Voigts

| | |
|---|---|
| Julia Romano | Anne M. Voigts |
| KING & SPALDING LLP | KING & SPALDING LLP |
| 633 West Fifth Street | 601 South California Avenue |
| Los Angeles, CA 90071 | Suite 100 |
| (213) 443-4355 | Palo Alto, CA 94304 |
| jromano@kslaw.com | (650) 422-6700 |
| | avoigts@kslaw.com |
| Zoe M. Beiner | |
| KING & SPALDING LLP | |
| 1700 Pennsylvania Avenue NW | |
| Washington, DC 20006 | |
| (202) 737-0500 | |

*Counsel for Amicus Curiae*

August 21, 2023

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 3,575 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word Century Schoolbook 14-point font.

Date: August 21, 2023

*/s/ Anne M. Voigts*
Anne M. Voigts

*Counsel for Amicus Curiae*