No. 23-55299

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

KEO RATHA; SEM KOSAL; SOPHEA BUN; YEM BAN; NOL NAKRY;
PHAN SOPHEA; AND SOK SANG,

*Plaintiffs-Appellants*,

v.

RUBICON RESOURCES, LLC

*Defendant-Appellee.*

On Appeal from the District Court for the Central District of California,
Honorable John F. Walter Presiding, Case No. 2:16-CV-04271-JFW

---

### APPELLANTS' REPLY BRIEF

---

Paul Hoffman
John Washington
SCHONBRUN SEPLOW
HARRIS HOFFMAN & ZELDES, LLP
200 Pier Ave., Suite 226
Hermosa Beach, CA 90254
(310) 396–0731

Catherine Sweetser
UCLA LAW CLINICS
385 Charles E Young Dr.
Los Angeles, CA 90095
(310) 267–5068

Agnieszka Fryszman
Nicholas J. Jacques
Madeleine Gates
COHEN MILSTEIN SELLERS &
TOLL PLLC
1100 New York Ave., N.W.
Ste. 500
Washington, D.C. 20006
(202) 408–4600

Dan Stormer
HADSELL STORMER RENICK
& DAI LLP
128 N. Fair Oaks Avenue
Pasadena, CA 91103
(626) 585–9600

## **TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................................1

II. ARGUMENT .........................................................................................2

    A.    This Court reviews legal errors de novo ...................................2

    B.    The lower court's decision to deny 60(b) relief rests on legal errors...............................................................................................3

        1.    ATRA applies to this case.................................................3

            a.    ATRA is a clarifying amendment.................................3

                (1)    The amendment's text shows it is clarifying..........4

                (2)    The timing shows the amendment is clarifying ................................................................7

                (3)    ATRA reinstates the prior understanding of the TVPRA ................................................................8

                (4)    ATRA is not Subject to *Landgraf* ........................11

            b.    The separation of powers doctrine does not bar relief.............................................................................12

        2.    The district court erred by incorporating prior erroneous holdings in its ruling ......................................................13

            a.    The district court's idiosyncratic definition of "participation" is erroneous ...........................................14

            b.    The district court erred when it analyzed Rubicon's state of mind................................................17

    C.    Rubicon's alternative arguments, which did not factor into the district court's decision on Plaintiffs' Rule 60(b)(6) motion, are meritless............................................................................................23

        1.    Plaintiffs are not required to plead the TVPRA definitional subsection or specific legal theories.....................23

        2.    Plaintiffs show specific intent...............................................25

        3.    Rubicon violated TVPRA section 1589(b).............................26

        4.    All Plaintiffs have standing....................................................28

III. CONCLUSION .................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABKCO Music, Inc. v. LaVere*,
  217 F.3d 684 (9th Cir. 2000) ...............................................................8

*Armstrong v. Brown*,
  768 F.3d 975 (9th Cir. 2014) ..............................................................25

*Bank Markazi v. Peterson*,
  578 U.S. 212 (2016)..............................................................................13

*Beaver v. Tarsadia Hotels*,
  816 F.3d 1170 (9th Cir. 2016) .......................................................5, 6, 8

*Beverly Community Hospital Association v. Belshe*,
  132 F.3d 1259, 1265-66 (9th Cir. 1997)..............................................4

*Bedoni v. Navajo-Hopi Indian Relocation Comm'n*,
  878 F.2d 1119 (9th Cir. 1989) .............................................................8

*Bistline v. Parker*,
  918 F.3d 849 (10th Cir. 2019) ......................................................10, 15

*Bowers v. Campbell*,
  505 F.2d 1155 (9th Cir. 1974) ...........................................................23

*Brown v. Thompson*,
  374 F.3d 253 (4th Cir. 2004) ...............................................................5

*Callejas v. McMahon*,
  750 F.2d 729 (9th Cir. 1984) ........................................................6, 8, 9

*Camayo v. John Peroulis & Sons Sheep*,
  2012 WL 4359086 (D. Colo. Sept. 24, 2012)....................................29

*Cannon v. University of Chicago*,
  441 U.S. 677 (1979).............................................................................7

*Conroy v. Aniskoff*,
  507 U.S. 511 (1993).............................................................................7

*Dep't of Toxic Substances Control v. Interstate Non-Ferrous Corp.*,
    99 F. Supp. 2d 1123 (E.D. Cal. 2000) ...................................................6

*Desertrain v. City of Los Angeles*,
    754 F.3d 1147 (9th Cir. 2014) .....................................................24, 25

*Dream Games of Arizona, Inc. v. PC Onsite*,
    561 F.3d 983 (9th Cir. 2009) ........................................................24, 25

*Dubin v. U.S.*,
    599 U.S. 110 (2023)..........................................................................5

*Evans v. Indep. Ord. of Foresters*,
    141 F.3d 931 (9th Cir. 1998) ............................................................2

*U.S. ex rel. Fadlalla v. DynCorp Int'l*,
    402 F. Supp. 3d 162 (D. Md. 2019)...................................................27

*G.G. v. Salesforce.com*,
    76 F.4th 544 (7th Cir. 2023) ...............................................14, 15, 16

*Koon v. United States*,
    518 U.S. 81 (1996)..........................................................................2

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994)..................................................................11, 12

*Lemoge v. U.S.*,
    587 F.3d 1188 (9th Cir. 2009) ..........................................................2

*Liljeberg v. Health Servs. Acquisition Corp.*,
    486 U.S. 847 (1988)........................................................................12

*Liquilux Gas Corp. v. Martin Gas Sales*,
    979 F.2d 887 (1st Cir. 1992)..............................................................7

*Martinez-Rodriguez v. Giles*,
    31 F.4th 1139 (9th Cir. 2022) .........................................................29

*McCoy v. Chase Manhattan Bank*,
    654 F.3d 971 (9th Cir. 2011) ............................................................8

iv

*Nestle USA, Inc. v. Doe*,
   141 S. Ct. 1931 (2021)....................................................................22, 23, 27, 28

*Norambuena v. W. Iowa Tech Cmty. Coll.*,
   2022 WL 987946 (N.D. Iowa Mar. 31, 2022)....................................................10

*Patchak v. Zinke*,
   583 U.S. 244 (2018)........................................................................................13

*Phelps v. Alameida*,
   569 F.3d 1120 (9th Cir. 2009) ............................................................1, 2, 12, 14

*Piamba Cortez v. Am. Airlines*,
   177 F.3d 1272 (11th Cir. 1999) ...........................................................................6

