No. 23-55299

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

KEO RATHA; SEM KOSAL; SOPHEA BUN; YEM BAN; NOL NAKRY;
PHAN SOPHEA; AND SOK SANG,

*Plaintiffs-Appellants*,

v.

RUBICON RESOURCES, LLC

*Defendants-Appellee*.

On Appeal from the District Court for the Central District of California,
Honorable John F. Walter Presiding, Case No. 2:16-cv-04271-JFW

**PLAINTIFF-APPELLANTS' PETITION FOR REHEARING *EN BANC***

Paul Hoffman
John Washington
SCHONBRUN, SEPLOW,
HARRIS, HOFFMAN &
ZELDES LLP
200 Pier Ave. #226
Hermosa Beach, CA 90254
Tel: (310) 396-0731

Catherine Sweetser
UCLA LAW CLINICS
385 Charles E Young Dr.
Los Angeles, CA 90095
(310) 267–5068

Agnieszka Fryszman
Nicholas Jacques
Madeleine Gates
COHEN MILSTEIN
SELLERS & TOLL PLLC
1100 New York Ave., N.W. Ste. 500
Washington, D.C. 20006
(202) 408–4600

Dan Stormer
HADSELL STORMER &
RENICK LLP
128 N. Fair Oaks Avenue
Pasadena, CA 91103
(626) 585–9600
Attorneys for *Plaintiffs-Appellants*

## TABLE OF CONTENTS

I. STATEMENT OF THE CASE ............................................................3

II. ARGUMENT .................................................................................5

    A.    The Majority Departs from Well-Settled Principles
           Recognizing an Amendment as Clarifying ..........................5

           1.    Congress labeled the amendment using the exact words
                 Circuit Courts previously recognized as clarifying ..................6

           2.    The majority improperly limited the time for Congress to
                 react to wrongly decided cases ...................................9

           3.    ATRA reinstates the prior understanding of the TVPRA.........11

    B.    The Majority's Questions on Other Issues Do Not Prevent
           Reversal ..............................................................15

III. CONCLUSION ..............................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABKCO Music, Inc. v. Lavere*,
217 F.3d 684 (9th Cir. 2000) ...................................................................*passim*

*Bank Markazi v. Peterson*,
578 U.S. 212 (2016) ........................................................................... 17

*Beaver v. Tarsadia Hotels*,
816 F.3d 1170 (9th Cir. 2016) ........................................................ 5, 7

*Bedoni v. Navajo-Hopi Indian Relocation Comm'n*,
878 F.2d 1119 (9th Cir. 1989) ........................................................... 11

*Beverly Cmty. Hosp. Ass'n v. Belshe*,
132 F.3d 1259 (9th Cir. 1997) ........................................................ 7, 10

*Bistline v. Parker*,
918 F.3d 849 (10th Cir. 2019) ........................................................... 14

*Brown v. Thompson*,
374 F.3d 253 (4th Cir. 2004) ............................................................... 7

*Buck v. Davis*,
580 U.S. 100 (2017) ........................................................................... 15

*Cookeville Reg'l Med. Ctr. v. Leavitt*,
531 F.3d 844 (D.C. Cir. 2008) ........................................................... 16

*Crow Tribal Housing Authority v. HUD*,
781 F.3d 1095 (9th Cir. 2015) ...................................................... 7, 16

*Dubin v. U.S.*,
599 U.S. 110 (2023) ............................................................................. 7

*Duluth v. Fond du Lac*,
702 F.3d 1147 (8th Cir. 2013) ........................................................... 16

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994) ............................................................................. 5

*Liquilux Gas Corp. v. Martin Gas Sales*,
   979 F.2d 887 (1st Cir. 1992) ...........................................................5, 8, 9

*Meyerhoff v. EPA*,
   958 F.2d 1498 (9th Cir. 1992) ................................................................5

*In re. Pac. Far E. Lines, Inc.*,
   889 F.2d 242 (9th Cir. 1989) .................................................................16

*Paguirigan v. Prompt Nursing Emp. Agency*,
   286 F. Supp. 3d 430 (E.D.N.Y. 2017) ...................................................14

*Patchak v. Zinke*,
   583 U.S. 244 (2018) ...............................................................................17

*Phelps v. Alameida*,
   569 F.3d 1120 (9th Cir. 2009) ...........................................................4, 17

*Piamba Cortes v. Am. Airlines*,
   177 F.3d 1272 (11th Cir. 1999) ..........................................................7, 8

*Plaut v. Spendthrift Farm, Inc.*,
   514 U.S. 211 (1995) ..........................................................................16, 17

*Ratha v. Phatthana Seafood (Ratha I)*,
   35 F.4th 1159 (9th Cir. 2022) ......................................................*passim*

*Ricchio v. McLean*,
   853 F.3d 553 (1st Cir. 2017) .................................................................13

*Rodriguez v. Pan Am. Health Org.*,
   29 F.4th 706 (D.C. Cir. 2022) ...............................................................14

*Roe v. Howard*,
   917 F.3d 229 (4th Cir. 2019) ................................................................13

*Sherman v. Trinity Teen Sols., Inc.*,
   84 F.4th 1182 (10th Cir. 2023) .............................................................14

*Taylor v. U.S.*,
   181 F.3d 1017 (9th Cir. 1999) ..............................................................16

*U.S. v. Contreras,*
  895 F.2d 1241 (9th Cir. 1990) ..............................................................7

*U.S. v. Montgomery Cnty.,*
  761 F.2d 998 (4th Cir. 1985) ............................................................5, 7

*U.S. v. Ne. Pharm. & Chem. Co.,*
  810 F.2d 726 (8th Cir. 1986) ...............................................................7

*Wesson v. U.S.,*
  48 F.3d 894 (5th Cir. 1995) ............................................................5, 9

STATUTES

18 U.S.C. § 1589 .......................................................11, 12, 14, 15

18 U.S.C. § 1594 ............................................................11, 12, 14

18 U.S.C. § 1595 ....................................................................12, 14

Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117- 347, 136
  Stat., 6199 (2023)........................................................................*passim*

OTHER AUTHORITIES

H.R. Rep. No. 108-264, pt. 2 (2003) ....................................................13

Martina Vandenberg & Maggie Lee, *Congress Amends the TVPRA to Cor-
  rect Ninth Circuit's Erroneous Ruling in Ratha,* Transnational Litigation
  Blog (Aug. 1, 2023), https://tlblog.org/congress-amends-the-tvpra-to-cor-
  rect-ninth-circuits-erroneous-ruling-in-ratha/ ...................................10

Norman Singer & Shambie Singer, *Sutherland Statutes and Statutory
  Construction* § 22:31 (7th ed. 2022 update) .......................................9

Fed. R. Civ. P. 59 ..................................................................................16

Fed. R. Civ. P. 60 ...........................................................................4, 15, 16

This proceeding involves questions of exceptional importance warranting en banc review.

The divided panel's decision thwarts Congress's quick action to correct a prior panel's misreading of the Trafficking Victim Protection Act (TVPRA). As the dissent carefully explains, the majority engaged in a contorted analysis, declining to give effect to Congress's clarification and in so doing creates new uncertainty about how Congress must make its will known to the courts. Preserving a stable background against which Congress can legislate with predictable results is exceptionally important and has implications far beyond this case. This Court should give effect to Congress's intent by taking this case en banc, reversing, and remanding for further proceedings as the dissent counselled.

A prior panel of this Court held that the Defendant-Appellee, Rubicon, a California-based seafood importer, could not be held liable under the TVPRA on the sole ground that, under its interpretation, the statute did not reach a civil defendant whose attempt to profit from forced labor was unsuccessful. *Ratha v. Phatthana Seafood*, 35 F.4th 1159, 1176 (9th Cir. 2022) (*Ratha I*). Rubicon failed to profit only because Walmart, its intended customer, refused to accept Rubicon's shrimp after the shrimp arrived in the United States, citing concerns about forced labor at Rubicon's venture partner factory.

1

Roughly seven months after the panel ruled and just two weeks after the Supreme Court denied certiorari, Congress passed and the President signed into law a "technical and clarifying" amendment reaffirming that the TVPRA civil remedy applies to defendants who attempt to benefit from participation in a venture that engages in forced labor. Congress passed the amendment as part of the Abolish Trafficking Reauthorization Act of 2022 (ATRA) – without a single vote in opposition – to correct this Court's decision in *Ratha I*.

Congress stated in the title of the amendment itself that it was enacting a "technical and clarifying" amendment, intentionally using the terms courts have repeatedly found sufficient to demonstrate that an amendment was intended to be clarifying and therefore retroactive. The majority opinion departed not only from this Circuit's own precedent but also from the prevailing rule in other Circuits on the words Congress must use to demonstrate its intent. The panel opinion declined to honor Congress's express statement and increased the burden on Congress to enact clarifying legislation within a narrow timeframe.

The majority opinion also exacerbates the conflict with other Circuits on whether, before 2023, a survivor of forced labor had a cause of action against the person who attempted to benefit from her exploitation but failed to profit – because the victim escaped, the goods were confiscated by law enforcement, or underlings were arrested. As the dissent observes, the majority made "a series of key errors,"

2

including failing to give effect to the intended parallel between the TVPRA's civil and criminal provisions, declining to recognize the ambiguity created thereby, and misconstruing cases from other Circuits demonstrating that Congress stepped in to resolve the ambiguity. Op. at 44 (Graber, J., dissenting). Congress acted quickly to correct the ruling because of the impact it would have, including on other ongoing efforts to combat forced labor, and was mindful of ongoing litigation in other jurisdictions. Br. of Members of Cong. Rep. Nadler et al. at 10-14 ("Rep. Nadler Br."). The panel ruling is inconsistent with other Circuits to the detriment of survivors of forced labor and law-abiding businesses within the Ninth Circuit, and it will impact litigants outside this jurisdiction as well.

## I. <u>STATEMENT OF THE CASE</u>

**Facts**: The facts essential to the claim are largely undisputed: Rubicon did not dispute at summary judgment that at least four Plaintiffs had sufficient evidence to proceed to trial on their TVPRA claims; *Ratha I* found that by February 23, 2012, Rubicon was "undisputedly" aware of whistleblower reports that Cambodian workers at the factory wanted to leave but were unable to get their passports back; and it was also undisputed that after February 23, 2012, Rubicon repeatedly attempted to sell the shrimp to Walmart. AOB6, 13; *Ratha I*, 35 F.4th at 1177.

3

**Procedural History**: Seven Plaintiffs filed this lawsuit in 2016 against four defendants: the U.S. importer and venture participant (Rubicon) and three defendants not party to this appeal. At summary judgment, the district court held that Rubicon could not be held liable because the district court (1) applied the wrong test, a test discarded by every other circuit to consider it, for "participation" in a venture; (2) misapplied the summary-judgment standard to conclude that Rubicon could not have known the laborers were subject to forced labor[1]; and (3) found that attempt to benefit was not cognizable. AOB4-6, 21. On appeal, this Court affirmed, finding the TVPRA did not reach attempts to benefit. The Court declined to reach the district court's other two bases for dismissal.

After Congress acted, Plaintiffs promptly moved for Rule 60(b)(6) relief. The district court found that three of the five factors in *Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009), favored relief or were neutral but that because the ATRA did not apply, relief could not be granted. This appeal followed.

---

[1] The evidence included: critical press reports were circulated within Rubicon, the United Nations held a meeting on the allegations that was attended by a Rubicon manager who reported that Rubicon and its venture partner were flagged as examples, Rubicon's consultant reported that debt bondage was "probably the most significant issue" and "warrants serious investigation" (Rubicon did not investigate), and Walmart refused to accept the shrimp, citing forced labor concerns. AOB13-15.

## II. <u>ARGUMENT</u>

### A. The Majority Departs from Well-Settled Principles Recognizing an Amendment as Clarifying

The panel agreed that clarification "is a well-recognized principle." *Liquilux Gas Corp., v. Martin Gas Sales*, 979 F.2d 887, 890 (1st Cir. 1992); *see also Meyerhoff v. EPA*, 958 F.2d 1498, 1502 (9th Cir. 1992) (clarification is "common and customary"). "Statutes may be passed purely to make what was intended all along even more unmistakably clear." *U.S. v. Montgomery Cnty.*, 761 F.2d 998, 1003 (4th Cir. 1985); *see also, e.g., Wesson v. U.S.*, 48 F.3d 894, 901 (5th Cir. 1995) ("more plausible interpretation" is "that the *Miller* case was wrongly decided and Congress acted to correct it").

The panel also agreed that it is well-settled that such "clarifying" legislation is not subject to any presumption against retroactivity. *E.g.*, *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1186 (9th Cir. 2016); *ABKCO Music, Inc. v. Lavere*, 217 F.3d 684, 691 (9th Cir. 2000) ("no retroactivity problem is presented" by amendment overturning court decision). As a result, the traditional *Landgraf v. USI Film Prods.*, 511 U.S. 244, 267 (1994), analysis is not implicated (but even if it did apply, it would be satisfied here at the first step).

But as the dissent explains, in holding that ATRA was not clarifying, the majority opinion conflicts with existing opinions of the other Circuits and, further,

5

impacts the balance of power between the branches of government by declining to honor Congress's express statement of intent, limiting the time frame for congressional action, and ignoring the context of the amendment: "considering the time and circumstances of the ATRA's enactment, Congress clearly enacted the amendment in response to, and to correct our understanding of, the TVRPA." Op. at 56 (Graber, J., dissenting (citing *ABKCO*, 217 F.3d at 689-90)).

      1.    Congress labeled the amendment using the exact words Circuit Courts previously recognized as clarifying

First, Congress expressly titled the amendment "technical and clarifying," intentionally using the words courts have repeatedly found sufficient to demonstrate that an amendment is clarifying and retroactive. Second, Congress inserted into the statute the exact language the original panel highlighted as missing, further textual support that Congress was responding to *Ratha I* and acting to correct a drafting error and clarify an ambiguity.

