No. 23-55299

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KEO RATHA, ET AL.,

*Plaintiffs-Appellants*,

v.

RUBICON RESOURCES, LLC,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Central
District of California, Case No. 2:16-cv-04271-JFW

## BRIEF OF THE HUMAN TRAFFICKING LEGAL CENTER AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS

Margaret Lee
Human Trafficking Legal Center
1030 15th St. NW #104B
Washington, D.C. 20005
(202) 849-5708
mlee@htlegalcenter.org

John Burton
   *Counsel of Record*
JOHN BURTON LAW
The Marine Building
128 North Fair Oaks Avenue
Pasadena, California 91103
(626) 449-8300
jb@johnburtonlaw.com

*Attorneys for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule Appellate Procedure 26.1, the Human Trafficking Legal Center ("HTLC") is a not-for-profit organization. It has no parent corporation, does not issue stock, and no publicly held corporation owns any portion of HTLC.

# TABLE OF CONTENTS

**Page**

INTEREST OF AMICUS ........................................................................ 1

CERTIFICATE OF AUTHORSHIP ..................................................... 3

ARGUMENT ......................................................................................... 4

    I.    The Ninth Circuit's Decision in *Ratha I* Was Contrary to Congress's Clear Intent and Created Ambiguity in the Law .................................. 5

    II.    In Rejecting Congress's Attempt to Correct this Court's Error, the Ninth Circuit Has Created an Ambiguity That Will Have A Significant Impact on Survivors Seeking Justice .............................. 11

CONCLUSION .................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bates v. Sequel Youth & Fam. Servs., LLC*,
  No. 23-CV-01063 (RDP), 2024 WL 3316989 (N.D. Ala. July 5, 2024)………9

*Doe v. Hotels*,
  No. 23-CV-1012 (JSS), 2024 WL 2955728 (M.D. Fla. June 12, 2024)……...11

*Kyocera Corp. v. Prudential-Bache T Servs.*,
  341 F.3d 987 (9th Cir. 2003)……………………………………............16

*Mitchell v. Grand Hotel, Inc.*,
  No. 23-CV-605 (WMC), 2024 WL 3378035 (W.D. Wis. July 11, 2024)……10

*Paguirigan v. Prompt Nursing Employment Agency LLC*,
  286 F. Supp. 3d 430 (E.D.N.Y. 2017) …………………………………...8

*Ratha v. Phatthana Seafood Co.*,
  35 F.4th 1159 (9th Cir. 2022)……………………………………*passim*

*Ratha v. Rubicon Res., LLC*,
  111 F.4th 946 (9th Cir. 2024)...……………………………………*passim*

*Ricchio v. McLean*,
  853 F.3d 553 (1st Cir. 2017)……………………………….......6, 7, 8

*Richardson v. Nw. Univ.*,
  No. 21-CV-00522 (EEC), 2023 WL 6197447 (N.D. Ill. Sept. 21, 2023)…….10

*Roe v. Howard*,
  917 F.3d 229 (4th Cir. 2019)……………………………..…6, 7, 8

*Saraswat v. Selva Jayaraman, Bus. Integra, Inc.*,
  No. 15-CV-4680 (PKC), 2016 WL 5408115 (E.D.N.Y Sept. 28, 2016)………9

*S.C. v. Wyndham Hotels & Resorts, Inc.*,
  No. 23-CV-00871 (JSG), 2024 WL 1429114 (N.D. Ohio Apr. 2, 2024)…….10

*United States v. Cooley*,
947 F.3d 1215 (9th Cir. 2020)……………………………………….........16

**Statutes**

18 U.S.C. § 1589………………………………………………………………..7– 9

18 U.S.C. § 1590………………………………………………………….......8–9

18 U.S.C. § 1591………………………………………………………………...8–9

18 U.S.C. § 1594………………………………………………………………......9

18 U.S.C. § 1595…………………………………………………………….*passim*

Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117-347,
136 Stat. 6199 (2023)……………………………………...…….…….…1, 4

Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No.
108-193, 117 Stat. 2875 (2003) ...………………………………………..8, 9

**Legislative Authorities**

168 Cong. Rec. S9610 (daily ed. Dec. 20, 2022)…………………………………15

**Other Authorities**

Brief of Members of Congress Senator Blumenthal, *et al.*, as
*Amici Curiae* Supporting Respondents, *Nestle USA, Inc. v. Doe I*,
Nos. 19-416, 19-453, 2020 WL 6322316 (Oct. 21, 2020)………………...5, 12