*Plaut v. Spendthrift Farm*,
   514 U.S. 211 (1995)................................................................................12, 13

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996) .......................................................................8, 26

*Range Road Music, Inc. v. East Coast Foods, Inc.*,
   668 F.3d 1148 (9th Cir. 2012) ..........................................................................24

*Ratha v. Phatthana Seafood Co.*,
   35 F.4th 1159 (9th Cir. 2022) ...................................................................*passim*

*Ricchio v. McLean*,
   853 F.3d 553 (1st Cir. 2017)........................................................................11, 15

*Rodriguez v. Pan Am. Health Org.*,
   29 F.4th 706 (D.C. Cir. 2022)....................................................................*passim*

*Roe v. Howard*,
   917 F.3d 229 (4th Cir. 2019) ........................................................................9, 23

*Ross v. Jenkins*,
   325 F. Supp. 3d 1141 (D. Kan. 2018)................................................................10

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
   547 U.S. 47 (2006)............................................................................................28

*S.E.C. v. Seaboard Corp.*,
677 F.2d 1297 (9th Cir. 1982) ............................................................26

*Sagana v. Tenorio*,
384 F.3d 731 (9th Cir. 2004) ..............................................................23

*Sherman v. Trinity Teen Sols., Inc.*,
2023 WL 7138509 ...............................................................................10

*Slottow v. Am. Cas. Co. of Reading, Pa.*,
10 F.3d 1355 (9th Cir. 1993) ..............................................................30

*St. Louis v. Perlitz*,
2016 WL 1408076 (D. Conn. Apr. 8, 2016)........................................27

*U.S. v. Calimlim*,
538 F.3d 706 (7th Cir. 2008) ..............................................................29

*U.S. v. Contreras*,
895 F.2d 1241 (9th Cir. 1990) ..............................................................5

*U.S. v. Dann*,
652 F.3d 1160 (9th Cir. 2011) ............................................................29

*U.S. v. Joyce*,
693 F.2d 838 (8th Cir. 1982) ..............................................................25

*U.S. v. Lopez-Pastrana*,
244 F.3d 1025 (9th Cir. 2001) ............................................................25

*U.S. v. Rodriguez*,
880 F.3d 1151 (9th Cir. 2018) ............................................................25

*U.S. v. Wyle (In re. Pac. Far E. Lines, Inc.)*,
889 F.2d 242 (9th Cir. 1989) ..............................................................13

*Wesson v. U.S.*,
48 F.3d 894 (5th Cir. 1995) ..............................................................6, 8

*Zetwick v. Cnty. of Yolo*,
850 F.3d 436 (9th Cir. 2017) ..............................................................18

**Statutes**

18 U.S.C. § 2 ................................................................................... 15

18 U.S.C. § 1589 .................................................................... *passim*

18 U.S.C. § 1594 ........................................................... 10, 23, 26

18 U.S.C. §1595 ..................................................................... *passim*

18 U.S.C. § 1961 ............................................................................ 15

22 U.S.C. § 7101 ................................................................... 21, 29

Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117-
    347, 136 Stat., 6199 (2023) ........................................... *passim*

**Other Authorities**

154 Cong. Rec. S4799-800 (daily ed. May 22, 2008) (statement of
    Sen. Biden) ............................................................................ 22

Fed. R. Civ. P. 60 ............................................... 1, 12, 13, 18, 23

H.R. Rep. No. 108-264, pt. 2 (2003) ...................................... 9

Model Penal Code Part I Commentaries, vol. 2, cmt. 2, Penal Code
    §5.01(1) (Am. L. Inst. 1985) ............................................... 25

# I. __INTRODUCTION__

The district court's decision to deny Plaintiffs' motion for relief from judgment should be reversed. A unanimous Congress responded to this Court's decision in *Ratha I* by enacting a "technical and clarifying" amendment as part of the Abolish Trafficking Reauthorization Act of 2022 because Congress intended victims of forced labor to have a remedy against persons who attempt or conspire to profit from their abuse. When it labeled the amendment, Congress intentionally chose terms that courts have found sufficient to demonstrate that an amendment is clarifying and retroactive. This Circuit holds that extraordinary circumstances such as these warrant relief under Federal Rule of Civil Procedure 60(b)(6).

Defendant Rubicon does not dispute that this Circuit uses the five factors in *Phelps v. Alameida*, 569 F.3d 1120, 1135-39 (9th Cir. 2009) to evaluate Rule 60(b)(6) motions. Rubicon also does not dispute the district court's conclusion that three of the five factors are neutral or favor relief. In determining that the two remaining factors weighed against relief, the district court committed multiple errors of law. First, the district court erred when it concluded the ATRA was not clarifying and therefore did not apply to this case. Rubicon's arguments fly in the face of ample Ninth Circuit precedent and ignore that the text, timing, and context of the amendment show it is clarifying and should apply here. Second, the district court erred when it concluded that its prior erroneous holdings could sustain the

1

judgment. Rubicon concedes this Court did not previously reach these questions, and its defense of these erroneous rulings is unpersuasive. When these errors are corrected, the *Phelps* factors overwhelmingly favor relief. Rubicon's remaining arguments, which were not raised to the district court in response to Plaintiffs' 60(b) motion, are without merit: all Plaintiffs have standing; Plaintiffs' complaint is sufficient; a TVPRA violation exists; and Plaintiffs can show Rubicon intended to profit from selling the shrimp to Walmart. The judgment should be vacated and Plaintiffs permitted to try their case to a jury.

## II.  ARGUMENT

### A.  This Court reviews legal errors de novo

To start, Rubicon incorrectly disputes the standard of review. AB11, n.2; *see* AOB22. "A district court abuses its discretion by denying relief under Rule 60(b) when it makes an error of law," *Lemoge v. U.S.*, 587 F.3d 1188, 1192 (9th Cir. 2009), including by resting on an "underlying decision [that] was based on an error of law," *Evans v. Indep. Ord. of Foresters*, 141 F.3d 931, 932 (9th Cir. 1998); *see also Koon v. U.S.*, 518 U.S. 81, 100 (1996) (legal error is abuse of discretion "by definition").

**B.** **The lower court's decision to deny 60(b) relief rests on legal errors**

1. **ATRA applies to this case**

   a. **ATRA is a clarifying amendment**

This Court was the first to hold that attempt (and by the same reasoning, conspiracy) liability was not available in a TVPRA civil action against a person who seeks to benefit from forced labor. *Ratha v. Phatthana Seafood Co.* ("*Ratha I*"), 35 F.4th 1159, 1175 (9th Cir. 2022). In the very next Reauthorization, Congress amended the statute. AOB19, 29-30. As the then-Chairman of the House Judiciary Committee explained:

> In response to this Court's ruling, Congress acted swiftly and unanimously … The amendment makes clear that the civil remedy provided by §1595 applies – as it always has – to attempts to benefit from a forced labor venture.