In contrast to other Circuits, the majority declined to give weight to the "technical and clarifying" label Congress gave the amendment: "Most significant to our determination here, Congress formally declared in the titles of the relevant subsections of MMA that the amendments of MSP were 'clarifying' and 'technical.'" *Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004); *see also Piamba Cortes v. Am. Airlines*, 177 F.3d 1272, 1284 (11th Cir. 1999) ("courts may rely upon a declaration by the enacting body that its intent is to clarify"); *U.S. v.*

*Ne. Pharm. & Chem. Co.*, 810 F.2d 726, 741 (8th Cir. 1986) (Congress characterized amendments as "clarifying"); *Montgomery Cnty.*, 761 F.2d at 1003 & n.16; *see generally Dubin v. U.S.*, 599 U.S. 110, 120-21 (2023) ("Start at the top, with the words Congress chose for §1028A's title …").  The majority similarly departs from precedents establishing Congress's burden in this Circuit. *See Crow Tribal Housing Authority v. HUD*, 781 F.3d 1095, 1101 (9th Cir. 2015) (honoring Congress's clarification label); *Beverly Cmty. Hosp. Ass'n v. Belshe*, 132 F.3d 1259, 1266 (9th Cir. 1997) (Congress "expressly (and formally)" declared an amendment was clarifying and such formal legislative action "is entitled to great weight."); *U.S. v. Contreras*, 895 F.2d 1241, 1244 (9th Cir. 1990) ("Congress itself, however, labeled the change a 'clarification…'").[2]

As the then-Chairman of the House Judiciary Committee (who oversaw passage of ATRA) explained:

> In response to this Court's ruling, Congress acted swiftly and unanimously … The amendment makes clear that the civil remedy provided by §1595 applies – as it always has – to attempts to benefit from a forced labor venture.

---

[2] *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1187 (9th Cir. 2016), found that inclusion of the term "clarify" in a long title did not outweigh other indicators: courts had consistently interpreted the statute's text for decades, and the amendment's effective date was 180 days after its enactment, making it explicitly prospective, not retroactive.  *Beaver* concluded that a title is "not controlling" when, unlike here, all other factors point to a different conclusion.  *Id*. at 1186.  Here, the text, timing, and context are consistent.

> … the title of the amendment was deliberately chosen because members of Congress were aware that federal courts have found this terminology to be the most convincing evidence of the clarifying nature of an amendment … Congress intended to signal that the amendment was intended to apply retroactively in accordance with the well-established case law on clarifying amendments…

Rep. Nadler Br. at 5, 13 (internal citations omitted).[3]

Second, Congress inserted the exact words *Ratha I* explained were missing from the statute. *Compare Ratha I*, 35 F.4th at 1176 ("we cannot read the word 'attempt'" into § 1595), *with* ATRA (amending § 1595 by inserting "or attempts"). The "fit" in language is another textual factor indicating that an amendment is clarifying. *Liquilux*, 979 F.2d at 890. Finally, the amendment was effective immediately. Op. at 44, 50 (Graber, J., dissenting) ("Congress made the amendment effective immediately, so there is no uncertainty about Congress's intent concerning retroactivity.").

---

[3] The majority states that the title is "not part of the law." Op. at 26. While the text of a bill title is not codified into the U.S. Code, it is, of course, part of the bill voted on by Congress. Uniformly, the title is the place in the text where the "clarification" label appears. Courts, including this one, have also relied on statements in legislative history, which are not formally enacted. *E.g., Piamba Cortez*, 177 F.3d at 1284 (a "mere statement in a conference report" is "obviously less weighty" than the text that is voted on). Here, there was no Committee Report at all, so it is not the case that a statement on this provision was omitted from the legislative history. Likewise, the use of 'update' in the title does not bear the weight the majority places on it, as the dissent explains. Op. at 54 (Graber, J.).

Although the title was taken directly from caselaw across the Circuits confirming that the words "technical and clarifying" in the title sufficed to signal that an amendment is clarifying and retroactive, the majority declined to give effect Congress's choice, even though all of the indicators, including the text, timing, and context uniformly confirmed that conclusion. Op. at 53 (Graber, J., dissenting).

Where, as here, only one Circuit has taken an approach inconsistent with a statute's intended application, a "clarification" label is particularly appropriate. Congress was not applying a nationwide change in the law retroactively but correcting one Circuit that had gone astray by clarifying what the statute meant all along.

2. **The majority improperly limited the time for Congress to react to wrongly decided cases**

Courts find that an amendment is clarifying when it follows "fast upon" a wrongly decided case or the discovery of an ambiguity, finding that the most logical explanation is Congress determined the case was wrongly decided and "acted to correct it." *E.g., ABKCO*, 217 F.3d at 690-91; *Liquilux*, 979 F.2d at 890; *Wesson*, 48 F.3d at 901; 1A Norman Singer & Shambie Singer, *Sutherland Statutes and Statutory Construction* § 22:31 (7th ed. 2022 update). As the dissent points out, "the key, as the majority acknowledges," is that ATRA was enacted almost immediately after the erroneous decision became final: seven months after *Ratha I* and just two weeks after the Supreme Court denied certiorari. Op. at 51. The

9

majority disputes that the timing was "quick," because the *district court* (not the appellate court) issued its ruling five years earlier.[4]  The majority's deadline for congressional action is inconsistent with the realities of the congressional calendar and precedent: in *Beverly Community Hospital*, 132 F.3d 1259, the clarifying amendment was passed five years after the first appellate decision and in *ABKCO,* 217 F.3d 684, the clarifying amendment was enacted two years after the Ninth Circuit's *La Cienega* decision.

After *Ratha I*, anti-trafficking advocates alerted Congress to the ruling, highlighting that it undermined Congress's policy choices by eliminating the civil remedy where the government interdicted the goods made with forced labor or arrested perpetrators before the profit was realized.  Rep. Nadler Br. at 10-11 ("Congress was promptly made aware of this misinterpretation … *Ratha* is precisely the type of case that Congress sought to reach with the 2008 amendments."); Martina Vandenberg & Maggie Lee, *Congress Amends the TVPRA to Correct Ninth Circuit's Erroneous Ruling in Ratha,* Transnational Litigation Blog (Aug. 1, 2023).  The resulting clarifying provision was proposed by sponsors who were in Congress when the original provision was enacted and passed without a single vote in opposition.

---

[4] This Court had the case under consideration for three years: *Ratha I* was argued in 2019, but the final decision was not issued until 2022.

3.      ATRA reinstates the prior understanding of the TVPRA

*Ratha I* concluded that Congress intentionally excluded attempt liability

from the TVPRA civil remedy.  Congress responded by passing ATRA.  The

panel majority rests its holding that ATRA is not clarifying on its conclusion that

there is no circuit split or judicial difficulty in interpreting the phrase "whoever

knowingly benefits."  Op. at 42.  But that misstates the core ambiguity in this

case, upon which, as the dissent points out, there is a Circuit split.  Op. at 43.

Moreover, the Ninth Circuit has not required a Circuit split for an amendment to

be considered clarifying: amendments that give a statute a meaning different

from the Ninth Circuit's own prior interpretation fall in that category.  *See, e.g.*,

*Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121 (9th

Cir. 1989).  Congress can and does correct an errant court ruling without waiting

for a Circuit split.

TVPRA §1589(b) extends criminal liability to "whoever knowingly

benefits" from participation in a venture that engages in forced labor.  It is

undisputed that "attempt" liability attaches to both §1589(a) and (b). *See Ratha I,*

35 F.4th at 1176 (citing 18 U.S.C. § 1594).

A person who violates §1589(a) or (b) is also subject to civil liability.

Section 1595 imposes civil liability on both a perpetrator who violates the

substantive TVPRA provisions (including §1589(b), benefiting and attempting to

benefit from forced labor) and, in a separate belts-and-suspenders clause, on "whoever knowingly benefits." 18 U.S.C. §1595(a).

As the dissent points out, "the statute was ambiguous because, in one place, the civil provision omitted a phrase regarding 'attempt.'" Op. at 43. Even Defendant Rubicon conceded that the provision was ambiguous: "To be sure, the TVPRA, and particularly the interplay between its criminal provisions and the civil remedy may not be a model of clarity." Def.-Aplees.' Resp. to Pet. for Reh'g en Banc at 9, *Ratha I*, ECF No. 103. No court, until *Ratha I*, read the omission of "attempt" from the beneficiary clause in §1595 (and its undisputed application to the incorporated criminal predicate beneficiary clause) as a deliberate choice to exclude "attempt to benefit" from civil liability. And until *Ratha I*, Congress did not feel the need to step in.

Plaintiffs identified cases from across the country that interpreted the TVPRA differently than *Ratha I*, including by recognizing claims pleaded directly under the §1589(b) beneficiary prong (rather than the §1595 beneficiary provision), recognizing that the "perpetrator" in §1595 includes violators of both § 1589(a) or (b), or approving civil claims pleading attempt under §1594. The sheer variety of approaches indicates the original predicate act structure was, as Defendants conceded, not a model of clarity.

As the dissent points out, Congress "clearly intended to make the criminal and civil provisions coextensive." Op. at 43 (Graber, J., dissenting). No court has agreed with *Ratha I* that the TVPRA's civil remedy is narrower than its criminal prohibitions, which indisputably include attempt-to-benefit liability. *E.g.*, *Roe v. Howard*, 917 F.3d 229, 241 (4th Cir. 2019) ("§1595 directly incorporates predicate offenses"); H.R. Rep. No. 108-264, pt. 2, at 6 (2003) ("bill creates a civil cause of action for any victim of a violation of sections 1589, 1590 or 1591"); Rep. Nadler Br. at 7-9.

Justice Souter, writing for the First Circuit in *Ricchio v. McLean*, 853 F.3d 553, 556-57 (1st Cir. 2017), likewise found attempt available under both the criminal and civil TVPRA provisions. *Ricchio* listed expressly non-exhaustive examples of potential violations (including "1594(a) and 1595(a)") and explained that its "major point of disagreement with the district court" was the holding that success was required. 853 F.3d at 556-58. The motel defendant sought to benefit, but had not yet, from an anticipated venture that was interrupted when the victim escaped *before* she was forced to engage in commercial sex acts.

Most cases skipped the §1595(a) beneficiary clause (that is, taking the opposite of *Ratha I*'s approach), and recognized that a plaintiff could proceed against a "perpetrator" who violated the §1589(b) beneficiary clause – which

indisputably provides for attempt liability.  *E.g.*, *Bistline v. Parker*, 918 F.3d 849, 873 (10th Cir. 2019) (in a civil suit, §1589 holds not just primary offenders accountable but also anybody who knowingly benefits under § 1589(b)); *Paguirigan v. Prompt Nursing Emp. Agency*, 286 F. Supp. 3d 430, 439-40 & n.4 (E.D.N.Y. 2017) (Plaintiff stated claim under §1589(b) and for §1594 attempt of that provision).[5]  In *Sherman v. Trinity Teen Sols., Inc.*, the Tenth Circuit held that civil liability for benefitting from forced labor was available under §1589(b) and that, separately, plaintiffs "may *also* proceed" under §1595(a)'s beneficiary provision.  84 F.4th 1182, 1187 n.2 (10th Cir. 2023) (emphasis added).  The majority does not address these holdings.  Similarly, the D.C. Circuit specifically held that a person who commits a financial crime that violates §1589(b) is a "perpetrator" and is subject to civil liability on that basis.  The majority's statement that *PAHO* does not address "attempt" fails to recognize that *PAHO* squarely conflicts with *Ratha I*'s analysis.  *Compare Rodriguez v. Pan Am. Health Org.* ("*PAHO*"), 29 F.4th 706, 716 (D.C. Cir. 2022) ("The physicians allege that PAHO committed a financial crime in the U.S., *see* 18 U.S.C. § 1589(b), and press the corresponding civil claim ... against the *perpetrator*" (emphasis added)), *with*

---

[5] Plaintiffs' Complaint and briefing is consistent with this approach.  The majority notes that a person who attempted to violate the TVPRA could be liable as a perpetrator, Op. at 13, but states that plaintiffs invoked only the beneficiary clause of §1595(a).  That is not so.  10-ER-2187 ¶124; AOB25.

*Ratha I*, 35 F.4th at 1175 ("Neither Rubicon nor Wales are alleged to have perpetrated any TVPRA violations against Plaintiffs").

Until *Ratha I*, courts consistently interpreted the civil remedy to be coextensive with the TVPRA criminal predicates, which include attempt liability. That is unsurprising, because it is in the most egregious cases that the ultimate perpetrator – the financial beneficiary, intended profiteer, or kingpin – fails to benefit because his victims are rescued, the goods are seized by law enforcement, or underlings are arrested. Congress did not intend for these kingpins to escape civil liability simply because they were thwarted, as ATRA makes clear.

## B.    The Majority's Questions on Other Issues Do Not Prevent Reversal

The majority's holding focuses solely on whether ATRA is a clarifying amendment. Properly resolved, the other questions raised do not prevent reversal of the judgment below. This case is ready to proceed to trial.

The "whole purpose" of Rule 60(b) is to "make an exception to finality." *Buck v. Davis*, 580 U.S. 100, 126 (2017). The plain text of Rule 60(b)(6) authorizes the courts to provide relief from a final judgment, order or proceeding for "any other reason that justifies relief."

The plain text of the rule does not limit the reason for relief to decisional law rather than statutory change and the Circuits have not limited their analysis in this way. *See Duluth v. Fond du Lac*, 702 F.3d 1147, 1154 (8th Cir. 2013); *In re. Pac. Far E. Lines, Inc.*, 889 F.2d 242, 250 (9th Cir. 1989); *cf. Cookeville Reg'l Med. Ctr. v. Leavitt,* 531 F.3d 844, 847 (D.C. Cir. 2008) (Rule 59(e)).

The majority asks how a clarification can qualify as a change in law. The Ninth Circuit has answered this question: when a clarifying amendment corrects a prior misinterpretation, it "is literally true" that "the effect was to *change* the law in the *Ninth* Circuit." *ABKCO*, 217 F.3d at 691. While a clarifying amendment is "not a substantive change," *Crow*, 781 F.3d at 1101, its effect is to change the law in any jurisdiction where courts misinterpreted the original statute. *ABKCO*, 217 F.3d at 691. This is not a bar to relief. Nor is *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995). *Plaut* itself reaffirmed that Rule 60(b) "confirms the courts' own inherent and discretionary power, 'firmly established in English practice long before the foundation of our Republic,' to set aside a judgment whose enforcement would work inequity." *Id*. at 233 (internal citation omitted); *see also Taylor v. U.S.*, 181 F.3d 1017, 1024 (9th Cir. 1999) (en banc) (plurality op.). The district court could have found that Plaintiffs did not qualify for 60(b) relief because they were not diligent, too much time had

16

passed, or Rubicon had relied on the judgment. *See Phelps*, 569 F.3d at 1135-39. Instead, the district court found these factors weighed in favor of relief or were neutral. 1-ER-8. Unlike the statute in *Plaut*, which directed the courts to reopen a specific judgment, ATRA did not purport to compel the district court to re-open this or any other judgment. Indeed, the Supreme Court has repeatedly declined to expand *Plaut* beyond an improper congressional command to reopen a judgment. *See Patchak v. Zinke*, 583 U.S. 244, 909 (2018); *Bank Markazi v. Peterson*, 578 U.S. 212, 226 (2016).