Brief for Senator Robert Menendez, *et al.* as *Amici Curiae* in Support of
Plaintiffs-Appellees and Affirmance, *Rodriguez v. Pan American
Health Org.*, No. 20-7114, Dkt. No. 1908938 (D.C. Cir., Aug. 3, 2021)…… 6

Brief of Members of Congress Representative Nadler, *et al*., as *Amici Curiae* in
   Support of Plaintiffs-Appellants, *Ratha v. Rubicon Res., LLC,*
   No. 23-55299, Dkt. No. 16 (9th Cir. Aug. 21, 2023)…………………...…5, 12

International Labour Organization, *Global Estimates of Modern Slavery:*
   *Forced Labour and Forced Marriage* (2022)………………....…………..11

U.S. Department of State, *Trafficking in Persons Report* (2024)…….....………...11

## INTEREST OF AMICUS[1]

In the two decades since first passing the Trafficking Victims Protection Act of 2000,[2] Congress has created a comprehensive and expansive statutory scheme to combat human trafficking. Through successive reauthorizations, Congress enacted a strong civil remedy that is coextensive with the criminal liability provisions, ensuring that survivors of human trafficking have meaningful access to justice. After this Court sought to limit the scope of the civil remedy in *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159 (9th Cir. 2022) ("*Ratha I*"), modifying 26 F.4th 1029 (9th Cir. 2022), Congress immediately acted to correct this error in the Abolish Trafficking Reauthorization Act of 2022 ("ATRA"). Despite Congress's clear intent and quick action, the majority opinion in *Ratha v. Rubicon Res., LLC*, 111 F.4th 946 (9th Cir. 2024) ("*Ratha II*"), found that ATRA did not apply retroactively. By increasing the ambiguity already created by *Ratha I*, the majority opinion could have a significant impact on survivors of human trafficking.

The Human Trafficking Legal Center ("HTLC") is a non-profit organization that seeks justice for trafficking survivors and accountability for traffickers. The organization provides a bridge between skilled pro bono attorneys and survivors,

---

[1] Counsel for appellants and appellees have consented to the filing of this *amicus* brief.

[2] *Amicus* hereinafter refer to the Trafficking Victims Protection Act of 2000 along with its subsequent reauthorizations and amendments as the "TVPRA."

having trained more than 5,000 pro bono attorneys to handle civil, criminal, and immigration cases involving human trafficking. The Center conducts data-driven research and analysis both of civil trafficking cases and the enforcement of mandatory restitution provisions in federal criminal trafficking cases. The Center also maintains a database of federal cases brought under the civil remedy of the TVPRA. The database contains more than 70 pending cases involving allegations of attempt liability that could be affected by the *Ratha* decisions.

Because the majority opinion in *Ratha II* creates and applies a heightened standard for Congress and will have an impact on a significant number of cases, *Amicus* submit this brief in support of the petition for rehearing *en banc* as the question presented is one of exceptional importance.

## CERTIFICATE OF AUTHORSHIP

Under Federal Rule of Appellate Procedure 29(a)(4)(E), *Amicus* certify that no counsel for a party authored this brief in whole or in part, and no party or counsel for a party contributed money intended to fund the preparation or submission of this brief. No one other than *Amicus* or their counsel contributed money intended to fund the preparation or submission of this brief.

**ARGUMENT**

In 2022, this Court became the first to hold that civil liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA") does not extend to those who attempt to benefit from participating in a venture involving forced labor. *Ratha I*, 35 F.4th at 1176. This decision was in direct conflict with the decisions of the First and Fourth Circuits and those of many other federal courts that correctly found that the TVPRA's civil remedy is coextensive with its criminal liability provisions. Recognizing that *Ratha I* was an outlier that misinterpreted the statute, Congress acted swiftly and unanimously to pass a technical and clarifying amendment to the TVPRA as part of the Abolish Trafficking Reauthorization Act of 2022 ("ATRA"). *See* 18 U.S.C. § 1595 ("An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) . . . ."). On January 5, 2023, President Biden signed ATRA into law. Pub. L. No. 117-347, 136 Stat. 6199 (2023).