> … Indeed, the title of the amendment was deliberately chosen because members of Congress were aware that federal courts have found this terminology to be the most convincing evidence of the clarifying nature of an amendment … Congress intended to signal that the amendment was intended to apply retroactively in accordance with the well-established caselaw on clarifying amendments…

Br. of Members of Cong. Rep. Nadler et al., as Amici Curiae in Support of Plaintiffs-Appellants at 5, 13 (internal citations omitted).

It is undisputed that Congress can enact amendments to correct judicial interpretations of a statute and that such amendments are not subject to the presumption against retroactivity. AOB23. In addition, it is clear from the ATRA's text, timing, and context that Congress intended the amendment to be "clarifying."

3

AOB25-29; *see also* Br. of Professor David Abramowitz as Amicus Curiae in Support of Plaintiffs-Appellants at 16-18.

Rubicon does not seriously dispute the import of these factors but rather argues about a blog post; wrongly asserts that a statute's title should not be considered; disputes the existence of a circuit split (although a split is not required); and devotes the remainder of its opposition to discussing factual distinctions in the cases Plaintiffs cited. None of the distinctions Rubicon attempts to draw undermines the conclusion that Congress intended the ATRA to be a clarifying amendment. Nor does Rubicon cite any case that supports an alternative conclusion.

(1)     The amendment's text shows it is clarifying

Congress expressly stated it was enacting a "technical and clarifying" amendment, intentionally choosing terms courts have found sufficient to declare that an amendment is clarifying and retroactive. AOB30-31. Despite the ample Ninth Circuit and out-of-circuit authority cited by Plaintiffs, Rubicon argues that little weight should be accorded to Congress's decision to formally label the amendment "technical and clarifying." In *Beverly Community Hospital Association v. Belshe*, the Ninth Circuit noted that Congress had "expressly (and formally)" declared an amendment was clarifying, including in the title, and that such formal legislative action "is entitled to great weight." 132 F.3d 1259, 1265-66 (9th Cir.

4

1997); *see also U.S. v. Contreras*, 895 F.2d 1241, 1244 (9th Cir. 1990) ("Congress itself, however, labeled the change a 'clarification'"); *Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004) ("Most significant to our determination here, Congress formally declared in the titles of the relevant subsections" that the amendments "were 'clarifying' and 'technical.'"). Knowing that "federal courts have found this terminology to be the most convincing evidence of the clarifying nature of an amendment," Congress deliberately entitled the ATRA to be "clarifying and technical" in order "to signal that the amendment was to apply retroactively in accordance with the well-established case law on clarifying amendments." Br. of Rep. Nadler et al., at 13-14.

Rubicon's emphasis on the distinction between the body of the statute and its title is inapposite: courts have repeatedly recognized that the label Congress chooses to give legislation is a formal expression of its intent. *Beverly*, 132 F.3d at 1266; *Brown*, 374 F.3d at 259; *see generally Dubin v. U.S.*, 599 U.S. 110, 120-21 (2023) ("Start at the top, with the words Congress chose for §1028A's title …").

Rubicon relies on *Beaver v. Tarsadia Hotels*, 816 F.3d 1170 (9th Cir. 2016), to argue that the title is immaterial, but *Beaver* does not go that far. *Beaver* found that inclusion of the term "clarify" in a long title did not outweigh other indicators: courts had consistently interpreted the statute's text for decades, and the amendment's effective date was 180 days *after* its enactment, making it explicitly

5

prospective, not retroactive. 816 F.3d at 1187. Accordingly, *Beaver* concluded that a title is "not controlling" when all other factors pointed to a different conclusion. *Id.* at 1186.

Here, in contrast, all indicators, including the text, timing, and context show the ATRA is clarifying. Unlike *Beaver*, ATRA does not upend decades of interpretation. To the contrary, Rubicon has not identified a single other court interpreting the TVPRA consistent with *Ratha I*. Moreover, Congress enacted the amendment shortly after the Ninth Circuit ruled, using the very words *Ratha I* identified as missing from the statute. AOB29; *see also, e.g.*, *Dep't of Toxic Substances Control v. Interstate Non-Ferrous Corp.*, 99 F. Supp. 2d 1123, 1133 (E.D. Cal. 2000) ("When Congress clarifies a statute, it adds language to show how the law originally was intended to operate."). Thus, the text, timing, and context are consistent with Congress's characterization of the ATRA as "technical and clarifying."

Rubicon also argues that an amendment cannot clarify a statute in response to a judicial opinion unless the legislative history references the opinion. AB21-22. There has never been such a requirement – courts routinely find amendments overruling court decisions to be clarifying without reference to legislative history. *E.g.*, *Callejas v. McMahon*, 750 F.2d 729, 731 (9th Cir. 1984); *Wesson v. U.S.*, 48 F.3d 894, 901 (5th Cir. 1995); *see also Piamba Cortez v. Am. Airlines*, 177 F.3d

1272, 1284 (11th Cir. 1999) ("courts may rely upon a declaration by the enacting body that its intent is to clarify" but a "mere statement in a conference report" is "obviously less weighty" than the text); *cf. Conroy v. Aniskoff*, 507 U.S. 511, 518-528 (1993) (Scalia, J., concurring) (analysis should stop at text; criticizing reliance on committee report). Here, there was no Committee Report accompanying the bill at all, so it is not the case that a statement on this provision was omitted from the legislative history.

(2)   The timing shows the amendment is clarifying

Rubicon would have the Court ignore that the ATRA "follow[ed] fast upon" the dispute created by *Ratha I. E.g.*, *Liquilux Gas Corp. v. Martin Gas Sales*, 979 F.2d 887, 890 (1st Cir. 1992); AOB31-32. Congress did not coincidentally pass the ATRA shortly after *Ratha I*, it did so in direct response to this Court's decision, acting after advocates brought this case to lawmakers' attention. Br. of Rep. Nadler et al., at 10-11 ("Congress was promptly made aware of this misinterpretation of the scope of the TVPRA's civil remedy … *Ratha* is precisely the type of case that Congress sought to reach with the 2008 amendments."); Martina E. Vandenberg & Maggie Lee, *Congress Amends the TVPRA to Correct Ninth Circuit's Erroneous Ruling in Ratha,* Transnational Litigation Blog, (Aug. 1, 2023) (advocates "proposed clarifying amendments to Congress based on the text of the Ninth Circuit decision"); *see generally, e.g.*, *Cannon v. Univ. of Chi.*, 441 U.S. 677, 696-

704 (1979) (appropriate and realistic to presume Congress legislated with awareness of relevant judicial decisions).