### III.  CONCLUSION

For the above reasons, Plaintiffs respectfully request rehearing en banc.

Dated:  September 13, 2024

By:  *s/ Agnieszka M. Fryszman*
Agnieszka M. Fryszman

17

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 23-55299

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

○ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: 3,893 .

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/Agnieszka Fryszman | **Date** | 9/13/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 11** *Rev. 12/01/2021*

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2024, I filed the foregoing document **PLAINTIFF-APPELLANTS' PETITION FOR REHEARING EN BANC** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the 9th Circuit electronic filing system ECF.

I hereby certify that all parties are registered and will be served electronically via the Ninth Circuit electronic filing system ECF.

Dated: September 13, 2024

By: _s/ Agnieszka M. Fryszman_
Agnieszka M. Fryszman

*Attorney for Appellants*
*[Keo Ratha, Sem Kosal, Sophea*
*Bun, Yem Ban, Nol Nakry,*
*Phan Sophea, and Sok Sang]*

# EXHIBIT 1

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KEO RATHA; SEM KOSAL; SOPHEA BUN; YEM BAN; NOL NAKRY; PHAN SOPHEA; SOK SANG, | No.23-55299 |
| | D.C. No. 2:16-cv-04271-JFW-AS |
| *Plaintiffs-Appellants*, | |
| v. | OPINION |
| RUBICON RESOURCES, LLC, | |
| *Defendant-Appellee*. | |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted March 27, 2024
Pasadena, California

Filed July 31, 2024

Before: Susan P. Graber, Sandra S. Ikuta, and Danielle J.
Forrest, Circuit Judges.

Opinion by Judge Ikuta;
Dissent by Judge Graber

# SUMMARY[*]

## Trafficking Victims Protection Reauthorization Act

The panel affirmed the district court's denial of plaintiffs' motion under Federal Rule of Civil Procedure 60(b)(6) for relief from judgment in an action under the Trafficking Victims Protection Reauthorization Act (TVPRA).

In granting summary judgment in favor of defendant Rubicon Resources, LLC, a United States company, the district court held that plaintiffs, alleged victims of human trafficking, failed to adduce evidence that Rubicon knowingly benefitted from participation in a venture that it knew or should have known was engaged in various acts that violated the TVPRA. This court affirmed, holding in part that the phrase "knowingly benefits" as used in 18 U.S.C. § 1595(a) could not be read to extend to an attempt to knowingly benefit from a perpetrator's TVPRA violation. *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159 (9th Cir. 2022) (*Ratha I*), *modifying* 26 F.4th 1029 (9th Cir. 2022).

Congress subsequently enacted the Abolish Trafficking Reauthorization Act, or ATRA, new legislation amending § 1595(a) to impose liability on a defendant who knowingly "attempts or conspires to benefit" from participation in a venture that it knew or should have known was engaged in acts that violated the TVPRA. The district court denied plaintiffs' Rule 60(b)(6) motion to reopen the final judgment

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

and apply the new legislation, partially on the ground that ATRA did not apply to events that preceded its enactment.

The panel declined to address the novel question whether a court may reopen a final judgment under Rule 60(b)(6) based on a legislative change in law, rather than a judicial change in law. Instead, the panel held that ATRA does not apply to events that occurred before its enactment. The lack of an express statutory command to apply the statute retroactively gave rise to a presumption that ATRA should not be applied retroactively. This presumption was not overcome because ATRA did not clarify what § 1595(a) meant all along. The panel reasoned that prior to the amendment, § 1595(a) was not ambiguous and did not generate inconsistent judicial decisions. In addition, no other circumstances, such as textual indicators or timing, showed that ATRA declared what the TVPRA meant at the time it was enacted. The panel concluded that a label designating ATRA as a "clarifying update" suggested a forward-looking change. Because ATRA would not apply to the conduct that was the basis of plaintiffs' claims, the district court did not err in declining to reopen the final judgment.

Dissenting, Judge Graber wrote that she would reverse and remand for further proceedings because the amendment in question has retroactive effect. She wrote that the TVPRA was ambiguous because Congress intended to make the criminal and civil provisions coextensive, but, in one place, the civil provision omitted a phrase regarding "attempt." Two other circuits implicitly concluded that this omission was an oversight, ruling that an attempt to benefit from human trafficking creates civil liability. This court disagreed in *Ratha I*, creating a circuit split. As soon as the Supreme Court declined to grant certiorari in *Ratha I*,

Congress acted immediately to resolve the ambiguity and correct this court's error, and it did so with the label "technical and clarifying." In addition, Congress made the amendment effective immediately.

---

## COUNSEL

Agnieszka M. Fryszman (argued), Nicholas J. Jacques, Madeleine Gates, and Emily Ray, Cohen Milstein Sellers & Toll PLLC, Washington, D.C.; Dan Stormer, Hadsell Stormer Renick & Dai LLP, Pasadena, California; Catherine Sweetser, UCLA Law Clinics, Los Angeles, California; Paul Hoffman and John C. Washington, Schonbrun Seplow Harris Hoffman & Zeldes LLP, Hermosa Beach, California; for Plaintiffs-Appellants.

Barbara E. Taylor (argued), Bryan D. Daly, Charles L. Kreindler, and Melissa K. Eaves, Sheppard Mullin Richter & Hampton LLP, Los Angeles, California, for Defendant-Appellee.

Margaret Lee, Human Trafficking Legal Center, Washington, D.C.; Aaron Halegua, Aaron Halegua PLLC, New York, New York; for Amici Curiae Members of Congress Representative Nadler, et al..

John Burton, The Law Offices of John Burton, Pasadena, California; Allison Gill and Johanna Lee, Global Labor Justice – International Labor Rights Forum, Washington, D.C.; Avery Kelly and Alicia Brudney, Corporate Accountability Lab, Chicago, Illinois; for Amici Curiae Human and Workers' Rights Organizations and United States Shrimp Producers.

Julia Romano, King & Spalding LLP, Los Angeles, California; Zoe M. Beiner, King & Spalding LLP, Washington, D.C.; Anne M. Voigts, King & Spalding LLP, Palo Alto, California; for Amicus Curiae Professor David Abramowitz.

---

## OPINION

IKUTA, Circuit Judge:

This appeal raises the question whether the district court erred in declining to reopen a final judgment under Rule 60(b)(6) of the Federal Rules of Civil Procedure. In granting summary judgment in favor of the defendant, the district court held that plaintiffs, alleged victims of human trafficking, failed to adduce evidence that the defendant had "knowingly benefitted from participation in a venture that [the defendant] knew or should have known was engaged in" various acts that violated the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595(a). We upheld this ruling on appeal. *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1164 (9th Cir. 2022) (*Ratha I*), *modifying* 26 F.4th 1029 (9th Cir. 2022). Congress subsequently enacted new legislation amending the TVPRA to impose liability on a defendant who knowingly "attempted to benefit" from such a violation. The district court denied plaintiffs' Rule 60(b)(6) motion to reopen the final judgment and apply the new legislation, partially on the ground that it did not apply to events that preceded its enactment. Arguing that the new legislation merely clarified what § 1595(a) had meant all along, plaintiffs now appeal the denial of their Rule 60(b)(6) motion.

I

A

In 2000, Congress passed the Trafficking Victims Protection Act (TVPA). Pub. L. No. 106-386, div. A, 114 Stat. 1466 (2000) (codified as amended at 18 U.S.C. §§ 1589–1594). The TVPA created and expanded criminal penalties in order "to combat trafficking in persons, . . . to ensure just and effective punishment of traffickers, and to protect their victims." § 102(a). The TVPA enhanced the penalties for the existing crimes of peonage, 18 U.S.C. § 1581, enticement into slavery, § 1583, and sale into involuntary servitude, § 1584. It also created the new offenses of providing or obtaining forced labor under specified circumstances, § 1589, "[t]rafficking with respect to peonage, slavery, involuntary servitude, or forced labor," § 1590, and "[s]ex trafficking of children or by force, fraud, or coercion," § 1591. Attempted violations of these provisions were also criminalized, as § 1594 provided that "[w]hoever attempts to violate section 1581, 1583, 1584, 1589, 1590, or 1591 shall be punishable in the same manner as a completed violation of that section." 18 U.S.C. § 1594(a).

In 2003, Congress amended the TVPA by enacting the TVPRA. Pub. L. No. 108-193, 117 Stat. 2875 (2003). Among other things, the TVPRA added a civil remedy provision, codified at 18 U.S.C. § 1595, that provided in pertinent part:

> An individual who is a victim of a violation of section 1589, 1590, or 1591 of this chapter may bring a civil action against the perpetrator in an appropriate district court of

> the United States and may recover damages
> and reasonable attorneys fees.

TVPRA § 4(a)(4)(A), 117 Stat. at 2878. The provision
created "a civil cause of action that permits victims of
trafficking to recover compensatory and punitive damages
from individuals who violate the TVPA." *Ditullio v. Boehm*,
662 F.3d 1091, 1100 (9th Cir. 2011).

In 2008, Congress amended § 1595 to expand the
TVPRA's civil remedies. *See* William Wilberforce
Trafficking Victims Protection Reauthorization Act of 2008,
Pub. L. No. 110-457, § 221, 122 Stat. 5044, 5067. As
amended, § 1595(a) provided a civil remedy for any
violation of the TVPRA, and allowed victims to bring an
action not only against perpetrators of a violation of the
TVPRA, but also against anyone who "knowingly benefits,
financially or by receiving anything of value from
participation in a venture which that person knew or should
have known has engaged in an act in violation of this
chapter." 18 U.S.C. § 1595(a) (2008). As amended, the civil
remedy provision provided:

> An individual who is a victim of a violation
> of this chapter may bring a civil action
> against the perpetrator (or whoever
> knowingly benefits, financially or by
> receiving anything of value from
> participation in a venture which that person
> knew or should have known has engaged in
> an act in violation of this chapter) in an
> appropriate district court of the United States

and may recover damages and reasonable attorneys' fees.

18 U.S.C. § 1595(a) (2022).**[1]**

### B

Keo Ratha, Sem Kosal, Sophea Bun, Yem Ban, Nol Nakry, Phan Sophea, and Sok Sang (collectively, "plaintiffs") are villagers from rural Cambodia who worked at seafood processing factories in Thailand's Songkhla province.  Plaintiffs claimed they suffered abuse while working at these factories, in that they "were paid less than promised, charged for accommodations, charged for other unexpected expenses, unable to leave without their passports, which they were told would not be returned until recruitment fees and other amounts were paid, and subjected to harsh conditions," during the period "from sometime in 2010 until October 2012." *Ratha I*, 35 F.4th at 1165 (cleaned up).  At the time plaintiffs worked there, the factories were owned by Phatthana Seafood Co., Ltd. ("Phatthana") and S.S. Frozen Food Co., Ltd. ("S.S. Frozen"), both Thai corporations that are not parties to this appeal.

Rubicon Resources, LLP ("Rubicon") is a United States company that was formed in 1999 as a joint venture to

---

[1] Between 2008 and 2023, Congress amended § 1595 two other times to adjust the statute of limitations, *see* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22, § 120, 129 Stat. 227, 247, and to give state attorneys general a cause of action in certain circumstances, *see* Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. No. 115-164, § 6, 132 Stat. 1253, 1255.  Neither amendment is relevant to this case.

market and sell Thai seafood in the United States. The owners of Phatthana owned a stake in the Rubicon venture.[2]

In October 2011, Rubicon ordered 14 containers of shrimp from Phatthana's Songkhla factory, intending to sell those containers to Walmart for resale to consumers in the United States.

In January 2012, Ratha, who was employed by S.S. Frozen in its Songkhla factory, complained about his working conditions to the Phnom Penh Post, a Cambodian news organization. The Post published an article with Ratha's allegations. Following the publication of this article, Rubicon stopped its attempts to sell the Phatthana shrimp and hired a consultant to review conditions at Phatthana. In the months that followed, the Thai and Cambodian governments conducted investigations into Phatthana. Although the Thai government "concluded that no crimes ha[d] been committed," it did identify "violations of the labor protection law" and "intervened to address unlawful practices on the part of [Phatthana]."

After the results of the Thai and Cambodian investigations, Rubicon resumed its attempts to sell the Phatthana shrimp to Walmart but was unsuccessful due to Walmart's concerns about working conditions in Phatthana's Songkhla factory. The shrimp was eventually returned to Thailand and destroyed.

C

In June 2016, plaintiffs sued Phatthana, S.S. Frozen, Rubicon, and Wales under the civil remedy provision of the

---

[2] Wales & Co. Universe Ltd., a Thai corporation registered to do business in California, was also a member of the Rubicon venture. Wales is not a party to this appeal.

TVPRA, 18 U.S.C. § 1595(a) (effective December 23, 2008 through January 4, 2023).

Plaintiffs alleged that they were the "victims of peonage, forced labor, involuntary servitude and human trafficking, in violation of 18 U.S.C. §§ 1581, 1584, 1589, 1590, 1592, and 1593A." They alleged that Phatthana and S.S. Frozen were the perpetrators of these offenses, and that Rubicon and Wales knowingly benefitted from Phatthana's and S.S. Frozen's unlawful conduct. The complaint alleged that Rubicon "provided a market and worked to expand that market . . . knowing the conduct would continue, benefitting from it, and intending to benefit from it."

All defendants moved for summary judgment. The district court concluded that it lacked extraterritorial jurisdiction over Phatthana and S.S. Frozen because plaintiffs had not established that those companies were "present in the United States," for purposes of 18 U.S.C. § 1596(a)(2). The court therefore granted the companies' motions for summary judgment. The district court also granted summary judgment in favor of Rubicon and Wales on three alternative grounds. The district court based its ruling on its interpretation of § 1595(a), which at the time imposed liability on "the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a) (2022).