By quickly clarifying the Court's misinterpretation of the TVPRA in *Ratha I*, Congress sought to eliminate any unnecessary confusion and ambiguity in the law and preserve the full scope of the civil remedy for survivors seeking justice.

The majority opinion in *Ratha v. Rubicon Res., LLC*, 111 F.4th 946 (9th Cir. 2024) ("*Ratha II*"), undermines Congress's efforts by refusing to apply ATRA in the way Congress intended. *Id.* at 951. In reaching this conclusion, the majority opinion ignores the ambiguity that *Ratha I* created and the potential impact of its decision on the many cases that are currently pending and those yet to be filed. The majority opinion was based, in part, on a heightened and never before applied standard of assessing Congressional intent and could obstruct survivors' ability to seek justice through the civil remedy. Because the majority opinion could have a widespread impact on trafficking survivors, the petition raises a question of exceptional importance and rehearing *en banc* should be granted.

## I.   The Ninth Circuit's Decision in *Ratha I* Was Contrary to Congress's Clear Intent and Created Ambiguity in the Law

Congress's intention has always been that the civil remedy under the TVPRA be coextensive with the criminal liability provisions. *See* Brief of Members of Congress Senator Blumenthal, *et al.*, as *Amici Curiae* Supporting Respondents, *Nestle USA, Inc. v. Doe,* Nos. 19-416, 19-453, 2020 WL 6322316 (Oct. 21, 2020) (hereinafter, "*Nestle* Members Br.") ("§ 1595 establishes civil liability coterminous with the TVPRA's criminal provisions."); Brief of Members of Congress Representative Nadler, *et al*., as *Amici Curiae* in Support of Plaintiffs-Appellants, *Ratha v. Rubicon Res., LLC,* No. 23-55299, Dkt. No. 16, at 9–10 (9th Cir. Aug. 21, 2023) (hereinafter, "*Ratha* Members Br.") ("Congress's intention has

always been that the civil remedy provision under the TVPRA be coextensive with the criminal liability provisions."); *see also* Brief for Senator Robert Menendez, *et al.*, as *Amici Curiae* in Support of Plaintiffs-Appellees and Affirmance, *Rodriguez v. Pan American Health Org.*, No. 20-7114, Dkt. No. 1908938, at 4 (D.C. Cir. Aug. 3, 2021) ("The TVPRA also provides victims of human trafficking and forced labor a private civil cause of action coextensive with its criminal provisions.").

Prior to this Court's decision in *Ratha I*, every circuit to address the issue interpreted the TVPRA as Congress intended, finding that the civil remedy is coextensive with the criminal liability provisions. *See Roe v. Howard*, 917 F.3d 229, 243 (4th Cir. 2019) ("[T]he text of § 1595 shows that it applies coextensively with its predicate offenses, omitting any qualifying or modifying language . . . ."); *Ricchio v. McLean,* 853 F.3d 553, 557–58 (1st Cir. 2017) (finding that the complaint properly pled claims for both attempting and conspiring to benefit from participation in a venture involving forced labor). Nevertheless, in *Ratha I*, the Ninth Circuit acted contrary to the plain language of the statute and Congress's intent, finding that the civil remedy is not coextensive with the criminal provisions and reading a significant limitation into the scope of attempt liability. 35 F.4th at 1176.

The decision in *Ratha I* "generat[ed] a circuit split." *Ratha II*, 111 F.4th at 970 (Graber, J., dissenting), and Congress acted immediately to correct that ambiguity, *id.* ("As soon as the Supreme Court declined to grant certiorari in *Ratha I*, Congress acted immediately—within two weeks—to resolve the ambiguity and to correct our error."). However, even after Congress's quick action, *Ratha II*—in a split decision—rejected Congress's attempts to clarify the statute and refused to apply ATRA retroactively. *Ratha II*, 111 F.4th at 968. In so doing, the majority exacerbated the ambiguity and confusion created by *Ratha I*. As the dissent in *Ratha II* clearly sets forth, the majority opinion is premised on a "series of key errors," including but not limited to, failing to "give effect to the intended parallel between the civil and criminal provisions" and "misconstru[ing] the cases from other circuits demonstrating that Congress stepped in to resolve the ambiguity." *Ratha II*, 111 F.4th at 970 (Graber, J, dissenting).