Rubicon argues that "no appellate court had examined the text of §1595(a) to address whether the civil remedy provision encompassed attempts to benefit," until *Ratha I*. AB14 n.3; *compare Beaver*, 816 F.3d at 1186 (amendment altering interpretation that had prevailed for decades not clarifying), *with McCoy v. Chase Manhattan Bank*, 654 F.3d 971, 974 (9th Cir. 2011); *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 691 (9th Cir. 2000); *Wesson,* 48 F.3d at 901 ("*Miller* case was wrongly decided and Congress acted to correct it"); *see also* AOB32. The timing of the amendment indicates it is clarifying.

(3)    ATRA reinstates the prior understanding of the TVPRA

Rubicon previously conceded that the TVPRA provision at issue was ambiguous: "To be sure, the TVPRA, and particularly the interplay between its criminal provisions and the civil remedy may not be a model of clarity." Resp. to Pet. for Reh'ng en Banc at 9, *Ratha I* (Dkt. 103). Now, Rubicon argues a circuit split is necessary. It is not. The Ninth Circuit routinely finds amendments that give a statute a meaning different from the Ninth Circuit's own prior interpretation to be clarifying (with no Circuit split). *See, e.g.*, *ABKCO*, 217 F.3d at 690-92; *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121 (9th Cir. 1989). Furthermore, Rubicon ignores that in the very case it cites, *Callejas*, the Ninth

8

Circuit found that two district court decisions signaled a "dispute among courts," evidence that an amendment was clarifying. 750 F.2d at 731. Rubicon acknowledges that Plaintiffs identified district court cases from across the country that interpreted the TVPRA differently than *Ratha I*, including by allowing civil claims of beneficiary liability for attempt or conspiracy, allowing claims pleaded directly under the §1589(b) beneficiary prong (rather than the §1595 beneficiary provision), or recognizing that a "perpetrator" encompasses a participant in venture. AB16 (citing AOB26-28). These cases signal "a dispute among courts" and are evidence that the amendment is clarifying.

Relying solely on *Ratha I*, Rubicon argues that the TVPRA did not previously permit civil liability for attempt or conspiracy to benefit. AB13. But no other court has agreed with *Ratha I* that the TVPRA's civil remedy is narrower than its criminal prohibitions. When Congress enacted the civil remedy, it intended the cause of action to be coextensive with the criminal violations, which indisputably included attempt-to-benefit liability. *E.g.*, *Roe v. Howard*, 917 F.3d 229, 241 (4th Cir. 2019) ("§1595 directly incorporates predicate offenses"); H.R. Rep. No. 108-264, pt. 2, at 6 (2003) ("bill creates a civil cause of action for any victim of a violation of sections 1589, 1590 or 1591"). At each reauthorization Congress expanded, not contracted, the scope of the statute, including the civil remedy, and maintained the parallel structure. *E.g.*, Br. of Rep. Nadler et al. at 7-9;

9

Br. of Professor Abramowitz at 17-18. Significantly, *Ratha I* undermines the choices made by Congress by eliminating the civil remedy in some of the worst cases: where the government has interdicted the goods or arrested the perpetrator before the benefit was achieved. AOB32.

Rubicon attempts to distinguish the cases cited by Plaintiffs by arguing, for example, that there was no challenge to, and therefore no analysis of, attempt liability. But this just proves that *Ratha I* upended the interpretation that had been followed by both courts and litigants. Moreover, courts have approved civil claims pleaded directly under the §1589(b) beneficiary prong[1] (rather than under §1595). *E.g.*, *Bistline v. Parker*, 918 F.3d 849, 873 (10th Cir. 2019); *Norambuena v. W. Iowa Tech Cmty. Coll.*, 2022 WL 987946, at *8 (N.D. Iowa Mar. 31, 2022); *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1164 (D. Kan. 2018); AOB26-28. Indeed, in *Sherman v. Trinity Teen Sols., Inc.*, the Tenth Circuit recently held that civil liability for benefitting from forced labor was available under §1589(b) and that, separately and in addition, "[v]ictims may *also* proceed" under §1595(a)'s beneficiary provision. 84 F.4th 1182, 1187 n.2 (10th Cir. 2023) (emphasis added).

Likewise, the D.C. Circuit held that a person who commits a violation of §1589(b) is a "perpetrator" subject to civil liability. *Compare Rodriguez v. Pan*

---

[1] It is undisputed that a violation of §1589(b) includes an attempt or conspiracy. *See* 18 U.S.C. § 1594; *Ratha I*, 35 F.4th at 1176; AOB25-30.

*Am. Health Org*. ("*PAHO*"), 29 F.4th 706, 716 (D.C. Cir. 2022) ("The physicians allege that PAHO committed a financial crime in the U.S., *see* 18 U.S.C. § 1589(b), and press the corresponding civil claim ... against the *perpetrator*" (emphasis added)), *with Ratha I*, 35 F.4th at 1175 ("Neither Rubicon nor Wales are alleged to have perpetrated any TVPRA violations against Plaintiffs").

 *Ricchio v. McLean*, 853 F.3d 553, 556-57 (1st Cir. 2017), employed a different analysis, finding both attempt and conspiracy liability available under §1595(a). Rubicon attempts to distinguish *Ricchio*, AB15, but *Ricchio* listed expressly non-exhaustive examples of potential violations (including "1594(b) and (c), and §1595(a)" and "1594(a) and 1595(a)") and explained that its "major point of disagreement with the district court" was the holding that success was required. 853 F.3d at 856-58. The motel sought to benefit, but did not, from an anticipated ongoing venture that was interrupted when the victim escaped.

 These cases clearly part ways with *Ratha I*'s decision to narrow the scope of civil liability. The analyses of the text, predicate act structure, and purpose of the TVPRA found in these cases is consistent with ATRA and demonstrates that *Ratha I* was out of step with congressional intent.

 (4) ATRA is not Subject to *Landgraf*

 Rubicon continues to rely upon *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994), AB17-18, without acknowledging that *Landgraf* does not apply to

11

clarifying legislation. AOB24-25 & n.3. In any event, even if *Landgraf* did apply,

Plaintiffs satisfy it at the first step because Congress's use of the terms "clarifying

and technical" demonstrates Congress's express intent that the ATRA apply

retroactively. *See* 511 U.S. at 280; Br. of Rep. Nadler et al. at 5-6, 13-14; *supra*

pp.4-6.