The district court first held that plaintiffs presented no evidence that Rubicon or Wales knowingly participated in a human trafficking venture with Phatthana and S.S. Frozen. The district court defined "participate" to mean taking "some action to operate or manage the venture, such as directing or

participating in Phatthana's labor recruitment, Phatthana's employment practices, or the working conditions at Phatthana's Songkhla factory." Second, the district court held that there was no evidence that Rubicon or Wales "knew or should have known" that Phatthana violated the TVPRA. Third, the district court held that there was no evidence that Rubicon benefitted from Phatthana's alleged TVPRA violations, given that it was undisputed that Rubicon never sold any products processed at Phatthana's Songkhla factory during the relevant time period. As part of this holding, the district court rejected plaintiffs' alternate theory—that Rubicon was liable under § 1595(a) because it had attempted to benefit from the sale of product processed at Phatthana's Songkhla factor—as lacking factual or legal support.

We affirmed the district court's grant of summary judgment. *Ratha I*, 35 F.4th at 1164. The focus of our opinion was on the extraterritorial reach of § 1595. *Id.* at 1167–72. Assuming without deciding that § 1595's civil remedy provision could be applied extraterritorially so long as the requirements of § 1596 were met, we concluded that plaintiffs' claims against Phatthana and S.S. Frozen did not "involve a permissible extraterritorial application of the TVPRA," because neither company was " 'present in the United States' as required by 18 U.S.C. § 1596(a)(2)." *Id.* at 1175. We affirmed summary judgment in those defendants' favor on that basis. *Id.*

With respect to plaintiffs' claims against Rubicon, we first held that plaintiffs failed to raise a triable issue of material fact that Rubicon benefitted from Phatthana's TVPRA violations. *Id.* at 1175–76. We rejected plaintiffs' argument that Rubicon benefitted from marketing the shrimp produced by Phatthana and that Rubicon obtained a

competitive advantage through its association with Phatthana, because neither claim was supported by probative evidence. *Id.* at 1175.

Turning to plaintiffs' claim "that an *attempt* to benefit satisfies § 1595(a)'s 'knowingly benefits' requirement," *id.* at 1176, we construed the statutory text, which provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (*or whoever knowingly benefits*, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a) (2022) (emphasis added). We first noted that the text "does not extend liability to those who *attempt* to benefit from a perpetrator's TVPRA violation." *Ratha I*, 35 F.4th at 1176. We held that "we cannot read the word 'attempt' into the 'knowingly benefits' portion of § 1595 without violating 'a fundamental principle of statutory interpretation' that 'absent provision[s] cannot be supplied by the courts.' " *Id.* (quoting *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019)) (alteration in original).

We then considered the text in the context of the TVPRA as a whole. We noted that § 1594(a) included attempt liability, by providing that "[w]hoever attempts to violate [specified sections] shall be punishable in the same manner as a completed violation of that section." *Id.* We thought it significant that Congress authorized attempt liability in § 1594(a), but not in § 1595(b). *Id.* As we explained, "[w]hen 'Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally.' " *Id.* (quoting *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012)). We stated that "[h]ad Congress intended to create civil liability under § 1595 for attempts to benefit, we can

reasonably conclude that it would have done so in express terms." *Id.*

We noted a possible textual argument that could weigh against this conclusion. *Id.* at 1176 n.16. The argument proceeded in several steps. First, § 1595(a) allows a civil action against a "perpetrator" of a violation of the TVPRA. *Id.* Second, under § 1594(a), the attempted violation of specified TVPRA provisions is itself a violation of the TVPRA. *Id.* Therefore "the term 'perpetrator,' as used in § 1595(a), could be read to include those who had only attempted to violate the TVPRA." *Id.*

We concluded this argument did not help plaintiffs. *Id.* As noted above, § 1595(a) gives a victim: (1) an action against a "perpetrator" and (2) a separate action against a person who "knowingly benefits" from participation in a venture that violated the TVPRA. *Id.* While § 1595(a) could be read to provide an action against a person who attempted to violate the TVPRA and was therefore a perpetrator, plaintiffs invoked the portion of § 1595(a) that provides a separate action against a person who "knowingly benefits" from a TVPRA violation. We held that the phrase "knowingly benefits" as used in § 1595(a) could not be read to extend to "an attempt to knowingly benefit from a perpetrator's TVPRA violation," *id.*, and plaintiffs' argument therefore failed, *id.* at 1176.

## D

Our opinion in *Ratha I* was filed on February 25, 2022. 26 F.4th 1029 (9th Cir.), *amended by* 35 F.4th 1159 (9th Cir. 2022). In March 2022, Senators Cornyn and Klobuchar introduced a bill to reauthorize the TVPRA. Abolish Trafficking Reauthorization Act of 2022 (ATRA), S. 3946, 117th Cong. (2022) (enacted); *see* 168 Cong. Rec. S1832

(Mar. 29, 2022). Although the bill was introduced after our opinion in *Ratha I* had been published, the bill did not contain any amendments to § 1595(a). *See* S. 3946, 117th Cong. (as introduced, Mar. 29, 2022) (available at https://www.congress.gov/117/bills/s3946/BILLS-117s3946es.pdf).

In April 2022, plaintiffs filed a petition for rehearing en banc. We denied the petition and issued an amended opinion on May 31, 2022. 35 F.4th at 1163–64. The mandate issued in June 2022.

Some time after we denied plaintiffs' petition for rehearing en banc, various advocacy organizations lobbied Congress to amend § 1595. Martina E. Vandenberg & Maggie Lee, *Congress Amends the TVPRA to Correct Ninth Circuit's Erroneous Ruling in Ratha*, Transnational Litigation Blog (Aug. 1, 2023), https://tlblog.org/congress-amends-the-tvpra-to-correct-ninth-circuits-erroneous-ruling-in-ratha/ (last visited July 17, 2024). Plaintiffs also sought Supreme Court review of our decision by filing a petition for writ of certiorari in October 2022. The petition was denied on December 5, 2022. 143 S. Ct. 491 (2022).

After the Supreme Court had denied certiorari, on December 20, 2022, Senators Heinrich, Cornyn, and Klobuchar proposed an amendment to S. 3946, *see* 168 Cong. Rec. S9610 (Dec. 20, 2022), which contained language modifying § 1595(a), S. Amend. 6581, 117th Cong., 168 Cong. Rec. S9658, S9658–59 (Dec. 20, 2022) (available                                          at https://www.congress.gov/117/crec/2022/12/20/168/198/CREC-2022-12-20-pt3-PgS9658.pdf). The Senate adopted the amendment and passed the bill by consent. 168 Cong. Rec. S9610 (Dec. 20, 2022). On January 5, 2023, ATRA

was signed into law.  Pub. L. No. 117-347, 136 Stat. 6199 (2023).

Section 102 of ATRA provides:

> SEC.  102.  TECHNICAL  AND CLARIFYING  UPDATE  TO  CIVIL REMEDY.
>
> Section 1595(a) of title 18, United States Code, is amended by inserting "or attempts or conspires to benefit," after "whoever knowingly benefits."

§ 102, 136 Stat. at 6200.  Following this amendment, § 1595(a) now provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, *or attempts or conspires to benefit*, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a) (2023) (emphasis added).

On January 26, 2023, plaintiffs filed a motion under Rule 60(b)(6) of the Federal Rules of Civil Procedure,**³** urging the district court to vacate its order granting summary judgment to Rubicon. Plaintiffs argued that ATRA retroactively clarified that § 1595(a) authorizes suit against those who attempt to benefit from TVPRA violations. They argued that because ATRA was a clarifying amendment, the statute applied to events that occurred before ATRA was passed. In other words, plaintiffs contended that § 1595(a) had always allowed plaintiffs to bring an action against persons who *attempted* to benefit from a TVPRA violation. According to plaintiffs, the enactment of ATRA constituted extraordinary circumstances warranting relief under Rule 60(b)(6) from the final judgment dismissing their claim against Rubicon. The district court denied the Rule 60(b)(6) motion. This appeal followed.

We have jurisdiction to review an order denying a Rule 60 motion as an appealable final order. 28 U.S.C. § 1291; *Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1292 (9th Cir. 1982). We review the district court's denial of the Rule 60 motion for abuse of discretion. *Bynoe v. Baca*, 966 F.3d 972, 979 (9th Cir. 2020). A district court abuses its discretion if its denial "rested upon an erroneous view of the law." *Phelps v. Alameida*, 569 F.3d 1120, 1131 (9th Cir. 2009). We review legal issues de novo. *Bynoe*, 966 F.3d at 979.

---

³ Rule 60(b)(6) of the Federal Rules of Civil Procedure provides:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . .
> (6) any other reason that justifies relief.

II

A

Rule 60(b) permits a court to "relieve a party or its legal representative from a final judgment, order, or proceeding." This rule "codifies various writs used to seek relief from a judgment at any time after the [term of court's] expiration—even after an appeal had (long since) concluded." *Banister v. Davis*, 590 U.S. 504, 518 (2020); *see also Matter of Brown*, 68 F.R.D. 172, 174 (D.D.C. 1975) (Rule 60(b) "was intended merely to codify and simplify common law methods of gaining equitable relief from unfair judgments after the time for appeal has expired."). In addition to codifying five common-law grounds for relieving a party from a final judgment, the rule added a catchall provision permitting reopening for "any other reason that justifies relief." Fed. R. Civ. P. 60(b).

"[T]he catchall provision of Rule 60(b) has been used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *United States v. Washington*, 593 F.3d 790, 797 (9th Cir. 2010) (cleaned up). We have held that "[a] 'clear and authoritative' change in the law governing the judgment in a [party's] case may present extraordinary circumstances." *Bynoe*, 966 F.3d at 983 (citation omitted). We generally evaluate whether the context of the change and its consequences are sufficiently extraordinary by considering six factors "flexibly and in their totality." *Id.* The six factors are "(1) the nature of the legal change, including whether the change in law resolved an unsettled legal question; (2) whether the movant exercised diligence in pursuing reconsideration of his or her

claim; (3) the parties' reliance interests in the finality of the
judgment; (4) the delay between the finality of the judgment
and the Rule 60(b)(6) motion; (5) the relationship between
the change in law and the challenged judgment; and
(6) whether there are concerns of comity that would be
disturbed by reopening a case." *Id.*

In denying the Rule 60(b)(6) motion in this case, the
district court concluded that the first factor, the nature of the
legal change, and the fifth factor, the relationship between
the change in law and the judgment, weighed heavily against
granting relief pursuant to Rule 60(b)(6). The district court
concluded that ATRA did not apply to events occurring
before its enactment, because it did not have an effective
date or any statement indicating that it applied retroactively,
and because the law expanded defendants' liability and
attached new legal consequences to past actions. The court
also concluded that the change in the law would not alter the
challenged judgment, because the court's summary
judgment order was based on two additional grounds that
were not affected by the amendment to the TVPRA.

On appeal, plaintiffs argue that ATRA is a clarifying
amendment and therefore is applicable to events that
occurred before its enactment. Plaintiffs also argue that the
district court's other grounds for summary judgment were
erroneous.

B

Plaintiffs argue that the district court should have
reopened the final judgment under Rule 60(b)(6) due to the
enactment of ATRA, and ask us to address what appears to
be a question of first impression: whether a court may reopen
a final judgment under Rule 60(b)(6) based on a *legislative*
change in law, rather than a *judicial* change in law. The

cases cited and relied on by plaintiffs primarily involved a change in law caused by new judicial opinions. *See, e.g.*, *Bynoe*, 966 F.3d 972 (reopening a final judgment under Rule 60(b)(6) due to a new judicial opinion resolving a procedural issue in habeas law); *Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 447 (9th Cir. 2019) (reversing denial of Rule 60(b)(6) motion in light of intervening Supreme Court decision that overturned caselaw on which plaintiffs had relied). The only case cited by plaintiffs regarding the application of a new statute is not on point: in *United States v. Wyle* (*In re Pacific Far East Lines, Inc.*), we did not consider reopening a case that was already final, but rather held that a new legislative enactment could be applied to a *pending* case. 889 F.2d 242, 243–44 (9th Cir. 1989).[4]

Applying our Rule 60(b)(6) jurisprudence in the context of a legislative change in law would raise a number of thorny issues. First, our standard for concluding there are "extraordinary circumstances" requires the existence of a "clear and authoritative change" in law. *Bynoe*, 966 F.3d at 983 (citation omitted). But if new legislation merely clarifies what the law had always been, as plaintiffs argue is the case here, it is unclear how such legislation would also qualify as a clear and authoritative change. Moreover, if the

---

[4] The analysis may be different if a party seeks relief under Rule 60(b)(6) from ongoing compliance with a permanent injunction. *See McGrath v. Potash*, 199 F.2d 166, 167 (D.C. Cir. 1952) (vacating injunction where "[t]he statutory basis for [it] ha[d] been removed by Congress"); *cf. Agostini v. Felton*, 521 U.S. 203, 237–40 (1997) (vacating a permanent injunction pursuant to Rule 60(b)(5) given a change in Establishment Clause caselaw); *Assoc. Builders & Contractors v. Mich. Dep't of Lab. & Econ. Growth*, 543 F.3d 275, 278–79 (6th Cir. 2008) (revisiting an injunction pursuant to Rule 60(b)(5) after a change in ERISA caselaw). But those circumstances are not present here.

legislation at issue did constitute an authoritative change in law, a court could not apply the legislation to pre-enactment conduct without first using the Supreme Court's framework for determining whether new legislation can be applied retroactively. *See infra* at 21–22 (explaining *Landgraf v. USI Film Prod.*, 511 U.S. 244 (1994)).

Second, assuming the above difficulties could be overcome, it is not clear that a court may reopen a final judgment for the purpose of applying new legislation. Typically, a court applies new legislation only to a case pending on appeal, and we are not aware of a case where this court or the Supreme Court has reopened a final judgment to apply a new enactment. *See supra* at 18–19 and n.4. There are some warning signs against doing so. The Supreme Court has indicated that Congress can require an appellate court to apply legislation retroactively "in reviewing judgments *still on appeal* that were rendered before the law was enacted," but Congress cannot require federal courts to reopen final judgments to do so, because this would violate separation-of-powers principles. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 226 (1995) (emphasis added). *Plaut* is not directly on point here, because Rule 60(b)(6) is not a "legislative mandate" that requires a court to reopen a particular case. *Id.* at 233; *see also Taylor v. United States*, 181 F.3d 1017, 1022 (9th Cir. 1999). But *Plaut* weighs against creating precedent that would give Congress the ability to "declare by retroactive legislation that the law applicable to [a final judgment] was something other than what the courts said it was." 514 U.S. at 227. For instance, if we held that courts should reopen a final judgment under Rule 60(b)(6) whenever Congress referred to a new enactment as a "clarification," we would risk running afoul of *Plaut*. *See Pope v. Shalala*, 998 F.2d 473, 483 (7th Cir.