At the outset, there can be no real dispute that *Ratha I* departed from *Ricchio* and *Roe*, both of which interpreted the civil remedy to be coextensive with the criminal liability provisions. *See Roe*, 917 F.3d at 243; *Ricchio,* 853 F.3d at 557–58. The majority opinion attempts to paper over this clear ambiguity by manufacturing a distinction between cases involving an attempted violation of § 1589 and an attempt to benefit under § 1595. *Ratha II*, 111 F.4th at 966. This distinction is an artificial construct. Section 1589(b) specifically provides,

"[w]hoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a) . . . shall be punished." If a court is finding that an attempt to violate § 1589(b) is viable then, in fact, it is finding that an attempt to benefit from participation in a venture involving forced labor is viable. *See Ratha II*, 111 F.4th at 972 (Graber, J., dissenting) ("The majority opinion engages in an extensive analysis aimed at distinguishing an 'attempt to benefit' from an 'attempt to violate,' by characterizing a party who engages in the former as a mere beneficiary and one who engages in the latter as a 'perpetrator.' . . . But applying the opinion's own definition of a 'perpetrator,' which the opinion agrees 'includes a person who 'attempts to violate' §§ 1589, 1590 and 1591,' . . . the plain statutory text of § 1589(b) requires that we deem persons who knowingly benefit from TVPRA violations to be 'perpetrators' themselves. Knowingly benefiting from a TVPRA violation is, in and of itself, a violation of the TVPRA.") (citations omitted).

Thus, each case that the majority seeks to distinguish, *see Ratha II*, 111 F.4th at 964–66, is in fact further evidence that *Ratha I* is an outlier – an outlier that Congress sought to correct. *See Roe*, 917 F.3d at 243 ("[T]he text of § 1595 shows that it applies coextensively with its predicate offenses, omitting any qualifying or modifying language"); *Ricchio v. McLean*, 853 F.3d at 556–57

(finding that the complaint properly pled claims for attempting to benefit from participation in a venture involving forced labor under §§ 1594(a) and 1595(a)); *Paguirigan v. Prompt Nursing Employment Agency LLC*, 286 F. Supp. 3d 430, 439–40 (E.D.N.Y. 2017) ("[T]he TVPA extends liability to whoever attempts or conspires with another to violate, *inter alia*, §§ 1589 and 1590. . . . Because I find that plaintiff has stated a claim under §§ 1589 and 1590, I also find that plaintiff has stated a claim for the attempted violation of those provision"); *Saraswat v. Selva Jayaraman, Bus. Integra, Inc.*, No. 15-CV-4680 (PKC), 2016 WL 5408115, at *2 (E.D.N.Y Sept. 28, 2016) ("The TVPA extends liability to '[w]hoever *attempts* to violate" Section 1589, *id.* § 1594(a) (emphasis added), and …permits victims to 'bring a civil action against' the violators and to 'recover damages and reasonable attorneys fees[.]'") (emphasis in original); *see also Bates v. Sequel Youth & Fam. Servs., LLC*, No. 23-CV-01063 (RDP), 2024 WL 3316989, at *11–12 (N.D. Ala. July 5, 2024) (denying the defendants' motion to dismiss the plaintiff's claim that alleged that defendants had conspired to participate in a venture involving forced labor).[3] These cases, which are consistent with Congress's intent but in conflict with *Ratha I*, underscore Congress's motive in passing ATRA in the hopes of eliminating any legal ambiguity.

---

[3] 18 U.S.C. § 1594 provides liability against whoever attempts or conspires to violate, *inter alia*, §§ 1589, 1590, and 1591. Thus, in reading a limitation into attempt liability, *Ratha I* and *Ratha II* also conflict with cases involving allegations of conspiracy to participate in a venture involving forced labor.