> b.    **The separation of powers doctrine does not bar relief**

The district court considered Plaintiffs' application for relief under Rule

60(b)(6), which authorizes judicial revision of final judgments in extraordinary

circumstances. *See* FRCP 60(b)(6); *Plaut v. Spendthrift Farm*, 514 U.S. 211, 233-

34 (1995); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988).

The district court could have found that Plaintiffs did not qualify for 60(b) relief

because they were not diligent, too much time had passed, or Rubicon had relied

on the judgment. *See Phelps*, 569 F.3d at 1135-39. Instead, the district court found

these factors weighed in favor of relief or were neutral. AOB5-6. Plaintiffs argue

that the district court committed various legal errors while evaluating the other

applicable factors, but there is no dispute that the district court's determination was

within its Article III power. *See Plaut*, 514 U.S. at 233-34. ATRA did not purport

to compel the district court to re-open this or any other judgment.

There is no constitutional bar to such relief, and Rubicon acknowledges

*Plaut* is distinguishable because it "involved a statute that *directed* courts to reopen

certain securities fraud cases upon motions by plaintiffs, and thus implicated the separation of powers doctrine." AB31 (emphasis added). Rubicon then asks this Court to stretch *Plaut* too far. The Supreme Court has repeatedly declined to expand *Plaut* beyond an improper congressional command to reopen a judgment. *See Patchak v. Zinke*, 583 U.S. 244, 909 (2018); *Bank Markazi v. Peterson*, 578 U.S. 212, 226 (2016). *Plaut* cannot be stretched to bar the district court from exercising its own discretion to apply clarifying legislation to a reopened case; to the contrary, *Plaut* itself reaffirmed that Rule 60(b) "confirms the courts' own inherent and discretionary power, 'firmly established in English practice long before the foundation of our Republic,' to set aside a judgment whose enforcement would work inequity." 514 U.S. at 233 (internal citation omitted); *see also U.S. v. Wyle (In re Pac. Far E. Lines, Inc.)*, 889 F.2d 242, 250 (9th Cir. 1989) (granting Rule 60 motion to claw back settlement based on retroactive legislation).

### 2. The district court erred by incorporating prior erroneous holdings in its ruling

The district court's reliance on legally unsupported conclusions from its summary judgment order was an error of law. In *Ratha I*, this Court did not reach the district court's decision that (1) applied the wrong test for "participation" in a venture, and (2) misapplied the summary judgment standard to conclude Rubicon could not have known of the forced labor. Instead, this Court upheld summary judgment in Rubicon's favor solely based on its interpretation of §1595(a). *Ratha*

13

*I,* 35 F.4th at 1176. Congress amended the TVPRA in response to *Ratha I*, and Plaintiffs sought relief from judgment based on this clarification. AOB5. In denying Plaintiffs' 60(b)(6) motion, the district court held that its prior, unreviewed decisions "fully supported" judgment in Rubicon's favor, and thus the first and fifth *Phelps* factors weighed against relief. 1-ER-6. The district court's ruling incorporated its earlier errors.

Rubicon argues that Plaintiffs are asking the Court to "rethink what the Court has already thought through merely because [they] disagree[] with the Court's decision." (AB 37.) But this Court did not rule on the district court holdings that now form the basis of both the summary judgment order and 60(b)(6) order. Plaintiffs seek review of the legal errors that are the foundation of the district court's decision to deny relief from judgment.

> a. **The district court's idiosyncratic definition of "participation" is erroneous**

No court has agreed with the district court's erroneous definition of "participation in a venture."[2] The Seventh Circuit recently joined the Eleventh Circuit to hold that "the alleged venture can be a 'commercial venture' like running or expanding a business," including a business whose primary focus is not trafficking. *G.G. v. Salesforce.com*, 76 F.4th 544, 554 (7th Cir. 2023) (internal

---

[2] The sole decision relied upon below was overturned. AOB45.

14

citations omitted). The Court of Appeals went on to observe that "[n]early every court agrees." *Id*. at n.8.

No court requires every venture participant to participate in the illegal recruitment and employment practices – some participants may threaten the workers, others may provide legal services, conduct financial transactions, or rent out space to the person who issues the threats. *PAHO*, 29 F.4th at 715 (financial transactions); *Bistline,* 18 F.3d at 849 (legal services); *Ricchio,* 853 F.3d at 555 (rent motel room). Other provisions impose liability on aiding and abetting (18 U.S.C. § 2) or operating and managing the labor offenses (18 U.S.C. § 1961 *et seq*.). As the Seventh Circuit recently held, "[a]s a matter of law, such a direct connection between Salesforce and GG's trafficking is not necessary. Under Section 1595, we focus on participation in a 'venture' not participation in 'an act in violation' of section 1591. In other words, participant liability does not require direct participation in sex trafficking." *Salesforce.com*, 76 F.4th at 561.

In a case brought by doctors who alleged Cuba forced them to work in Brazil against their will, the D.C Circuit found that the Pan-American Health Organization participated in a venture when it transferred funds from Brazil to Cuba: "PAHO had the role of financial 'intermediary,' transferring money among Mais Médicos participants." *PAHO*, 29 F.4th 706, 715 (D.C. Cir. 2022). Similarly, the Seventh Circuit found that "a continuous business relationship" suffices for

"participation." *Salesforce.com*, 76 F.4th at 559. Here, Rubicon had a "continuous business relationship" with Phatthana that enabled Phatthana to expand its market into the United States.

Rubicon argues its conduct was "passive" and consisted of merely ordering products. Not so. Rubicon was co-founded by the owner of the Thai factory. AOB9-10. Rubicon combined the output of various Thai factories to enable the factories to compete in the market for private label products. *Id*. Rubicon conducted market research, developed packaging, and brought U.S. executives to Thailand for on-site visits. AOB10; 6-ER-1247-1251; 6-ER-1276. Rubicon ensured that the Thai factories had acceptable supplies of raw materials. AOB10. Rubicon conducted quality control and trained factory staff. AOB10-11. Rubicon selected the auditors and conducted on-site pre-audits. AOB10-11; 4-ER-796; 6-ER-1253-1255. The venture only profited when Rubicon sold its products to U.S. customers. AOB10.