1993) (warning that if the stated intent of the later enacting
body were given dispositive weight, it "could make a
substantive change merely by referring to a new
interpretation as a 'clarification' "), *overruled in part on
other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir.
1999).

We need not resolve the novel question whether Rule
60(b)(6) may be applied on the basis of changes in
legislation, however. For the reasons explained below, we
conclude that ATRA did not clarify what § 1595(a) in the
TVPRA meant all along, and therefore does not apply to
events that occurred before the enactment of ATRA.
Because ATRA would not apply to the conduct that is the
basis of plaintiffs' claims, the district court did not err in
declining to reopen the final judgment here.**[5]**

### III

We turn to plaintiffs' central argument: that ATRA is a
clarification of the TVPRA and therefore applies to events
that occurred before Congress enacted ATRA.

### A

We start by providing the general framework for
determining whether legislation applies retroactively,

---

[5] In focusing solely on whether ATRA was a clarifying amendment, the
dissent ignores the question whether a final judgment can be reopened
under Rule 60(b)(6) based on a legislative change in the law. But we
cannot "reverse and remand for further proceedings," Dissent at 56,
without holding that the district court abused its discretion. The dissent
does not explain how declining to reopen the judgment under Rule
60(b)(6) here constituted an abuse of discretion given the lack of
precedent supporting reopening on the basis of legislative changes, the
absence of extraordinary circumstances as our precedent defines them,
and the separation of powers issue identified in *Plaut.*

meaning that it applies to events that occurred before its enactment. In making this determination, courts generally apply a two-step analysis. *Ditullio*, 662 F.3d at 1099. There is "a time honored presumption that unless Congress has clearly manifested its intent to the contrary, the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Id.* (cleaned up). Thus, a "court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." *Landgraf*, 511 U.S. at 280. If Congress expressly indicates that a statute applies to pre-enactment conduct, "the statute applies retroactively unless it runs afoul of the constitution." *Ditullo*, 662 F.3d at 1099. If the statute contains no "express command" as to its applicability to pre-enactment conduct, a court's second task is to determine whether its application would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280. If the statute has such effects, we apply a presumption against retroactive application "absent clear congressional intent favoring such a result." *Id.*; *see also Rivers v. Roadway Exp., Inc.,* 511 U.S. 298, 308–09 (1994) (noting the need for "sufficient evidence of a clear congressional intent to overcome the presumption against statutory retroactivity"). If the presumption is rebutted, we apply the statute retroactively unless such application would violate constitutional commands. *Landgraf*, 511 U.S. at 280.

In arguing that ATRA applies to pre-enactment conduct, plaintiffs rely on an exception we have carved out from the *Landgraf* framework. When a statute is so ambiguous or unclear that it leads to inconsistent judicial rulings, we have held that a subsequent Congress can enact legislation to clarify the intent of an earlier Congress. In this context,

Congress's "power to clarify the law" is the power "to confirm what the law has always meant." *Beverly Cmty. Hosp. Ass'n v. Belshe*, 132 F.3d 1259, 1265 (9th Cir. 1997). Because such an enactment "merely clarifies what [the federal law] was originally intended to mean" and "state[s] more clearly what the law already was," it "has no retroactive effect that might be called into constitutional question." *Id.* Therefore "no *Landgraf* analysis is required." *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1186 (9th Cir. 2016). Nor is there any presumption against retroactivity: given that the presumption "is based, in part, on a hesitancy to reverse settled expectations," it does not apply when Congress clarifies the law to "resolve[] a problem of unsettled expectations" such as those that may arise from a circuit split. *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 691–92 (9th Cir. 2000). And because "clarifying legislation is not subject to any presumption against retroactivity," it "is applied to all cases pending as of the date of its enactment." *Id.* at 689.[6]

We apply this exception narrowly. As a general rule, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 (1980) (quoting *United States v. Price*, 361 U.S. 304, 313 (1960)). Moreover, we have recognized that "Congress' decision to 'legislatively overrule' earlier interpretations of a statute does not necessarily imply that these earlier interpretations were inconsistent with congressional intent at the time or even 'wrongly decided.' " *Beaver*, 816 F.3d at 1187 (quoting *Rivers*, 511 U.S. at 304–05). Indeed,

---

[6] We have not held that clarifying legislation may be applied to cases once they are no longer pending on appeal. *See supra* at 19–21.

"Congress frequently 'responds' to judicial decisions construing statutes, and does so for a variety of reasons," *Rivers*, 511 U.S. at 305 n.5; and " '[a]ltering statutory definitions, or adding new definitions of terms previously undefined, is a common way of amending statutes' so that Congress can refine and sharpen old statutory meanings," *Beaver*, 816 F.3d at 1187 (quoting *Rivers*, 511 U.S. at 308). Therefore, in discerning Congress's intent, "[i]t is the duty of a court in construing a statute to consider the time and circumstances surrounding the enactment as well as the object to be accomplished by it." *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1120 (9th Cir. 1989).

In considering the time and circumstances surrounding a new enactment to determine if Congress intended to confirm what a prior enactment has always meant, *id.*, we primarily focus on whether the prior enactment was ambiguous and generated inconsistent judicial opinions. We also consider textual indications that Congress intended to clarify the ambiguity. We discuss these considerations in turn.[7]

First, we give significant weight to indicia of judicial confusion regarding how a statutory provision should be interpreted, because such confusion suggests that Congress's

---

[7] Although we also consider legislative history, our approach to this factor has been inconsistent. In *Belshe*, we indicated that "less formal types of subsequent legislative history, particularly Senate and House Committee Reports" were not a useful basis for inferring the intent of an earlier Congress. 132 F.3d at 1265. And in *Beaver*, we stated that "we place little value on the statements of individual legislators in connection with the enactment of a bill," but "we nevertheless consider them in our analysis." 816 F.3d at 1186. However, in *ABKCO Music*, we gave significant weight to a House Report and statements by members of Congress. 217 F.3d at 690–91.

enactment was for the purpose of correcting the ambiguity and establishing the originally intended meaning. *ABKCO Music*, for instance, involved a circuit split over the definition of the word "publication" in the Copyright Act of 1909. 217 F.3d at 688. Under the 1909 Act, if a work was published and the owner of the work did not comply with the 1909 Act's requirements, the work would enter into the public domain. *Id.* In 1976, the Second Circuit determined that the sale of phonorecords did not constitute "publication" of the underlying composition for purposes of the 1909 Act, *see Rosette v. Rainbo Record Mfg. Corp.*, 546 F.2d 461 (2d Cir. 1976) (per curiam), but we reached the opposite conclusion in 1995, *see La Cienega Music Co. v. ZZ Top*, 53 F.3d 950 (9th Cir. 1995). In *ABKCO Music*, a music company sought a ruling that under *La Cienega*, the distribution of a phonorecord in the late 1930s was a publication that caused the underlying work to enter the public domain. *Id.* at 686. While the case was pending, Congress amended the Copyright Act to resolve the circuit split, adopting the Second Circuit's interpretation. *See* Pub. L. No. 105-80, § 11, 111 Stat. 1529, 1534 (Nov. 13, 1997). The amendment included language making the new law retroactively applicable to conduct taking place before January 1, 1978 (the effective date of the Copyright Act of 1976). *ABKCO Music*, 217 F.3d at 690.

In considering whether Congress's new enactment merely clarified the 1909 Act, and so did not trigger a retroactivity analysis, we first noted that "[a]n amendment in the face of an ambiguous statute or a dispute among the courts as to its meaning indicates that Congress is clarifying, rather than changing the law." *Id.* at 691. We also read the legislative history as showing that Congress intended the act

to be clarifying.**[8]**   Based on these considerations, we
concluded that the amendment "simply clarifie[d] what the
meaning of the 1909 Act was all along," and merely
"intended to restore the law to what it was before" our
decision in *La Cienega*. *Id.* at 690.

Second, we consider other indications of Congress's
intent regarding retroactivity.   One textual indicator is
Congress's decision to title an enactment a "clarification."
However, "titles of acts are not part of the law," *Belshe*, 132
F.3d at 1266 n.6, and Congress does not necessarily use the
term "clarification" to indicate that a law should apply to
conduct predating its enactment. *See, e.g.*, Patient Protection
and Affordable Care Act, Pub. L. No. 111-148, § 2303(c)–
(d), 124 Stat. 119, 296 (2010) (codified at 42 U.S.C.
§ 1396u-7(b)(7)) (referring to an amendment as a
"clarification of coverage of family planning services and
supplies" but indicating that the new definition "shall apply
to items and services furnished on or after" the effective date
of the statute (capitalization altered)); *cf. Rivers*, 511 U.S. at
304 n.7 (stating that the phrase " 'to restore' might sensibly
be read as meaning 'to correct, from now on,' " and does
"not . . . necessarily bespeak[] an intent to restore
*retroactively*"). Therefore, we do not give an enactment's

---

[8] We further relied on the fact that the new enactment "would make no
sense if applied solely prospectively because it explicitly applie[d] to
[the distribution of phonorecords] occurring before January 1, 1978."
217 F.3d at 691.   Although a statute's express concern with pre-
enactment conduct may demonstrate "clear congressional intent
favoring" its retroactive application, *Landgraf*, 511 U.S. at 280, that
ground for retroactive application is distinct from the question whether
an enactment constitutes a clarification of existing law, *see Belshe*, 132
F.3d at 1264–65.

title dispositive weight, but consider it in a larger context, as indicated in *Belshe* and *Beaver*.

In *Belshe*, disputes arose over the interpretation of a section of the Medicaid Act that provided payment rules for states. California interpreted this section as allowing it to limit certain payments. 132 F.3d at 1263. Some courts agreed with this interpretation, while others rejected it, and even those courts that reached the same result did so for different reasons. *See id.* at 1263 n.4. After appellate briefing was completed, Congress amended the relevant section of the Medicaid Act in an act captioned "Clarification Regarding State Liability for Medicare Cost-Sharing." *Id.* at 1263. We held this new statute was a clarification of the prior payment rules and could be applied to cases pending on appeal in part because it "expressly (and formally) stated as [Congress's] intention that the new provision . . . was a 'clarification' of the payment rules contained" in the prior statute. *Id.*

But we did not rely on the title of the statute alone. In rejecting the argument that the new statute "effected such a substantial change in federal law . . . that it cannot be treated as simply clarifying," we noted the "split of authority construing" the Medicaid provision and the fact that the payment rules were "baffling" and "particularly resistant to a single simple interpretation." *Id.* at 1266. We concluded that "[g]iven the extraordinary difficulty that the courts have found in divining the intent of the original Congress, a decision by the current Congress to intervene by expressly clarifying the meaning of [the statute] is worthy of real deference." *Id.* Because a "clearly established meaning" of the payment rules "simply did not exist before [the amendment] was adopted," we honored Congress's

"'clarification' label" and accepted the amendment as a statement of what the law had meant all along. *Id.*

In *Beaver*, plaintiffs alleged that defendants failed to make certain disclosures in connection with the sale of condominiums, thus violating the Interstate Land Sales Full Disclosure Act. 816 F.3d at 1174–75. While the suit was pending, Congress amended the act to exempt condominium sales from its disclosure requirements. *Id.* at 1184–85. Although Congress labeled the new law as "[a]n act to amend the . . . Disclosure Act to clarify how the Act applies to condominiums," *id.* at 1187, we concluded that such "[p]ost-hoc labeling as a 'clarification' by bill supporters of what otherwise appears to be a change" was not controlling, *id.* at 1186. We noted that courts and the implementing agency had not "found extraordinary difficulty . . . in divining the intent of the original Congress," *id.* (alteration in original) (quoting *Belshe*, 132 F.3d at 1266), and gave more weight to indicia that Congress was effecting a change in the law rather than merely clarifying it. For instance, we noted that the amendment was silent on the issue of retroactivity. We also considered that the amendment's effective date was 180 days after enactment. *Id.* at 1187. Both of these considerations undermined the view that the law applied to pending cases. We therefore concluded that Congress had "adopted a substantive change in the law by discarding an old application" of the law. *Id.*

We have also considered whether the timing of a congressional enactment indicates an intent to correct an ambiguity. In *McCoy v. Chase Manhattan Bank, USA, National Ass'n*, we considered a plaintiff's claims that an increase in his credit card interest rates violated a Delaware statute. 654 F.3d 971, 972 (9th Cir. 2011). We interpreted the statute as not allowing discretionary increases to rates,

and therefore held that the plaintiff had stated a claim for a violation of the statute. *Id.* at 972–73. But while the appeal was pending before the Supreme Court, the Seventh Circuit and the First Circuit expressly disagreed with our interpretation of the statute. *Id.* at 973–74. In response to this circuit split, the Delaware legislature enacted a clarifying amendment agreeing with the First and Seventh Circuits. *Id.* at 974. On remand by the Supreme Court, we applied the new amendment to the pending case. *Id.* In response to the plaintiff's argument that the Delaware amendment should not be applied retroactively, we reasoned that "the amendment here does not alter the meaning of [the Delaware statute] but merely clarifies the meaning of the prior language, to the extent the former provision was ambiguous and leading to conflicting results in the courts." *Id.* (emphasis omitted). In reaching this conclusion, we noted a treatise's statement that "[i]f the amendment was enacted soon after controversies arose about interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act," *id.* (quoting 1A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction*, § 22.31 (7th ed. 2011)), and that under Delaware law, "[w]here the legislature passes an amendment shortly after a controversy arises as to the meaning of the original statute, the amendment may be construed as a clarification of prior law," *id.* (quoting *Walls v. Dept. of Corr.*, 663 A.2d 488 (table), 1995 WL 420801, at *1 (Del. July 3, 1995) (unpublished)).

In sum, in determining whether new legislation merely declares what a statutory provision meant when it was enacted, we have focused primarily on whether the prior enactment was ambiguous and generated inconsistent judicial opinions. An amendment enacted shortly after such

inconsistent interpretations of a statute arose may be deemed to be clarification of a statute, rather than a substantive change. We gave weight to Congress's decision to label a new enactment as a clarification only where indicia of ambiguity were also present.