Notably, unlike *Ratha II*, other courts have correctly assumed that ATRA was, as titled, a technical and clarifying update and thus viewed the clarifying language as part of the statute as amended in 2008. *See Mitchell v. Grand Hotel, Inc.*, No. 23-CV-605 (WMC), 2024 WL 3378035, at *2 (W.D. Wis. July 11, 2024) ("In particular, a 2008 amendment to the TVPRA allows victims of sex and labor trafficking to bring claims against "whoever knowingly benefits, *or attempts or conspires to benefit*, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter.") (emphasis added); *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 23-CV-00871 (JSG), 2024 WL 1429114, at *3 (N.D. Ohio Apr. 2, 2024) ("The Trafficking Victims Act allows sex trafficking victims to bring civil suits against 'whoever knowingly benefits, *or attempts or conspires to benefit*, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [anti-trafficking and anti-slavery laws].'") (emphasis added); *Richardson v. Nw. Univ.*, No. 21-CV-00522 (EEC), 2023 WL 6197447, at *7 (N.D. Ill. Sept. 21, 2023) ("In 2008, however, Congress expanded the scope of civil liability. . . . Section 1595 of the Act now provides a civil remedy against not only the direct perpetrator, but also 'whoever knowingly benefits, *or attempts or conspires to benefit*, financially or by receiving anything of

value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter.'") (citation omitted) (emphasis added); *see also Doe v. Hotels*, No. 23-CV-1012 (JSS), 2024 WL 2955728, at *6 (M.D. Fla. June 12, 2024) ("Section 1595(a) provides a cause of action to any victim of the TVPRA against the perpetrator 'or whoever knowingly benefits, or *attempts or conspires to benefit*, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter.'") (emphasis added).

## II. In Rejecting Congress's Attempt to Correct this Court's Error, the Ninth Circuit Has Created an Ambiguity That Will Have a Significant Impact on Survivors Seeking Justice

Human trafficking is a widespread problem with an immense scope. The International Labour Organization estimates that in 2021, 27.5 million people were trapped in forced labor. International Labour Organization, *Global Estimates of Modern Slavery: Forced Labour and Forced Marriage,* at 17 (2022), available electronically at  https://www.ilo.org/publications/major-publications/global-estimates-modern-slavery-forced-labour-and-forced-marriage (last accessed Sept. 18, 2024). Despite the pervasive nature of forced labor, criminal prosecutions are rare. In fact, in FY 2023, the federal government reported initiating only 12 federal forced labor prosecutions in the entire country. U.S. Dep't of State, *Trafficking in Persons Report* (2024), available electronically at

https://www.state.gov/reports/2024-trafficking-in-persons-report/united-states/ (last accessed Sept. 18, 2024). As a result, the civil remedy is often trafficking survivors' only tool to hold perpetrators accountable and the only means to ensure that there is some financial risk to companies that seek to benefit from the exploitation and abuse of workers.

It is against this backdrop that Congress has consistently sought to expand the scope of the civil remedy, recognizing the breadth of the problem and the importance of providing survivors with real access to justice. *See Nestle* Members Br. 24–25; *Ratha* Members Br. 6–9. Therefore, it was not a surprise when Congress acted swiftly to correct the Ninth Circuit's error in *Ratha I*, as it was a clear misinterpretation of the TVPRA as intended by Congress. *Ratha* Members Br. 10–11 ("Given the intention to establish broad civil liability for forced labor victims that is coextensive with criminal liability under the TVPRA—a fact recognized by all other circuit courts that previously addressed this issue— members of Congress were surprised and disappointed by this Court's holding. The Court's holding in *Ratha* was particularly troubling to members of Congress because *Ratha* is precisely the type of case that Congress sought to reach with the 2008 amendments."). In rejecting Congress's attempt to correct *Ratha I*'s error, the majority opinion not only denies the plaintiffs in this case access to the civil

remedy as Congress intended, but also creates confusion that could harm many other survivors of human trafficking.

*Ratha I* and *Ratha II* could have a significant and lasting impact on survivors seeking justice. The Human Trafficking Legal Center maintains a database of federal civil cases that include claims brought under the TVPRA's civil remedy, 18 U.S.C. § 1595. A review of the pending cases makes clear the potential impact of the *Ratha* decisions. As of the date of this filing, the Human Trafficking Legal Center's database included more than 450 cases that are currently ongoing. Of those cases, more than 70 (not including *Ratha*) contain claims relying in part on attempt liability. Those cases have been filed in Alabama, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Indiana, Louisiana, Michigan, New Jersey, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Tennessee, Texas, Utah, Virginia and Wisconsin. Of the more than 70 cases pleading attempt liability, 24 cases specifically involve allegations of attempt to benefit liability. Trafficking survivors with cases filed in California and Oregon will clearly be forced to confront the unprecedented decisions in *Ratha I* and *Ratha II*. Trafficking survivors bringing cases in other states, though not bound by these decisions, will still be forced to litigate the issues and the confusion and ambiguity this Court created.