Rubicon also kept tabs on labor concerns, including worker documentation, labor unrest, wage rates, and what language was used on the pay slips. AOB11. After the press reported on the forced labor allegations at Phatthana, Rubicon coordinated the response in order to protect the venture. AOB12. Rubicon handled the press, coordinated an outreach campaign, and met with the United Nations, NGOs, and industry groups. AOB12.

The district court erred as a matter of law when it adopted the wrong definition of "participation," leading it to grant summary judgment.

> b. **The district court erred when it analyzed Rubicon's state of mind**

Rubicon does not challenge the legal standards for analyzing Rubicon's state of mind (laid out in AOB46-48); instead, Rubicon makes erroneous factual challenges that only confirm that the district court erred by resolving this question on summary judgment. The most relevant time period for assessing state of mind in this case is July 2012 through September 2012 – when Rubicon repeatedly attempted to sell shrimp it knew, recklessly disregarded, and should have known was made with forced labor. Rubicon repeatedly attempted to sell that shrimp to Walmart **even after** Walmart informed Rubicon it would not accept the shrimp because of concerns about forced labor at the Phatthana factory. AOB13; 6-ER-1294. Indeed, this Court found that on February 23, 2012, "Rubicon was undisputedly aware of Ratha's whistleblower report." *Ratha I*, 35 F.4th at 1177. As a result, Rubicon's complaints about a "hodgepodge" of "general reports," AB43-47, **before** February 2012 are irrelevant. Rubicon's awareness of the many Phatthana-specific reports **after** February 2012 at a minimum creates a genuine issue of material fact.

Rubicon otherwise invites this court to repeat the district court's errors by taking a selective view of the evidence and improperly drawing inferences against

Plaintiffs. It is black-letter law that "what is required to defeat summary judgment is simply evidence such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor." *Zetwick v. Cnty. Of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quotation omitted) (district court erred because it "had *not* properly considered the totality of the circumstances" in granting summary judgment); AOB46-48. When the evidence is evaluated under the proper standard, it is apparent that the district erred when it granted summary judgment on knowledge and compounded that error when it incorporated that erroneous decision into its denial of Rule 60(b) relief.

Rubicon cherry-picks evidence that purportedly supports its version of events, but none of Rubicon's evidence would preclude a reasonable jury from concluding that it knew about, should have known about, or recklessly disregarded the factory defendants' forced labor. Rubicon concedes it was "aware" of the news articles about Plaintiff Ratha,[3] describing them as "unsubstantiated." AB47. But Rubicon fails to address the corroborating reports by non-governmental

---

[3] Rubicon asserts there is "uncontradicted" evidence showing "the article's source recanted," but the cited document does not support this claim. Mr. Ratha did not recant. *E.g.*, 6-ER-695-696. Tellingly, Rubicon did not move for summary judgment on Mr. Ratha's TVPRA claims. AOB47. Furthermore, the cited news articles – which were circulated by Rubicon managers – reported that *thousands* of workers (not just Mr. Ratha) wished to leave but could not get their passports back. AOB14.

18

organizations and a local Thai University. AOB 14-15 (citing University study confirming passport confiscation and debt bondage at Phatthana). Rubicon also disputes facts (including disputing its own CEO's testimony, AB44) about its visits to the factory, but that dispute cannot sustain the district court's ruling. Disputes of material facts go to the jury, and knowledge of the abuses can be gained other than by a site visit.[4]

It is a rare case where the United Nations hosts an international meeting to discuss forced labor at a defendant's own venture partner factory that is attended by the defendant's own executive. AOB15; 6-ER-1308 (meeting to address "human trafficking in the Thai seafood industry"). Here, a Rubicon executive attended the June 2012 UN meeting (other attendees included "seafood industry and human trafficking experts" from both the private sector and government) where the problems at the Phatthana factory were discussed. 6-ER-1308. That executive wrote a memo back to Rubicon management highlighting that "NGOs repeatedly called Rubicon and PTN out as bad actors" and noted that the United Nations was focused on the problem of document seizure and trafficking at Phatthana. 6-ER-1312. This is not a general or unsubstantiated report.

---

[4] Rubicon's cited cases (AB44-45) do not stand for the proposition that a site visit, rather than reports or other communications, is required to show knowledge.

19

Rubicon argues it "tried to find out what happened," AB47, but a jury could disagree. None of Rubicon's cited events – the UN meeting, the speech by the Cambodian Ambassador, the Thai inquiry, or the BAP audit – bear the weight Rubicon seeks to place on them. At the UN, Rubicon did not "try to find out what happened" but vigorously defended and deflected the allegations, coordinating with an "attack dog" ally and a "hand signal" arrangement. 6-ER-1312.

Rubicon claims it relied on audits, but the facts show Rubicon cherry-picked an auditor who did not include a single question about passport withholding, recruitment fees, or debt bondage in the audit. AOB10, 17, 43, 54. The BAP audit is in the record, and even a cursory read shows it does not address the indicia of forced labor. 3-ER-283-345, 3-ER-458-59. Moreover, the BAP audit was not done in response to the allegations but was a routine audit for certification purposes. *E.g.*, 4-ER-796. Rubicon actively avoided triggering a Walmart "Ethical Standards Audit" for fear that Phatthana would receive a negative report. 7-ER-1561. More damning, a BAP executive underscored to Rubicon in April 2012 that the issue of debt bondage at Phatthana "warrants serious investigation" – Rubicon managers responded "pls keep internal." 3-ER-564, 9-ER-2136. Rubicon did not investigate. AOB15, 54.[5]

---

[5] Furthermore, Rubicon's CEO testified that he could not remember requiring Phatthana to certify that there was no trafficking or forced labor in its supply chain, did not have an executive assigned to anti-trafficking efforts, and

Instead of conducting its own investigation, Rubicon points to what it describes as Cambodian and Thai government investigations. AB47. But the short speech by the Cambodian Ambassador to the workers at the factory (in which she urged them to avoid drugs, alcohol, and HIV) is not an "investigation." AOB57. And the July 2012 Thai report demonstrates that the Thai investigation did not clear Phatthana but instead confirmed that the wage deductions and passport withholding violated Thai law: Labour Ministry "intervened to address unlawful practices on the part of the employer. Measures to rectify the situation have been implemented and some interventions are still on going." AOB18-19; 9-ER-2063. That the factory was found to violate Thai "labor" law rather than Thai "trafficking" law by withholding passports and engaging in debt bondage does not save the day for Rubicon, as benefitting (or attempting to benefit) from that conduct (regardless of foreign law label) is a violation of the TVPRA. *See* 22 U.S.C. § 7101(b)(10) (Congress finds "trafficking also involves violations of other laws, including labor and immigration codes").