B

We now apply this legal framework. First, ATRA contains no "express command" to apply the statute retroactively to events that occurred before its enactment. If it were so applied, ATRA would "increase a party's liability for past conduct," *Landgraf*, 511 U.S. at 280, because it allows a civil penalty to be assessed on a new class of defendants: those who attempt or conspire to benefit from a TVPRA violation. This gives rise to a presumption that ATRA should not be applied retroactively.[9] *Id.* In arguing that this presumption does not apply, plaintiffs raise only one argument: that ATRA merely clarified the intent of the Congress that originally enacted § 1595(a), and therefore "has no retroactive effect that might be called into constitutional question." *ABKCO Music*, 217 F.3d at 689 (quoting *Belshe*, 132 F.3d at 1265).

1

As explained above, prior to the enactment of ATRA, § 1595(a) provided that a plaintiff could bring a civil action against any person who "knowingly benefits . . . from participation in a venture which that person knew or should

---

[9] We reached the same conclusion in considering whether the civil remedy provided by § 1595 could apply to pre-enactment conduct. *See Ditullio*, 663 F.3d at 1099. *Ditullio* held that because § 1595 "changed substantive law and attached new legal burdens to violations of the TVPA," it could not "apply retroactively to conduct that occurred before its effective date" under *Landgraf*. *Id.*

have known has engaged in an act in violation" of the TVPRA. The 2023 amendment allows a plaintiff to bring a civil action against any person who "knowingly benefits *or attempts or conspires to benefit*" from such a violation of the TVPRA. Congress labeled this amendment a "Technical and Clarifying Update to Civil Remedy." 136 Stat. at 6200.

To determine whether this amendment clarified what the TVPRA had meant all along, we first consider whether, prior to the amendment, § 1595(a) was ambiguous and generated inconsistent judicial decisions. We have not discerned any such ambiguity or inconsistency. Before *Ratha I*, no circuit court opinion addressed the question whether § 1595(a) permitted a plaintiff to bring a civil action against a person who "attempts or conspires to benefit" from a TVPRA violation. Rather, one court noted that it had "little difficulty in deciding what 'knowingly benefits' [in § 1595] means." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723–24 (11th Cir. 2021) (interpreting "knowingly benefit" as requiring a plaintiff to "allege that the defendant knew it was receiving some value from participating in the alleged venture").

Plaintiffs argue that *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017), is an example of the unsettled state of the law. We disagree. In *Ricchio*, an alleged trafficking victim sued the man she alleged trafficked her, motel operators who rented to the trafficker, and the motel owner. *Id.* at 555. The district court dismissed the action against the motel operators and owner for failure to state a claim. *Id.* The First Circuit reversed. According to the court, the complaint alleged that the motel operators had prior commercial dealings with the trafficker and intended to reinstate these dealings for profit "in circumstances in which [the trafficker's] coercive and abusive treatment of [the victim] as a sex slave had become apparent" to the motel operators—namely, the motel

operators ignored the victim's plea for help in escaping from the trafficker and showed indifference to the victim's "obvious physical deterioration." *Id.* The court held that "[i]n these circumstances, it was a plausible understanding that [the trafficker] was forcing sex in the motel room where he held [the victim] hostage, and fairly inferable that the gainful business that [the motel operator] spoke of had been and would be in supplying sexual gratification." *Id.* Further, it was inferable that the motel operators "understood that in receiving money as rent for the quarters where [the trafficker] was mistreating [the victim], they were associating with him in an effort to force [the victim] to serve their business objective." *Id.* The court concluded that "these allegations and inferences suffice as plausible support for pleading statutory violations [of the TVPRA] by the [motel-operator] defendants *in their own right*." *Id.* at 555–56 (emphasis added).

The First Circuit then considered whether plaintiffs' allegations were sufficient to support the statutory claims in the complaint. Because the plaintiff in *Ricchio* sought damages pursuant to § 1595(a), each of the claims in the suit invoked both that section and a section corresponding to a substantive violation. One claim invoked § 1594(a), which prohibits attempts to violate the TVPRA. *Id.* at 557. Regarding this claim, the First Circuit held that the complaint adequately alleged that the motel operators "at the least attempted to violate §§ 1589, 1590, and 1591," which respectively prohibit knowingly benefitting from participating in a forced-labor venture, engaging in labor trafficking by harboring a victim, and knowingly benefitting from participating in a sex-trafficking venture. *Id.* This means that the complaint plausibly alleged that each defendant was the "perpetrator" of a violation of the

TVPRA, *see* § 1595(a), which includes a person who "attempts to violate" §§ 1589, 1590 and 1591, *see* § 1594.

*Ricchio*'s reference to § 1595(a) does not indicate that the First Circuit interpreted that section to permit a civil action against any person who "attempts or conspires to benefit" from a violation of the TVPRA. Rather, the First Circuit referred to an attempt *to violate* various statutory provisions, not an attempt *to benefit from* another's violation.[10] We adopted a similar reading of § 1594(a) and § 1595 in *Ratha I*, *see supra* at 12, where we explained that "the term 'perpetrator,' as used in § 1595(a), could be read to include those who have only attempted to violate the TVPRA," pursuant to § 1594. *Ratha I*, 35 F.4th at 1176 n.16. But as we explained, this "possibility does not suggest that an attempt to knowingly benefit from a perpetrator's TVPRA violation would establish liability under § 1595(a)." *Id.* Neither *Ricchio* nor *Ratha I* addressed the theory

---

[10] The dissent points to the passage in *Ricchio* stating that "[t]he defendants at the least attempted to violate §§ 1589, 1590, and 1591 (see Claims 1, 2, and 3), the necessary substantial steps including the harboring of Ricchio and the receipt of benefit." 853 F.3d at 557. According to the dissent, this means that *Ricchio* "concluded that *attempting* to benefit from human trafficking as proscribed by the TVPRA, in and of itself, gave rise to civil liability." Dissent at 47. But *Ricchio*'s language merely states that the defendants took substantial steps (such as harboring Ricchio and receiving benefits) towards completing a violation of §§ 1589, 1590, and 1591, and therefore could be liable for an *attempted violation* of those TVPRA provisions. It does not indicate that an *attempt to benefit* from another's TVPRA violation is itself civilly actionable under § 1595(a).

plaintiffs now advance, and the two cases do not evidence any judicial difficulty interpreting the TVPRA.[11]

Nor did the Fourth Circuit interpret § 1595(a)'s "knowingly benefit" provision as including an "attempt to benefit" in *Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019), also decided before *Ratha I*.  In *Howard*, the Fourth Circuit considered whether the civil remedy provisions of the TVPRA applied to violations that took place extraterritorially.  *Id.* at 233.  The court applied the extraterritoriality framework set forth in *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016).  *RJR Nabisco* held that RICO applies to extraterritorial criminal conduct, *id.* at 326, but that its civil remedy provisions do not apply to extraterritorial conduct, *id.* at 346, because "[n]othing in [the relevant provision] provides a clear indication that Congress intended to create a private right of action for injuries suffered outside of the United States," *id.* at 349.

In holding that the TVPA's civil remedy provision did apply extraterritorially, the Fourth Circuit distinguished *RJR Nabisco* on several grounds, including that "§ 1595 expressly and directly incorporates the TVPA's criminal predicates, many of which manifestly apply to foreign conduct," and that it "applies coextensively with its

---

[11] The dissent argues that a court could read § 1589(b) (which makes it a violation of the TVPRA to knowingly benefit from participation in a forced labor venture) together with § 1594 (which provides that "[w]hoever attempts to violate section . . . 1589" commits a TVPRA violation) and conclude that a person who attempts to knowingly benefit from participation in a forced labor venture is a perpetrator who is subject to suit under § 1595(a). Dissent at 48–49.  Because neither *Ricchio* nor any other court has offered such an interpretation of § 1595(a), the dissent's interpretation does not provide evidence of judicial confusion or ambiguity that a clarifying amendment would resolve.

predicate offenses, omitting any qualifying or modifying language." *Howard*, 917 F.3d at 243. Applying this reasoning, the Fourth Circuit concluded that the defendant's extraterritorial violations of TVPA could be the subject of a civil action under § 1595, because the TVPA authorized "civil suits by 'a victim of a violation of this chapter [chapter 77]' against the perpetrator or 'whoever knowingly benefits' from that violation.'" *Id.* at 243. This analysis does not address the legal question at issue in *Ratha I*. Although the Fourth Circuit indicated that § 1595 "applies coextensively with its predicate offenses," *id.*, this statement is too general to indicate that the Fourth Circuit interpreted "knowingly benefits" in § 1595 as including an "attempt to benefit." Indeed, the opinion includes no textual analysis of § 1595(a) whatsoever, an observation the dissent does not dispute. Dissent at 49.

After these circuit decisions, we decided *Ratha I*, which was the first case to address whether a defendant's attempt to benefit from TVPRA violations satisfied § 1595(a)'s "knowingly benefits" requirement. *Ratha I* did not indicate that any prior opinion shed light on this issue. We cited *Roe v. Howard* only for its statement that "Congress created several new federal criminal offenses intended to more comprehensively and effectively combat human trafficking," *Ratha I*, 35 F.4th at 1164 (quoting *Howard*, 917 F.3d at 236), and did not attempt to distinguish it in any way, suggesting we did not detect any conflict. Nor did we have "extraordinary difficulty" interpreting the statute. *Belshe*, 132 F.3d at 1266. There was no missing or undefined term we struggled to interpret. Rather, we engaged in a straightforward statutory analysis and concluded that we could not read § 1595(a) in the extra-textual manner urged by plaintiffs. We concluded that § 1595(a) was

unambiguous, given that "[t]he text of § 1595 does not
extend liability to those who attempt to benefit from a
perpetrator's TVPRA violation," *Ratha I*, 35 F.4th at 1176,
and stated that "we cannot read the word 'attempt' into the
'knowingly benefits' portion of § 1595 without violating 'a
fundamental principle of statutory interpretation that "absent
provision[s] cannot be supplied by the courts." ' " *Id.* at
1176 (quoting *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019)
(alteration in original)).  We are bound by our prior decision
that there was no ambiguity.

    Judicial opinions issued after our decision in *Ratha I*
have not shown § 1595 "to be particularly resistant to a
single simple interpretation" or to be "particularly in need of
clarification." *Belshe*, 132 F.3d at 1266.  We have found
nothing to suggest a "split of authority construing the
statute." *Id.*  No circuit court decision following *Ratha I* has
disagreed with our interpretation.  Plaintiffs cite a D.C.
Circuit decision applying the TVPRA, but it does not discuss
civil attempt-to-benefit liability under § 1595—or attempt
liability at all.  *See Rodriguez v. Pan Am. Health Org.*, 29
F.4th 706, 716 (D.C. Cir. 2022).  The opinion merely
indicates in passing that a defendant who violates the
TVPRA is subject to civil liability as a perpetrator. *Id.* at
716.  This statement does not conflict with *Ratha I*.

    Nor do district court cases cited by plaintiffs indicate that
§ 1595(a) was ambiguous regarding whether it allowed a suit
against a person who "attempt[ed] to benefit" from a
TVPRA violation.  In *Paguirigan v. Prompt Nursing
Employment Agency LLC*, 286 F. Supp. 3d 430, 439–40
(E.D.N.Y. 2017), for instance, the district court denied a
motion to dismiss a claim under § 1595(a) and § 1594 for the
attempted violation of § 1589 and § 1590.  This ruling again
echoes the textual analysis in *Ricchio* and *Ratha I*: because

§ 1595(a) allows a plaintiff to bring an action against the perpetrator of a violation of the TVPRA, and because § 1594 indicates that a perpetrator includes a person who attempts to violate § 1589 and § 1590, the plaintiff could bring an action under § 1595(a) for an attempted violation of § 1589 and § 1590.   The decision did not address the distinct question whether § 1595(a) allowed an action against a person who attempted *to benefit from* a violation of TVPRA. The other cases cited by plaintiffs likewise address an attempted violation (as opposed to an attempt to benefit), *see, e.g.*, *Saraswat v. Selva Jayaraman, Bus. Integra*, No. 15-CV-4680, 2016 WL 5408115, at \*3–6 & n.7 (E.D.N.Y Sept. 28, 2016) (holding that the plaintiff's allegations were "sufficient to state a claim for *attempted* forced labor" under § 1594), or they fail to address the issue entirely.[12]

2

Given the lack of any indication that the courts were in disarray on the question whether § 1595(a) authorized a claim for an attempt to benefit from a TVPRA violation, we consider whether other "circumstances" show that ATRA declared what the TVPRA meant at the time it was enacted. *Bedoni*, 878 F.2d at 1120.

First, we consider textual indications that could illuminate Congress's intent.   Here, the only textual indicator of this sort is the label Congress used for the pertinent section of ATRA: a "Technical and Clarifying Update to

---

[12] *See Norambuena v. W. Iowa Tech Cmty. Coll.*, No. C20-4054, 2022 WL 987946 (N.D. Iowa Mar. 31, 2022); *Sherman v. Trinity Teen Sols*., No. 20-CV-215, 2021 WL 7286424 (D. Wyo. Nov. 30, 2021); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112 (D. Colo. 2019); *Ross v. Jenkins*, 325 F. Supp. 3d 1141 (D. Kan. 2018); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171 (E.D. Pa. 2020).

Civil Remedy." § 102, 136 Stat. at 6200.  We conclude that
this label does little to establish that Congress intended to
clarify the intent of the prior Congress that enacted the
TVPRA.  Congress did not describe the enactment as a
"clarification" of § 1595, but rather as a "clarifying update"
to the TVPRA.  The noun "update" means "an up-to-date
version,"  *Update*,  Merriam-Webster's  Collegiate
Dictionary (11th ed. 2020), while the act of updating
involves improving or enhancing an out-of-date version by
incorporating new information or features.  When software
is updated, for example, it is modified to make the new
version run more smoothly going forward.  Similarly,
updating a policy involves adapting it to new circumstances
or fixing deficiencies going forward.  The primary
connotation of "update," therefore, is one of forward-
looking improvement.  *Cf. Rivers*, 511 U.S. at 304 n.7
(stating that "the phrase 'to restore' might sensibly be read
as meaning 'to correct, from now on'").  The use of the term
"update" in the label Congress placed on ATRA
distinguishes it from the label in *Belshe*, "Clarification
Regarding State Liability for Medicare Cost-Sharing," 132
F.3d at 1263–64, and the label in *Beaver*, "An act to amend
the [Act] to clarify how the Act applies to condominiums,"
816 F.3d at 1187.  We did not give dispositive weight to the
label of "clarification" in those cases, and have even less
reason to do so here.  Rather, there is reason to read the
"clarifying update to civil remedy" label as indicating a
forward-looking amendment to the statute in light of new
circumstances.  Other than the reference to the amendment
as a "clarifying update" in the title, there are no other textual
indications from Congress that it intended to restore the
language of § 1595(a) as enacted in the TVPRA to what the
statute had always meant.