Adding to the confusion created by both *Ratha I* and *Ratha II* is the narrow interpretation of benefitting that was applied in *Ratha I*. The Court in dismissing the plaintiffs' claims against Rubicon, applied an incredibly narrow definition of benefit. It then compounded the error by limiting the scope of attempt liability under the civil remedy. In *Ratha I*, the Court claimed that there was insufficient evidence that Rubicon received a benefit from its participation in the venture. *Ratha I*, 35 F.4th at 1176. Specifically, the Court rejected the plaintiffs' evidence that Rubicon benefited from marketing the shrimp that it procured and the competitive pricing advantage it obtained due to the reduced costs of the shrimp allegedly processed with forced labor. *Id.* Thus, despite the fact that Rubicon actually possessed two tons of shrimp and actively put these products up for sale in the United States, the Court found no actual benefit. As alleged, the majority owner of Phatthana Seafood, the factory where the plaintiffs allege that they were subjected to forced labor, was part of a group of Thai seafood producers who created Rubicon to expand seafood sales into the United States. Rubicon was, therefore, specifically intended as a vehicle to sell shrimp manufactured at a discount with forced labor into the U.S. markets for significant profits. Rubicon and Phatthana Seafood were in a venture intending to profit financially from the sale of shrimp made with forced labor. Rubicon actually received the shrimp. It delivered that very shrimp to the United States for sale. But because Walmart

decided not to go through with the purchase, *Ratha I* found that Rubicon had only "attempted" to benefit with the effect that Rubicon now escapes wholesale from any accountability.

The combination of this extremely narrow interpretation of benefit, coupled with the limited scope of attempt liability in *Ratha I*, and exacerbated by the refusal to apply Congress's clarifying language in *Ratha II* creates legal ambiguity and confusion. Plaintiffs in the more than 70 pending cases filed in 22 different states (and the District of Columbia) will face fundamentally different legal standards depending on where their suits are filed. This confusion will undermine the expansive civil remedy that Congress has worked decades to implement, and it is precisely what Congress sought to avoid. Less than seven months after this Court issued its amended *Ratha I* decision and just 15 days after the Supreme Court denied *cert*, Congress introduced the "Technical and Clarifying Update" to S.3946, *see* 168 Cong. Rec. S9610 (daily ed. Dec. 20, 2022). Congress acted under its authority to correct the Court's misinterpretation of the statute and to provide clarity to survivors of human trafficking. In refusing to abide by Congress's intent, *Ratha II* has created confusion that undermines the civil remedy and obstructs survivors' path to justice.

## CONCLUSION

Because the *Ratha* decisions created a circuit split and legal ambiguity that could affect many survivors with pending cases or soon to be filed cases, this case raises a question of exceptional importance and the petition for rehearing *en banc* should be granted. *See Kyocera Corp. v. Prudential-Bache T Servs.*, 341 F.3d 987, 996 (9th Cir. 2003) (finding *en banc* rehearing would be appropriate where "the answer to which may well affect large numbers of parties with critical contractual and statutory rights and billions of dollars at stake"); *c.f.*, *United States v. Cooley*, 947 F.3d 1215, 1216 (9th Cir. 2020) (denying rehearing *en banc* because "[t]here is no conflict among the circuits regarding the question presented here, the opinion is not in conflict with a Supreme Court decision, and the practical implications are limited.") (Berzon and Hurwitz, JJ., concurring in the denial of rehearing *en banc*).

Respectfully submitted,

/s/_____
John Burton
  *Counsel of Record*
JOHN BURTON LAW
The Marine Building
128 North Fair Oaks Avenue
Pasadena, California 91103
(626) 449-8300
jb@johnburtonlaw.com

Margaret Lee
The Human Trafficking Legal Center
1030 15th St. NW #104B
Washington, D.C. 20005
(202) 849-5708
mlee@htlegalcenter.org

*Attorneys for Amicus*

Dated: September 20, 2024

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____23-55299_____

      I am the attorney or self-represented party.

      **This brief contains** _____**3,553**_____ **words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

      I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[x] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** */s/John Burton*        **Date:** 9/20/2024

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Respectfully submitted,

*/s/ John Burton*
JOHN BURTON LAW