Walmart was not convinced by Rubicon's explanations and refused to accept shipment even after these so-called "investigations." AOB13. Rubicon did not try

---

couldn't say if Rubicon trained employees in how to identify trafficking. 6-ER-1158-1165.

"to find out what happened" but rather attempted to deflect and defuse the allegations (see AOB14), and a jury could so find. As previously discussed, ample Ninth Circuit precedent establishes that the moving party's burden is a heavy one because state of mind is a textbook jury question. AOB48. It is legal error for the district court to resolve it on this record, particularly for the time-period after February 2012.

Finally, Rubicon complains about "policy reasons" why the TVPRA should not apply to its conduct. AB50. Congress and the Executive Branch already made the relevant policy decisions by enacting and reauthorizing the TVPRA. *Nestle USA, Inc. v. Doe*, 141 S. Ct. 1931, 1940 (2021) ("Congress settled on the current approach to private remedies against human trafficking only after its 'understanding of the problem evolved' through years of studying 'how to best craft a response.'" (citing Amicus Br. of Members of Cong., 2020 WL 6322316, at *9, *13)); 154 Cong. Rec. S4799-800 (daily ed. May 22, 2008) (statement of Sen. Biden) ("we establish some powerful new legal tools, including increasing the jurisdiction of the courts" to include "any trafficking case … even if the conduct occurred in a different country"). Contrary to Rubicon's argument, the TVPRA does not purport to govern labor relations in Thailand. The TVPRA does, however, prohibit U.S. companies from benefitting, or attempting to benefit, from forced labor, wherever it occurs. *PAHO*, 29 F.4th at 716 & n. 5 (financial benefit

provision "also protects commercial entities that decline to benefit from forced labor and may be harmed by competition from products or services garnering implicit subsidies from forced labor"); *Roe v. Howard*, 917 F.3d 229, 242 (4th Cir. 2019) (TVPRA is "a far-reaching congressional effort to combat transnational human trafficking on numerous fronts, including by expanding the civil claims and remedies available to its victims."); Br. of Members of Cong., 2020 WL 6322316, at*31-33, *Nestle*, 141 S. Ct. 1931.

## C. Rubicon's alternative arguments, which did not factor into the district court's decision on Plaintiffs' Rule 60(b)(6) motion, are meritless

Rubicon raises a series of arguments it did not present to the district court in response to Plaintiffs' 60(b)(6) motion. None have merit.

### 1. Plaintiffs are not required to plead the TVPRA definitional subsection or specific legal theories

Rubicon complains that Plaintiffs should have cited §1594(a) – the TVPRA's definitional "General Provisions" section – in their complaint. But this Circuit has long held that a party need not plead legal theories or a specific statute, describing the argument as an "attempt to evoke wholly out-moded technical pleading rules." *Sagana v. Tenorio*, 384 F.3d 731, 737 (9th Cir. 2004); *Bowers v. Campbell*, 505 F.2d 1155, 1157 n.2 (9th Cir. 1974) (no requirement to plead specific statutory provision, "respondents were fully aware of her reliance on section 1981 when the motions for summary judgment were filed"); *see also*

23

*Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154-55 (9th Cir. 2014) (no surprise or prejudice where issue was raised in summary judgment briefing).

Rubicon had ample notice that Plaintiffs were relying on its attempted sale to Walmart, a legal theory that was fully briefed, as Rubicon concedes, in the district court (AB32 n.17), including at summary judgment, and was the subject of discovery, including a subpoena to Walmart. Plaintiffs were not required to invoke the TVPRA's definitional "General Provisions" in their Complaint. Section 1594 defines the scope of the substantive provisions, providing that an attempt "shall be punishable in the same manner as a completed violation." The Complaint cited the substantive violation (§1589) and further alleged that Rubicon, knowing the shrimp was produced with forced labor, worked to expand the market for the shrimp, "knowing the conduct would continue" and "intending to benefit from it." 10-ER-2182-2183 (Compl. ¶¶ 92, 96). Rubicon's own authority, *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1152-53 (9th Cir. 2012), confirms this is sufficient.

Rubicon also cites the wholly inapposite *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 995 (9th Cir. 2009), which holds that "Dream Games failed to raise its theory of secondary liability at trial, and cannot now raise it on appeal." There, the plaintiff raised its liability theory for the first time during oral argument on defendant's motion for judgment as a matter of law, after failing to

24

raise it beforehand, including in proposed jury instructions, the pre-trial statement, or during trial, thereby prejudicing the defendant. *Id*. *Dream Games* has no bearing here where there has been no trial and furthermore no "undue prejudice" as the issues were the subject of discovery and briefing. As in *Desertrain*, 754 F.3d at 1155, because both parties argued the issue in their summary judgment briefs, "any claim of surprise or prejudice by Defendants is unpersuasive" and the district court properly considered Plaintiffs' attempt-to-benefit theory on the merits.

2. **Plaintiffs show specific intent**

Rubicon presses an argument not presented to or decided by the district court – that Plaintiffs cannot show "specific intent." AB33. This argument is waived. *See Armstrong v. Brown*, 768 F.3d 975, 981 (9th Cir. 2014).

Even if not waived, the argument fails. The requirement of specific intent for attempt crimes requires specific intent to commit the act that constitutes the actus reus – here, the receipt of the benefit. For other elements, the standard of culpability is unchanged. Model Penal Code §5.01(1) (Am. L. Inst. 1985).[6] Thus, the requirement that the defendant "knew or should have known" or "recklessly disregarded" that the venture was engaged in a TVPRA violation is unchanged in

---

[6] "[F]ederal courts have rather uniformly adopted the standard set forth in Section 5.01 of the American Law Institute's Model Penal Code." *U.S. v. Joyce*, 693 F.2d 838, 841 (8th Cir. 1982); *see also, e.g.*, *U.S. v. Rodriguez*, 880 F.3d 1151, 1159-60 (9th Cir. 2018); *U.S. v. Lopez-Pastrana*, 244 F.3d 1025, 1028 n.4 (9th Cir. 2001).

attempt cases. Indeed, the drafters of the Model Penal Code directly addressed this scenario. Model Penal Code Part I Commentaries, vol. 2, cmt. 2, at 301-03 & n.13 (Am. L. Inst. 1985) (explaining rule and providing examples of attempted statutory rape and attempted murder of an FBI agent).