The dissent contends that a "clarifying update" is like a "clarifying change," and is applied retroactively. Dissent at 54–55. We disagree that "update" and "change" are synonymous. But even if they were, when we apply congressional amendments retroactively under our exception to *Landgraf*, we generally distinguish between amendments that clarify and those that change existing law. *See, e.g.*, *Beaver*, 816 F.3d at 1186 ("[N]o *Landgraf* analysis is required if an amendment merely serves to clarify rather than change the substance of existing law."); *ABKCO Music*, 217 F.3d at 691 ("An amendment in the face of an ambiguous statute or a dispute among the courts as to its meaning indicates that Congress is clarifying, rather than changing, the law."); *Bedoni*, 878 F.2d at 1121 ("Where, as here, an act is ambiguous, an amendment thereto is an indication that it is intended to clarify, rather than change, the existing law." (cleaned up)); *Callejas v. McMahon*, 750 F.2d 729, 730 (9th Cir. 1984) (noting that "a dispute or ambiguity, such as a split in the circuits, is an indication that a subsequent amendment is intended to clarify, rather than change, the existing law" (cleaned up)). In arguing to the contrary, the dissent cites *ABKCO Music* as an example of how "we have frequently described a clarifying 'change' in the law as having retroactive effect." Dissent at 54. But even the dissent's quotation from *ABKCO Music* fails to support this claim, since it merely states that "*when* an amendment is deemed clarifying rather than substantive, it is applied retroactively." 217 F.3d at 689 (emphasis added) (quoting *United States v. Donaghe*, 50 F.3d 608, 612 (9th Cir. 1994)). Rather, *ABKCO Music* expressly differentiated between a clarifying amendment, which "[n]ormally" is applied retroactively, *id.*, and a change in law, which would

"pose a series of potential constitutional problems" if applied retroactively, *id.* (quoting *Belshe*, 132 F.3d at 1265).**[13]**

Second, aside from textual indicators, we consider whether there are any other factors indicative of Congress's intent. Unlike *ABKCO Music*, there is no contemporaneous legislative history regarding the enactment of ATRA. There are no House or Senate Committee Reports, or even statements of legislators on the House or Senate floor at the time of the bill's enactment. *See ABKCO Music*, 217 F.3d at 690. Rather, plaintiffs rely on an amicus brief representing the views of six legislators. We accord little weight to such post-enactment amicus briefs, which "represent only the personal views of the[] legislators." *Blanchette v. Conn. Gen. Ins. Corps*., 419 U.S. 102, 132 (1974) (citation omitted). Even if the legislators' comments had been made on the floor during the legislative process, we "place little value on the statements of individual legislators in connection with the enactment of a bill." *Beaver*, 816 F.3d at 1186. Plaintiffs also rely on a blog post written by advocates from the Human Trafficking Legal Center regarding their efforts to lobby Congress to enact ATRA. Such an advocacy piece does not shed light on

---

[13] The dissent also relies on *United States v. Donaghe*, 50 F.3d 608 (9th Cir. 1994), which considered an amendment to the sentencing guidelines. *See* Dissent at 54. This reliance is misplaced, because the retroactive application of the Guidelines is subject to its own legal framework. *See* 18 U.S.C. § 3582(c)(2) (authorizing courts to modify sentences based on a retroactive application of the sentencing guidelines); *see also* U.S.S.G. § 1B1.11(b)(2) (explaining circumstances where "the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes"); *id.* § 1B1.10(d) (listing a number of "[c]overed [a]mendments" for which retroactivity is presumed).

whether Congress intended to confirm what TVPRA had always meant.

Finally, we consider whether the timing of ATRA indicates that it was a response to *Ratha I*. As we noted in *McCoy*, when Congress enacts an amendment "soon after controversies arose about interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act." 654 F.3d at 974 (quoting Singer & Singer, *supra*, § 22.31). But here, there were no controversies among the circuits regarding the interpretation of § 1595(a). Prior to our decision in *Ratha I*, no circuit court had addressed the question whether § 1595(a)'s "knowingly benefits" requirement could be satisfied by evidence of an *attempt to benefit* from a TVPRA violation. Nor did any circuit court consider this issue after *Ratha I* was decided, and before the congressional enactment. Therefore, the logical inference described in *McCoy* does not arise. Nor does it appear that Congress's enactment was an effort to make a quick correction to an errant ruling, given that Congress enacted ATRA five years after the district court's final judgment and almost a year after our opinion in *Ratha I*. Indeed, Congress did not enact ATRA until after the Supreme Court denied plaintiffs' petition for certiorari. Congress's amendment in ATRA, which extended liability to those who attempted to benefit from a TVPRA violation, is thus better understood as effecting a substantive change.[14]

In short, there is no persuasive evidence that Congress intended ATRA to declare what § 1595(a) meant when it

---

[14] Contrary to the dissent, neither the fact that the statute took immediate effect, Dissent at 55, nor that Congress enacted ATRA unanimously, Dissent at 52, has any bearing on the question whether Congress intended the enactment to merely clarify existing law.

was enacted. There is no evidence of a circuit split or judicial difficulty in interpreting the phrase "whoever knowingly benefits" in § 1595(a). The label designating ATRA as a "clarifying update" suggests a forward-looking change. Moreover, we have held that the mere use of the word "clarification" in the title of an amendment is not controlling. *Beaver*, 816 F.3d at 1186. We conclude that the requirements for applying our narrow exception to the *Landgraf* framework are not present here.

\* \* \*

Because we reject the argument that ATRA "merely clarifies what [§ 1595(a)] was originally intended to mean," *Belshe*, 132 F.3d at 1265, and plaintiffs raise no other basis for ATRA to apply retroactively, we conclude that ATRA does not apply to pre-enactment conduct, including the conduct that is the basis of plaintiffs' claims. Therefore, the district court did not abuse its discretion in denying plaintiffs' motion to reopen the final judgment under Rule 60(b)(6). We affirm the denial of the Rule 60(b)(6) motion on that basis. Because we need not examine the relationship between the change in law and the challenged judgment, we do not review the district court's alternative bases for summary judgment.

**AFFIRMED.**

GRABER, Circuit Judge, dissenting:

I respectfully dissent.

A later Congress has the power to enact legislation that is meant to "clarify" the intent of an earlier Congress and to "confirm what the law has always meant." Beverly Cmty. Hosp. Ass'n v. Belshe, 132 F.3d 1259, 1265 (9th Cir. 1997) (emphasis omitted). When Congress does so, we give its enactment retroactive effect. Id. In determining whether an amendment is clarifying, we first consider whether the prior enactment was ambiguous and whether it generated inconsistent judicial decisions. Op. at 22–25; Callejas v. McMahon, 750 F.2d 729, 731 (9th Cir. 1984). If so, no presumption against retroactivity applies, and we next consider textual and other indications as to whether Congress intended to clarify the ambiguity. Op. at 24, 26–28; Bedoni v. Navajo-Hopi Indian Relocation Comm'n, 878 F.2d 1119, 1120–21 (9th Cir. 1989).

Proper application of those principles here demonstrates that the amendment in question has retroactive effect. When Congress enacted the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), it clearly intended to make the criminal and civil provisions coextensive. But the statute was ambiguous because, in one place, the civil provision omitted a phrase regarding "attempt." Two other circuit courts implicitly concluded that this omission was an oversight, ruling that an attempt to benefit from human trafficking creates civil liability. See Roe v. Howard, 917 F.3d 229 (4th Cir. 2019); Ricchio v. McLean, 853 F.3d 553 (1st Cir. 2017). Our court disagreed in Ratha v. Phatthana Seafood Co. (Ratha I), 35 F.4th 1159, 1176 (9th Cir. 2022), generating a circuit split. As soon as the Supreme Court declined to grant certiorari in

Ratha I, Congress acted immediately—within two weeks—to resolve the ambiguity and to correct our error. It did so with the label "technical and clarifying," a label that is entitled to great weight. In addition, Congress made the amendment effective immediately, so there is no uncertainty about Congress's intent concerning retroactivity.

The majority opinion reaches the opposite result only by making a series of key errors: it fails to give effect to the intended parallel between the civil and criminal provisions; it declines to recognize the ambiguity created thereby and misconstrues the cases from other circuits demonstrating that Congress stepped in to resolve the ambiguity; it improperly ignores the context and timing of the amendment's passage; it wrongly discounts Congress's intentional labeling of the amendment as "technical and clarifying" only; it sidesteps the distinctions between this case and Beaver v. Tarsadia Hotels, 816 F.3d 1170 (9th Cir. 2016); and it engages in questionable semantic juggling. I would reverse and remand for further proceedings.

A. Congress's 2008 Amendment to the TVPRA Was Ambiguous

In 2000, Congress enacted the Trafficking Victims Protection Act ("TVPA") "to 'combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims.'" Ditullio v. Boehm, 662 F.3d 1091, 1094 (9th Cir. 2011) (quoting Pub. L. No. 106-386, § 102, 114 Stat. 1464 (2000) (codified as amended at 18 U.S.C. §§ 1589–92)). "By enacting [the] statute, 'Congress created several new federal criminal offenses intended to more comprehensively and effectively combat human trafficking.'" Ratha I, 35

F.4th at 1164 (quoting Howard, 917 F.3d at 236). Congress amended the TVPA several times, each time extending the extraterritorial reach of the statute. See generally Howard, 917 F.3d at 235–37 (describing the history). By 2008, the TVPA contained a series of criminal provisions, codified at 18 U.S.C. §§ 1581–94, and civil enforcement provisions, codified at 18 U.S.C. § 1595.

In 2008, Congress enacted a reauthorized and amended TVPRA.[1] Pub. L. No. 110-457, 122 Stat. 5044 (2008). The TVPRA amended the civil remedy provision codified at 18 U.S.C. § 1595 to state:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

Pub. L. No. 110-457, § 221, 122 Stat. at 5067 (emphasis added). The TVPRA further expanded the extraterritorial reach of the statute by providing:

> In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have

---

[1] I refer to the TVPA, as reauthorized and amended in 2008, as the TVPRA.

> extra-territorial jurisdiction over any offense
> (or any attempt or conspiracy to commit an
> offense) under section . . . 1589, 1590, or
> 1591 if—
>
> (1) an alleged offender is a national of the
>     United States . . . .

See id., § 223, 122 Stat. at 5071 (codified at 18 U.S.C.
§ 1596) (emphasis added).

The inclusion of the phrase "attempt" in § 1596 but its
exclusion in § 1595 created an obvious ambiguity as to
whether civil liability attached to attempted violations. As
the First Circuit correctly held in Howard, Congress
intended the civil and criminal provisions to apply
coextensively. Howard, 917 F.3d at 243. But that principle
makes sense only if Congress intended to attach civil
liability to all violations—not only to some violations. We
held otherwise in Ratha I. See 35 F.4th at 1176 ("The text of
§ 1595 does not extend liability to those who attempt to
benefit from a perpetrator's TVPRA violation." (citing 18
U.S.C. § 1595(a))).

B. The 2008 Amendment Led to Inconsistent Judicial
   Decisions

Two other circuit courts concluded that civil liability
attaches for attempting to benefit financially, or for receiving
anything of value, from participation in a venture involving
human trafficking: Ricchio, 853 F.3d at 557, and Howard,
917 F.3d at 237, 239. As noted, our court in Ratha I reached
the opposite conclusion. 35 F.4th at 1176.

The First Circuit in Ricchio reversed the district court's
dismissal of the plaintiff's claims under §§ 1594(a) and

1595(a). In her complaint, the plaintiff alleged that the motel defendants "<u>attempted to violate</u> 18 U.S.C. §§ 1589, 1590 and/or 1591 by <u>attempting to obtain or provide</u> [] Ricchio's forced labor and sexual services in violation of 18 U.S.C. § 1589 . . . ." <u>Ricchio v. Bijal, Inc.</u>, 424 F. Supp. 3d 182, 194 (D. Mass. 2019) (brackets in original) (emphases added). In reversing the district court, the First Circuit in <u>Ricchio</u> held that the plaintiff's allegations sufficed to state a claim for relief. <u>See</u> <u>Ricchio</u>, 853 F.3d at 555–57 (noting that the plaintiff stated a cognizable claim under Claim 6, which plausibly gave rise to civil liability under § 1595). The First Circuit explained that, although the motel defendants were interrupted before they could benefit fully, there was a plausible claim under §§ 1594(a) and 1595(a) because the defendants "<u>at the least attempted</u> to violate §§ 1589, 1590, and 1591." <u>Id.</u> at 557 (emphasis added); <u>see also</u> <u>id.</u> ("While 'mere preparation' does not constitute a substantial step [for the purposes of attempt], a defendant 'does not have to get very far along the line toward ultimate commission of the object crime in order to commit the attempt offense.'" (quoting <u>United States v. Turner</u>, 501 F.3d 59, 68 (1st Cir. 2007))). That holding makes sense only if the First Circuit concluded that <u>attempting</u> to benefit from human trafficking as proscribed by the TVPRA, in and of itself, gave rise to civil liability.

Two years later, the Fourth Circuit in <u>Howard</u> also addressed attempts in the context of § 1595 liability. The court held that "§ 1595 expressly and directly incorporates the TVP[R]A's criminal predicates" and that "the text of § 1595 shows that it applies coextensively with its predicate offenses." <u>Howard</u>, 917 F.3d at 243; <u>see also</u> <u>id.</u> at 237 (noting that the courts have "extra-territorial jurisdiction over any offense (<u>or any attempt or conspiracy to commit an</u>

offense) under section . . . 1589, 1590, or 1591" (quoting
Pub. L. No. 110-457, § 223) (emphasis added)).