The question is whether Rubicon – a for-profit entity – in trying to convince Walmart to accept the shrimp specifically intended to receive a benefit from the sale. Of course, a jury could conclude that it did. Even if the inference were not as compelling, questions of intent fall squarely within the jury's traditional province. *See Provenz v. Miller*, 102 F.3d 1478, 1489 (9th Cir. 1996); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1297, 1298 (9th Cir. 1982).

### 3. **Rubicon violated TVPRA section 1589(b)**

Rubicon's argument that there is no underlying TVPRA violation is frivolous. In Count II, pleaded against Rubicon, Plaintiffs alleged a violation of 18 U.S.C. § 1589. 10-ER-2187-2188 (Compl. ¶¶124, 128, 129). The plain text of §1589(b) makes it a violation of the TVPRA to benefit (or attempt to benefit)[7] from "participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a)." The means described in subsection (a) include threats of serious harm and abuse of law. 18

---

[7] Section 1594 provides that an attempt to violate §1589 is treated "as a completed violation of that section." It is undisputed that an attempt to benefit is a criminal TVPRA violation. *Ratha I*, 35 F.4th at 1176 n.17.

U.S.C. § 1589(a). Section 1589(b) does not require the person making the threats or withholding the passports to be a defendant (or present in the United States), as "the alleged financial activity itself gives rise to a cause of action." *PAHO*, 29 F.4th at 716 (D.C. Cir. 2022) (citing 18 U.S.C. § 1589(b) for "prohibition on financially benefitting from participation in human trafficking"); *see also U.S. ex rel. Fadlalla v. DynCorp Int'l,* 402 F. Supp. 3d 162, 196 (D. Md. 2019) (defendants liable under §1589(b) for benefitting from forced labor in Middle East); Br. of Members of Cong., 2020 WL 6322316, at*30-32, *Nestle*, 141 S. Ct. 1931. Under §1589(b), knowingly benefitting from forced labor is *itself* a criminal violation of the TVPRA.

Rubicon's reliance on *Perlitz* is misplaced: that case concerns a different provision of the TVPRA, which plaintiffs there conceded did not apply to their claims prior to 2008. *St. Louis v. Perlitz*, 2016 WL 1408076, at *1 (D. Conn. Apr. 8, 2016). There was therefore no underlying TVPRA violation in *Perlitz*. Here, of course, there is an underlying criminal TVPRA violation: §1589(b).

Congress has made the policy determination to hold U.S. businesses liable when they profit – or attempt to profit – from forced labor, expressly recognizing that profit drives the steady increase in forced labor world-wide and that action targeted at beneficiaries (or attempted beneficiaries) in the United States is required to stamp out this scourge. Br. of Rep. Nadler et al., at 6-8; Br. of Members

27

of Cong., 2020 WL 6322316, at*19-20, *30-32, *Nestle*, 141 S. Ct. 1931; *supra* pp.22-23.

4. **All Plaintiffs have standing**

Rubicon's argument that four Plaintiffs lack standing is both incorrect and immaterial. First, nothing in Rubicon's argument affects the Court's jurisdiction to decide the appeal; Rubicon does not dispute that the other Plaintiffs have standing. It is well settled that the presence of one party with standing is sufficient. *E.g.*, *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006).

Second, the district court's summary-judgment ruling that three Plaintiffs were not subjected to forced labor was error that was raised but not addressed in *Ratha I*. *See* Appellants' Opening Br., *Ratha I*, 35 F.4th 1159. Even though all seven Plaintiffs presented evidence that they were subject to the same essential forced-labor scheme, the district court held that Plaintiffs Yem Ban, Nol Nakry, and Sok Sang failed to show the factory defendants coerced them to work because, in the district court's eyes, they "were prevented from traveling freely throughout Thailand and returning to Cambodia because they had entered Thailand illegally," not because of the factory defendants' coercive acts. 1-SER-239. But this Court has held that the fact that a victim is undocumented *weighs in favor* of finding a forced-labor violation because "a victim has fewer means of escape where the

28

threats in her case involve immigration." *U.S. v. Dann*, 652 F.3d 1160, 1172 (9th Cir. 2011); *see also, e.g.*, *U.S. v. Calimlim*, 538 F.3d 706, 712 (7th Cir. 2008); 22 U.S.C. § 7101(b)(17) ("victims are often illegal immigrants in the destination country"). *See generally* Amicus Br. of Freedom Network USA, et. al, *Ratha I*, 35 F.4th 1159.

These three Plaintiffs present a classic TVPRA claim: upon arrival at the factory, they were charged unexpected fees for work permits which they paid by borrowing against future wages; their wages were less than promised; the factory held onto the work permits and told plaintiffs they would be arrested by local police (who often visited the factory) if they left the grounds without their permits; when Plaintiffs asked to leave and for the permits back, the factory refused to let them go; and the factory created a climate of fear, including through threats and beatings. *E.g.*, 2-ER-78; 2-ER-98-99; 2-ER-115-116; 2-ER-122; 2-ER142-143; 2-ER-168-169; 2-ER-181; 3-ER-536-538; 4-ER-819-820; 9-ER-2111; 9-ER-2114; 9-ER-2130. A jury could find this evidence suffices to prove plaintiffs' forced labor claims, as defendants conceded below with respect to the four plaintiffs who entered Thailand lawfully. *See, e.g.*, *Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1154-55 (9th Cir. 2022); *Dann*, 652 F.3d at 1171-72; *Camayo v. John Peroulis & Sons Sheep*, 2012 WL 4359086, at *4 (D. Colo. Sept. 24, 2012); *see also* 4-ER-722.

Likewise, the district court erred on summary judgment when it concluded the factory defendants were not each other's alter ego, and this Court again did not reach the issue in *Ratha I*, though Plaintiffs raised it. *See* AOB60-61, *Ratha I*, 35 F.4th at 1159. The factories have the same equitable ownership and directors, and shared a head office and staff, including human-resources staff. 9-ER2131-2132; *see also Slottow v. Am. Cas. Co. of Reading, Pa.*, 10 F.3d 1355, 1360 (9th Cir. 1993).

Regardless, Rubicon did not challenge the TVPRA claims of three Plaintiffs on the merits and it is undisputed that these three Plaintiffs have standing.

## III.  <u>CONCLUSION</u>

For the above reasons, this Court should reverse the district court's order and remand with instructions to vacate the judgment entered in favor of Rubicon.

Dated:      December 4, 2023          Respectfully Submitted,

<u>/s/ Agnieszka M. Fryszman</u>
Agnieszka M. Fryszman

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-55299

I am the attorney or self-represented party.

**This brief contains** | 6,953 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated | |.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Agnieszka M. Fryszman | **Date** | 12/4/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*