But in <u>Ratha I</u>, we disagreed. <u>See, e.g.</u>, 35 F.4th at 1176
("Congress's decision to impose civil liability on those who
'benefit' but not those who 'attempt to benefit' is significant
because attempt liability is plainly authorized elsewhere in
the TVPRA."). We held that attempting to benefit
financially did <u>not</u> give rise to civil liability. <u>Id.</u> Our
decision, therefore, diverged from <u>Ricchio</u> and <u>Howard</u>,
which had held the opposite, creating a circuit split.

Thus, the majority opinion mistakenly asserts that,
"[b]efore <u>Ratha I</u>, no circuit court opinion addressed the
question whether § 1595(a) permitted a plaintiff to bring a
civil action against a person who 'attempts or conspires to
benefit' from a TVPRA violation." Op. at 31. The majority
opinion engages in an extensive analysis aimed at
distinguishing an "attempt to <u>benefit</u>" from an "attempt to
<u>violate</u>," by characterizing a party who engages in the former
as a mere beneficiary and one who engages in the latter as a
"perpetrator." Op. at 12–13, 33–37 (emphases added). But
applying the opinion's own definition of a "perpetrator,"
which the opinion agrees "includes a person who 'attempts
to violate' §§ 1589, 1590 and 1591," Op. at 32–33, 37, the
plain statutory text of § 1589(b) requires that we deem
persons who <u>knowingly benefit</u> from TVPRA violations to
be "perpetrators" themselves. Knowingly benefiting from a
TVPRA violation is, <u>in and of itself</u>, a violation of the
TVPRA. <u>See</u> § 1589(b) ("Whoever knowingly benefits,
financially or by receiving anything of value . . . shall be
punished as provided in subsection (d)."); <u>see also</u>
<u>Rodriguez v. Pan Am. Health Org.</u>, 29 F.4th 706, 716 (D.C.
Cir. 2022) ("The 'financial benefit' that violates § 1589(b) is
itself 'wrongful conduct.'"); <u>Bistline v. Parker</u>, 918 F.3d 849,

871 (10th Cir. 2019) ("One can violate [§ 1589] either <u>as a</u> <u>primary offender or simply by benefiting financially</u> from participation in a 'venture' with the primary offender." (emphasis added)). The majority opinion's analysis of <u>Ricchio</u> is, therefore, flawed.

Even leaving <u>Ricchio</u> aside, the Fourth Circuit in <u>Howard</u> ruled that an attempt to benefit from human trafficking creates civil liability under § 1595 when it expressly held that the criminal and civil provisions are coextensive. <u>Howard</u>, 917 F.3d at 243.

In short, Congress acted in response to the TVPRA's ambiguity and the conflicting judicial determinations in <u>Ricchio</u>, <u>Howard</u>, and <u>Ratha I</u>. Therefore, we next must examine Congress's enactment of the Abolish Trafficking Reauthorization Act ("ATRA") to determine whether it intended for its legislation to have retroactive effect.

C. <u>Congress Intended a Retroactive Amendment</u>

Mere weeks after the Supreme Court denied certiorari in <u>Ratha I</u>, Congress passed the ATRA and included the following amendment to § 1595(a):

> SEC. 102. TECHNICAL AND CLARIFYING UPDATE TO CIVIL REMEDY.
>
> Section 1595(a) of title 18, United States Code, is amended by inserting "or attempts or conspires to benefit," after "whoever knowingly benefits."

Pub. L. No. 117-347, 136 Stat. 6199, 6200 (2023).

Three factors, which we have deemed relevant in determining whether an amendment is clarifying, establish the ATRA's retroactivity: (1) Congress acted swiftly following our decision in <u>Ratha I</u>; (2) Congress expressly stated that its enactment was intended only as a technical and clarifying update; and (3) Congress made the change effective immediately.

1. <u>Congress Acted Swiftly</u>

We first published <u>Ratha I</u> on February 25, 2022. <u>See</u> 26 F.4th 1029, 1045 ("The text of § 1595 does not extend liability to those who <u>attempt</u> to benefit from a venture.").**[2]** The ATRA was introduced in the Senate about five weeks later, on March 29, 2022. <u>See</u> All Actions: S.3946 — 117th Congress (2021–2022), <u>available at</u> https://www.congress.gov/bill/117th-congress/senate-bill/3946/all-actions (noting that the ATRA was first introduced, "[r]ead twice[,] and referred to the Committee on the Judiciary" on March 29, 2022). And the amendment to § 1595(a) was proposed on December 20, 2022. S. Amend. 6581, 117th Cong., 168 Cong. Rec. S9658, S9658–59 (Dec. 20, 2022), <u>available at</u> https://www.congress.gov/117/crec/2022/12/20/168/198/C REC-2022-12-20-pt3-PgS9658.pdf. Before <u>Ratha I</u>, no other court had interpreted the TVPRA in the same manner on the issue of civil attempt liability. Thus, until then, there was no reason for Congress to act. But only months after <u>Ratha I</u>, very shortly after the Supreme Court denied certiorari in <u>Ratha I</u>, Congress passed the ATRA. <u>See</u> All

---

[2] <u>As amended and superseded on denial of reh'g en banc</u>, 35 F.4th 1159, 1176 (9th Cir. May 31, 2022) ("The text of § 1595 does not extend liability to those who <u>attempt</u> to benefit from a perpetrator's TVPRA violation").

Actions: S.3946 — 117th Congress (2021–2022) (noting that the bill was considered and passed by the Senate and House on December 20, 2022, and December 22, 2022, respectively); see also Ratha I, 35 F.4th 1159, cert. denied, 143 S. Ct. 491 (Dec. 5, 2022). Congress acted immediately to resolve the ambiguity and to correct our error.

The majority opinion erroneously measures the timing of the amendment from the entry of the district court's judgment and from our initial opinion in Ratha I. Op. at 41. But the key, as the majority opinion acknowledges, Op. at 14–15, is that the Supreme Court denied certiorari with respect to Ratha I on December 5, 2022, and the amendment to § 1595(a) was introduced only about two weeks later. Until Ratha I's erroneous interpretation of the statute was final, Congress had no pressing need to correct our error.

"It is the duty of a court in construing a statute to consider time and circumstances surrounding the enactment as well as the object to be accomplished by it." Callejas, 750 F.2d at 731. As we and other circuits have held, a fast-acting legislative body that amends a statute in the face of an ambiguity or a dispute among courts as to the meaning of the statute suggests that Congress's change is a mere clarification, rather than a substantive change in the law. See, e.g., id. ("[A] 'dispute or ambiguity, such as a split in the circuits, [is] an indication that a subsequent amendment is intended to clarify, rather than change, the existing law.'" (quoting Brown v. Marquette Sav. & Loan Ass'n, 686 F.2d 608, 615 (7th Cir. 1982) (second alteration in original))); ABKCO Music, Inc. v. LaVere, 217 F.3d 684, 689–90 (9th Cir. 2000) ("An amendment in the face of an ambiguous statute or a dispute among the courts as to its meaning indicates that Congress is clarifying, rather than changing, the law." (citing Bedoni, 878 F.2d at 1121 and Callejas, 750

F.2d at 731)); McCoy v. Chase Manhattan Bank, USA, Nat'l Ass'n, 654 F.3d 971, 974 (9th Cir. 2011) ("If the amendment was enacted soon after controversies arose about interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act . . . ." (quoting 1A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction, § 22.31 (7th ed. 2011))); Liquilux Gas Corp., v. Martin Gas Sales, 979 F.2d 887, 890 (1st Cir. 1992) (finding that, despite the court's decision ten days before the enactment of the amendment, "the amendment was not a change at all, but a clarification that did not alter the law, and merely explicated it").

Although the ATRA's legislative history is not extensive, Congress enacted the amendment quickly and unanimously. In my view, Congress's speed and its minimal discussion on this topic in Committee and on the House and Senate floors strongly suggest that the amendment is clarifying only, and not a substantive change in the law.

2. Congress Used the Label "Technical and Clarifying," a Label That Is Entitled to Great Weight

Congress added the term "attempt" to § 1595(a), the very term that we held was missing and that foreclosed Plaintiffs' claims from proceeding as cognizable. Ratha I, 35 F.4th at 1176. In addition, the amendment's title provides that it is a "Technical and Clarifying Update." Pub. L. No. 117-347, § 102, 136 Stat. at 6200 (emphasis added). We consistently have ruled that such phrasing suffices to demonstrate that an amendment is clarifying. See Belshe, 132 F.3d at 1266–67, 1266 n.6 (noting that titles of acts, while not part of the law, may be used to "resolve ambiguity" in a statute so long as they do not contradict the text and holding that the amendment at issue was a clarification because, among other

indicators, "clarification" was in the title of the Act (emphasis added)). Thus, the amendment title's notation in Section 102—that the change to § 1595(a) was intended as a technical and clarifying update—must be given considerable weight. See id. at 1265 ("It has been established law since nearly the beginning of the republic . . . that congressional legislation that thus expresses the intent of an earlier statute must be accorded great weight" (citing Red Lion Broad. Co. v. FCC, 395 U.S. 367, 381–82 (1969) and Loving v. United States, 517 U.S. 748, 770 (1996))); see also id. at 1266 ("We therefore honor Congress'[s] 'clarification' label . . . .").

Of course, a label or title alone, stating that an amendment serves only to "clarify," does not necessarily demonstrate an amendment's retroactive effect. See, e.g., Or. Pub. Util. Comm'n v. ICC, 979 F.2d 778, 780 (9th Cir. 1992) ("The title of a statute can be used to resolve[] ambiguity, but the title cannot control the plain meaning of a statute."). But when considered with other relevant factors, a label or title can be a strong indicator of intended retroactivity. Those circumstances exist here.

In addressing the amendment's label, the majority opinion misreads Beaver v. Tarsadia Hotels, 816 F.3d 1170 (9th Cir. 2016). In Beaver, we did not hold that heavy reliance on an act's title is never sufficient when determining whether an amendment should be construed as a retroactive technical clarification. Rather, we explained that the defendant's heavy reliance was "misplaced" given the other factors that were at play, id. at 1187—factors not at play in the present case. Specifically, the "lapse between the enactment of the bill and the bill's effective date (180 days), coupled with the bill's silence on the issue of retroactivity" suggested to the panel that the amendment "was actually a change in the law." Id.; see id. (noting that "the 180-day

delay in the bill's effective date suggests that the amendment ought to be applied prospectively, so that actors may adjust their behavior to conform to the new legislation"); see also Pub. L. No. 113–167, 128 Stat. 1882, 1882 (Interstate Land Sales Full Disclosure Act ("ILSA")) (stating that "[t]he amendments made by [the ILSA] shall take effect 180 days after the date of the enactment of [ILSA]").

The majority opinion asserts that the label's inclusion of the term "update" suggests a "forward-looking change." Op. at 37–38, 42. That assertion construes the term "update" in too cramped a manner. In ordinary speech we use the word "update" to refer to current information about a past—not a future—event. I may tell a friend that my high school senior has been accepted at two of five colleges applied to. In a later communication titled "update" I might say: "Just to clarify, the two colleges we've heard from are the University of Oregon and the University of Washington." To reiterate, the majority opinion places undue and inaccurate weight on the word "update."

Moreover, we frequently have described a clarifying "change" in the law as having retroactive effect. See ABKCO Music, 217 F.3d at 689–90 ("Normally, when an amendment is deemed clarifying rather than substantive, it is applied retroactively." (quoting United States v. Donaghe, 50 F.3d 608, 612 (9th Cir. 1994))); see also Donaghe, 50 F.3d at 612 (explaining in the Sentencing Guideline context that an amendment that "has been designated a clarifying change" is normally applied retroactively when it "is deemed

<u>clarifying</u> rather than substantive" (emphases added)).**[3]** The word "update" is no more forward-looking than the word "change." <u>See, e.g.</u>, <u>Change</u>, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/change (last visited July 11, 2024) ("change" means "the act, process, or result of changing: such as (a) alteration, (b) transformation, [or] (c) substitution"); <u>Update</u>, Britannica.com Dictionary, https://www.britannica.com/dictionary/update (last visited July 22, 2024) ("update" means "to change (something) by including the most recent information [as in] I need to update my address book").**[4]** Just as we have recognized that a "change" can be clarifying, so too can an update be clarifying. Therefore, I strongly disagree with the majority opinion's suggestion that the title to Section 102 of the amendment suggests a "forward-looking change." Op. at 42.

### 3. The ATRA Took Immediate Effect

Finally, as noted above, the ATRA took immediate effect when the President signed it in January 2023. There was no notation that the ATRA would take effect on a later date, so the general rule that acts take effect immediately once enacted applies. <u>See</u> <u>Gozlon-Peretz v. United States</u>, 498 U.S. 395, 404 (1991) ("It is well established that, absent a clear direction by Congress to the contrary, a law takes effect

---

[3] The majority opinion dismisses my reliance on <u>Donaghe</u> because it was a sentencing guidelines case. Op. at 40 n.13. But <u>ABCKO Music</u>, a copyright case, adopted the formulation of the test from <u>Donaghe</u>.

[4] As another practical example, I may "update" my address book with numerous entries that have languished on my desk for months; they may be new to the address book, but they are not "forward-looking." In other words, the "update" can simply confirm or compile information already possessed.

on the date of its enactment."). Despite the amendment's silence on the issue of retroactivity, there was <u>no delay</u> between the ATRA's enactment and its "effective date," as was the circumstance in <u>Beaver</u>. <u>See</u> <u>Beaver</u>, 816 F.3d at 1187 (noting 180-day lapse between enactment and effective date).

In sum, considering the time and circumstances of the ATRA's enactment, Congress clearly enacted the amendment in response to, and to correct our understanding of, the TVPRA. That clarifying intent gives the ATRA retroactive effect. <u>ABKCO Music</u>, 217 F.3d at 689–90. Accordingly, I would reverse and remand for further proceedings.[5] I therefore respectfully dissent.

---

[5] The district court held, in the alternative, that Plaintiffs' claims failed on the merits. I would reverse those holdings, too. The district court failed to view all facts and inferences in favor of the non-moving party. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor."). Viewing the facts in the light most favorable to Plaintiffs, a reasonable jury could conclude that: (1) Rubicon participated in a venture and benefitted from human trafficking, and (2) Rubicon knew or should have known of the human trafficking and forced labor.