No. 23-55299

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KEO RATHA, ET AL.,

*Plaintiffs-Appellants*,

v.

RUBICON RESOURCES, LLC

*Defendants-Appellee*.

On Appeal from the District Court for the Central
District of California, Case No. 2:16-cv-04271-JFW

## BRIEF OF MEMBERS OF CONGRESS REPRESENTATIVE NADLER, ET AL., AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS

Tyler R. Giannini
Human Rights Entrepreneurs Clinic
Harvard Law School
23 Everett Street, Suite 303
Cambridge, MA 02138
(617) 496-7368
giannini@law.harvard.edu

Aaron Halegua
*Counsel of Record*
AARON HALEGUA, PLLC
524 Broadway, 11th Floor
New York, NY 10012
(646) 854-9061
ah@aaronhalegua.com

*Attorneys for Amici Curiae*

# TABLE OF CONTENTS

INTEREST OF *AMICI*.................................................................................1

CERTIFICATE OF AUTHORSHIP ......................................................3

ARGUMENT ............................................................................................4

I.  Congress Fulfilled its Constitutional Responsibilities to Pass and Clarify
    Legislation. ...................................................................................................6

    A.  The Well-Established Clarification Doctrine Upholds Constitutional
    Separation of Powers and Permits Clarification of Ambiguous
    Legislation. ................................................................................................7

        1.  Congress May Correct Ambiguity or Judicial Errors Arising From or
        Creating Such Ambiguity. ..................................................................8

        2.  Congress May Wait Until the End of the Appellate Process Where
        the Judiciary Misinterpreted a Statute Before Acting. ......................8

        3.  Congress Employs Technical Language to Signal Clarification.........8

    B.  Here, Congress Followed this Well-Established Clarification Doctrine,
    yet the Court Found the ATRA to be Substantive, Raising Concerns for
    All Statutory Clarifications. ......................................................................9

II.  Congress Passed the ATRA as Clarifying Legislation, and the Court's
    Misinterpretation Undermines Congressional Intent to Preserve the TVPRA's
    Comprehensive Framework. ........................................................................10

    A.  Congress Enacted the TVPRA to Create a Comprehensive Legal
    Framework to Address Forced Labor and Human Trafficking................11

    B.  Congress Passed the ATRA to Correct an Erroneous Interpretation of the
    TVPRA and to Affirm the Statute's Comprehensive and Coextensive
    Framework................................................................................................12

CONCLUSION ......................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Beverly Cmty. Hosp. Ass'n v. Belshe*,
    132 F.3d 1259 (9th Cir. 1997)……………………………………...…… 8

*Brown v. Thompson*,
    374 F.3d 253 (4th Cir. 2004)……………………………….…..……...9

*McCoy v. Chase Manhattan Bank, USA*,
    654 F.3d 971 (9th Cir. 2011)…………………………………...…………7

*Ratha v. Phatthana Seafood Co.*,
    35 F.4th 1159 (9th Cir. 2022)……………………………………..2, 4

*Ratha v. Rubicon Res., LLC*,
    111 F.4th 946 (9th Cir. 2024)………………………………….……5, 9

**Statues**

18 U.S.C. § 1595………………………………………………….…5, 12

22 U.S.C. § 7101…………………………………….…..……………………11

Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117-347,
    136 Stat. 6199 (2023)…………….………………………...……1, 2, 4, 14

Victims of Trafficking and Violence Protection Act of 2000, Div. A.,
    Pub. L. No. 106-386, 114 Stat 1464 (2000)…………….…………..…1, 4, 11

William Wilberforce Trafficking Victims Protection Reauthorization
    Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044……………………1, 4, 12

**Other Authorities**

Brief of Members of Congress Representative Nadler, et al.,
    as *Amici Curiae* in Support of Plaintiff-Appellants, *Ratha v.
    Rubicon Res., LLC*, 111 F.4th 946 (9th Cir. 2024), ECF No. 16…..10, 12, 13

Brief of Members of Congress Senator Blumenthal, et al.,
　　as *Amici Curiae* Supporting Respondents, 2020 WL 6322316,
　　*Nestlé USA, Inc. v. Doe*, 593 U.S. 628 (2021)………………….....…10, 12

# INTEREST OF *AMICI*[1]

This brief is filed on behalf of the following Members of Congress as *Amici Curiae*:

Congressman Jerrold Nadler is the Ranking Member of the House Judiciary Committee and shepherded the passage of the Abolish Trafficking Reauthorization Act of 2022 (ATRA).

Congresswoman Jan Schakowsky is the Founder and Chair of the International Workers Rights Caucus, and a Member of the House Energy and Commerce Committee and the House Budget Committee.

Congressman James P. McGovern is the Ranking Member of the House Committee on Rules, the Co-Chair of the Tom Lantos Human Rights Commission, and a Member of the International Workers Rights Caucus.

Congressman Mark Pocan is the Co-Founder and Co-Chair of the Labor Caucus, Chair of the Congressional Equality Caucus, and a Member of the House Committee on Appropriations.

Combatting forced labor and human trafficking has been a bipartisan priority of the United States Congress for decades. Beginning with the Victims of Trafficking and Violence Protection Act of 2000 and continuing through the Act's

---

[1] Counsel for appellants and appellees have consented to the filing of this *amicus* brief.

subsequent reauthorizations, including the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Congress has demonstrated its intent to create a comprehensive legal framework to provide victims of these acts with access to remedy. As Members of Congress, *Amici* have an interest in seeing this comprehensive legal framework carried out. Following the misinterpretation of the TVPRA's civil liability provision in *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159 (9th Cir. 2022) ("*Ratha I*"), *Amici* and other Members of Congress acted immediately to clarify the statute by passing the Abolish Trafficking Reauthorization Act of 2022 ("ATRA"). Congress adhered to well-established principles of clarifying legislation when passing the ATRA, which was adopted without opposition. Congress acted in direct response to the erroneous decision in *Ratha I* and purposefully used clear language in the statute to indicate its clarifying and technical nature.

 *Amici* respectfully submit this brief to assist the Court in its interpretation of the TVPRA and the ATRA, and to request that an en banc panel of this Court review the important issues in this case. As Members of Congress, *Amici* have an interest in such a review both to make sure our comprehensive legislative scheme to combat human trafficking and forced labor is upheld as well as to ensure that the separation of powers implicated by the clarification doctrine are preserved.

# CERTIFICATE OF AUTHORSHIP

Under Federal Rule of Appellate Procedure 29(a)(4)(E), *Amici* certify that no counsel for a party authored this brief in whole or in part; no party or counsel for a party contributed money intended to fund the preparation or submission of this brief; and no one other than *Amici*, their members, or their counsel contributed money intended to fund the preparation or submission of this brief.

# ARGUMENT

For more than twenty years, Congress has clearly demonstrated its intent to establish a comprehensive statutory framework to combat forced labor and human trafficking via its successive reauthorizations of the Victims of Trafficking and Violence Protection Act of 2000. In *Ratha I*, this Court interpreted the framework in the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA")[2] to extend civil liability only to parties who actually benefit from forced labor, not those who attempt to benefit. *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1176 (9th Cir. 2022) ("*Ratha I*"). This interpretation read into the statute an ambiguity unintended by Congress, who had emphasized the TVPRA's comprehensive framework via its text, context, and legislative history.

Acutely concerned by the implications of such a ruling, Congress, including *Amici*, acted swiftly to correct this case of first error. Only two weeks after the Supreme Court denied *certiorari* in *Ratha I* and without a single vote in opposition, Congress passed the Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117-347,136 Stat. 6199 (2023) ("ATRA") to affirm that attempting to benefit from forced labor does in fact subject defendants to civil liability under the

---

[2] To avoid confusion, *Amici* hereinafter collectively refer to the Victims of Trafficking and Violence Protection Act of 2000, along with its subsequent reauthorizations and amendments, as the "TVPRA."

existing TVPRA statutory framework.[3] In passing the ATRA, *Amici* and other Members of Congress adhered to well-established principles of legislative clarification, referred to hereinafter as the "clarification doctrine." We waited until the appeals process had run its course to respect the judiciary's role in legislative interpretation, passed the ATRA within weeks of this close of appeals, and intentionally titled the amendment a "Technical and Clarifying Update to Civil Remedy" to underscore the clarifying nature of the legislation.

Despite Congress's commitment to the clarification doctrine, a divided Ninth Circuit panel found that the ATRA constituted a "forward-looking amendment," declining to retroactively apply civil liability to parties who attempted to benefit from forced labor under the TVPRA. *Ratha v. Rubicon Res., LLC*, 111 F.4th 946, 967 (9th Cir. 2024) ("*Ratha II*"). Congress understands that clarifying statutes are to be applied retroactively so that Congress's original intent is fulfilled. Here, the passage of the ATRA was meant to eliminate the newly found ambiguity identified in *Ratha I* and to clarify the text of the TVPRA to represent the original comprehensive meaning of the statute.

---

[3] *See* 18 U.S.C. § 1595 ("An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, *or attempts or conspires to benefit*, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) . . . .") (emphasis added).

*Amici* are concerned that the Court, in discounting the clear congressional intent expressed in the ATRA, implicates serious questions about the separation of powers and erodes the foundation upon which Congress legislates. We are also concerned that the decision in this case could jeopardize the comprehensive TVPRA statutory framework and threaten meritorious forced labor and human trafficking cases in our states and elsewhere, limiting access to justice for victims and disadvantaging law-abiding businesses. In light of these wide-reaching implications, we respectfully ask the Court to consider these issues en banc.

## I.      Congress Fulfilled its Constitutional Responsibilities to Pass and Clarify Legislation.

Congress relies upon the clarification doctrine to make clarifying and technical corrections to existing statutes. These corrections do not change the substantive content of the statute but rather merely clarify and reiterate the statute's existing meaning. This ability to resolve statutory ambiguity is not merely a formality; the clarification doctrine establishes a stable foundation upon which Congress can legislate and upon which the public can rely. As Members of Congress, *Amici* have serious concerns that the most recent *Ratha II* decision as it stands will undermine future technical and clarifying legislation and have ramifications far beyond the statute at issue in this litigation.

A. The Well-Established Clarification Doctrine Upholds Constitutional Separation of Powers and Permits Clarification of Ambiguous Legislation.

In the event of legislative ambiguities or misinterpretations, Congress has developed a practice to determine how and when it clarifies the meaning of statutes. This clarification doctrine protects the separation of powers between Congress and the judiciary by allowing Congress to clarify the intended meaning of statutes if court decisions reveal statutory ambiguity. In keeping with that doctrine, the courts look to how and when Congress has modified the text of a statute to determine whether the modification is substantive or merely clarifying. Indicia of a clarifying amendment include the amendment's responsiveness to an ambiguity or a misinterpretation of the statute, the timing of the amendment, and Congress's use of particular language in the amendment. *See, e.g.*, *McCoy v. Chase Manhattan Bank, USA,* 654 F.3d 971, 974 (9th Cir. 2011) ("If the amendment was enacted soon after controversies arose about interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act . . . .") (internal citation and quotation marks omitted). The Court's decision in this case overlooks Congress's adherence to these elements of the clarification doctrine, leaving Congress with no guidebook on how to clarify existing legislation going forward and undermining its ability to pass effective and clear legislation.

1.     Congress May Correct Ambiguity or Judicial Errors Arising
       From or Creating Such Ambiguity.

In the event of ambiguity or controversy over a particular piece of

legislation, Congress may act to confirm the meaning of the law. *Beverly Cmty.*

*Hosp. Ass'n v. Belshe*, 132 F.3d 1259, 1265 (9th Cir. 1997). A circuit split

regarding Congress's intent or the meaning of a statute may indicate such

ambiguity. Additionally, if even a single decision misinterprets congressional

intent, Congress may feel the need to act and to clarify a statute to ensure that its

intent is clear in such cases of first error.

2.     Congress May Wait Until the End of the Appellate Process
       Where the Judiciary Misinterpreted a Statute Before Acting.

Though Congress has the power to clarify statutes at any time, it may wait

until the end of the appellate process in order to respect its sister branch's power to

interpret and apply the law in accordance with congressional intent. Additionally,

because it would place an unfeasible burden upon Members of Congress to keep

abreast of the high volume and frequency of statutory interpretation cases, we often

rely on the appellate system to course correct where misinterpretations arise in

lower courts.

3.     Congress Employs Technical Language to Signal Clarification.

When titling legislation, Members of Congress often employ specific words

to communicate our intent that the legislation should be treated as clarifying.

Federal courts have repeatedly recognized labels and titles with signal words like "technical" and "clarifying" as sufficient expression of Congress's intent to clarify rather than substantively amend the relevant statute. *See, e.g.*, *Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004) (finding statute's title to be most significant indication of clarification).

B.     Here, Congress Followed this Well-Established Clarification Doctrine, yet the Court Found the ATRA to be Substantive, Raising Concerns for All Statutory Clarifications.

Congress understands that clarifying statutes apply retroactively, as they are merely addressing ambiguity or errors in an existing statute rather than creating new substantive laws. In passing the ATRA to clarify the meaning of the TVPRA, *Amici* and other Members of Congress followed the established practices for passing clarifying legislation described above. Judge Graber's dissenting opinion highlighted these same clarifying practices, noting that the Ninth Circuit has deemed them relevant to its determinations of a statute's retroactivity. *See Ratha II*, 111 F.4th at 974 (Graber, J., dissenting). Mere weeks after the close of the appellate procedure, Congress directly corrected the ambiguity read into the statute by the Court in *Ratha I*. Moreover, *Amici* and other Members of Congress employed precise technical language to ensure that the ATRA would be interpreted as clarifying the TVPRA.

Despite Congress's adherence to the clarification doctrine in order to communicate its intent to the judicial branch, the panel in *Ratha II* held that the ATRA was not a clarifying amendment and thus does not apply retroactively. *Amici* are concerned that the panel's decision as it stands obfuscates how and when Congress is able to clarify legislation, implicating Congress's constitutional responsibility to legislate. The decision also introduces unpredictability into the legislative process, affecting future statutory clarifications. Accordingly, *Amici* request that the Court revisit this case en banc to solidify the principles of the clarification doctrine for this and future Congresses.

## II. Congress Passed the ATRA as Clarifying Legislation, and the Court's Misinterpretation Undermines Congressional Intent to Preserve the TVPRA's Comprehensive Framework.

Congress has repeatedly and consistently expressed its intent for the TVPRA to be a comprehensive statute to protect victims of forced labor and human trafficking. Most recently, six Members of Congress submitted a brief of *Amicus Curiae* to this Court reiterating this intent. *See* Brief of Members of Congress Representative Nadler, et al., as *Amici Curiae* in Support of Plaintiff-Appellants, *Ratha v. Rubicon Res., LLC*, 111 F.4th 946 (9th Cir. 2024), ECF No. 16 (hereinafter, "Congressional Brief"); *see also* Brief of Members of Congress Senator Blumenthal, et al., as *Amici Curiae* Supporting Respondents, 2020 WL 6322316, *Nestlé USA, Inc. v. Doe*, 593 U.S. 628 (2021) (hereinafter, "*Nestlé*

Members Brief"). While *Amici* will not restate the comprehensive accounting of the TVPRA's and the ATRA's legislative histories contained in the Congressional Brief and *Nestlé* Members Brief, we reiterate here Congress's clear intent for the TVPRA to be read as a comprehensive statute with coextensive criminal and civil provisions.

    A.    Congress Enacted the TVPRA to Create a Comprehensive Legal Framework to Address Forced Labor and Human Trafficking.

From the statute's original passage in 2000 and through each of its subsequent amendments, Congress has made abundantly clear that the purpose of the TVPRA is to provide a comprehensive legal framework to protect victims of forced labor and human trafficking.[4] Indeed, the preamble to the 2000 statute identified that "existing laws often fail to protect victims of trafficking" and that "[n]o comprehensive law exists in the United States that penalizes the range of offenses involved in the trafficking scheme." 22 U.S.C. § 7101(b)(14), (17). Seeking to fill this gap, Congress passed a series of statutes to create the comprehensive TVPRA statutory scheme. *See, e.g.*, Victims of Trafficking and Violence Protection Act of 2000, Div. A., Pub. L. No. 106-386, 114 Stat. 1464 (2000).

---

[4] *See* 22 U.S.C. § 7101(a) ("The purposes of this division are to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims.").

Of particular import here for establishing the statute's comprehensive framework, Congress enacted in 2003 and bolstered in 2008 a civil remedy provision under 18 U.S.C. § 1595 to provide and strengthen access to remedy for victims of violations of the statute's criminal provisions. *See* Congressional Brief at 6–9. The latter of these amendments, the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, amended the civil remedy provision to apply to "any violation of this chapter," responding to congressional concern that very few civil lawsuits had been filed. *See* Pub. L. No. 110-457, § 221, 122 Stat. 5044, 5067 (2008); *see also Nestlé* Members Brief at 25–26. In order to ensure maximum protections for victims of forced labor and human trafficking – as clearly indicated in the text of § 1595 and by Congress's stated intent – the civil and criminal provisions of the TVPRA were always meant to be coextensive. *See* Congressional Brief at 9; *see also Nestlé* Members Brief at 33.

B.   Congress Passed the ATRA to Correct an Erroneous Interpretation of the TVPRA and to Affirm the Statute's Comprehensive and Coextensive Framework.

In passing the ATRA, *Amici* and other Members of Congress acted explicitly to preserve the TVPRA's comprehensive framework, closely adhering to the principles of the clarification doctrine that have previously instructed courts as to Congress's clarificatory intent. Congress's ability to resolve statutory ambiguity as it did with enactment of the ATRA is not merely a formality. Nor does Congress

legislate in a vacuum. Rather, the clarification doctrine serves as a key tool for Congress to ensure that statutes have their intended effect. As described above and in previous communications to the Court, the criminal and civil provisions of the TVPRA were always intended to be read coextensively in order to protect victims and maximize access to remedy. *See, e.g.*, Congressional Brief at 9. Without this coextensive reading, *Amici* are keenly aware that meritorious cases against those who attempt or conspire to benefit from forced labor and human trafficking would be in jeopardy, both in the states we represent and in other jurisdictions.

*Ratha I* was a case of first error as it misinterpreted the civil liability provision of the TVPRA as being narrower than the criminal provisions. Congress reacted immediately. Two weeks after the Supreme Court denied *certiorari*, Congress enacted clarifying language for the TVPRA to make clear that those who attempt to benefit from forced labor or human trafficking are liable under both the criminal and civil provisions of the statute.[5] The clarifying statute was passed with no votes of objection from any Member of Congress. The speed and unanimity

---

[5] In recognition of the deference due to the separation of powers, had the Ninth Circuit or the Supreme Court seized the opportunity to correct the mistaken interpretation of the lower court and avoid a circuit split in this case, Congress would not have needed to act. When neither court opted to do so, Congress stepped in to preserve the comprehensive framework of the TVPRA. In light of the principles of separation of powers, *Amici* were surprised that the express intent of Congress in the ATRA was not afforded deference by the most recent Ninth Circuit majority opinion in *Ratha II*.

13

with which Congress passed the ATRA are demonstrative of the great weight that Congress places on its intent being respected in this case; over twenty years of bipartisan work to combat forced labor and human trafficking were reflected in the enactment of this clarifying statute.

Moreover, in titling the ATRA, Congress indicated its intention to only elucidate the TVPRA's original meaning, rather than augment or alter it. The full title of the ATRA is "Technical and Clarifying Update to Civil Remedy." Pub. L. No. 117-347, § 101, 136 Stat. 6199, 6200 (2023). As Judge Graber correctly observed, the use of "update" in the statute's title was not intended to signify that the ATRA should be forward-looking; rather, Congress's choice to use "technical" and "clarifying" in the title was a direct outgrowth of the Circuit Courts' prior indications that a clear statement of congressional intent to clarify will be afforded deference.

Given the history of the TVPRA, the speed of the congressional response to the court's misinterpretation in *Ratha I*, and the precise language used in the amendment, it is unclear to *Amici* what more Congress could have done in this case to demonstrate its intent to the Court. The majority's decision undermines Congress's clearly and unambiguously expressed intent to preserve the TVPRA's comprehensive framework. In so doing, it limits access to the remedy that *Amici* and other Members of Congress have fought to create and to preserve.

## CONCLUSION

In light of the exceptionally important separation of powers concerns implicated by the obfuscation of the clarification doctrine, as well as the threat to the TVPRA's comprehensive protections for victims of forced labor and human trafficking, *Amici* respectfully urge this Court to grant en banc review.

Dated: September 23, 2024

By: <u>*s/ Aaron Halegua*</u>

| | |
|---|---|
| Tyler R. Giannini | Aaron Halegua |
| Human Rights Entrepreneurs Clinic | *Counsel of Record* |
| Harvard Law School | AARON HALEGUA, PLLC |
| 23 Everett Street, Suite 303 | 524 Broadway, 11th Floor |
| Cambridge, MA 02138 | New York, NY 10012 |
| (617) 496-7368 | (646) 854-9061 |
| giannini@law.harvard.edu | ah@aaronhalegua.com |

*Attorneys for Amici Curiae*

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** _____23-55299_____

    I am the attorney or self-represented party.

    **This brief contains** _____**3,092**_____ **words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

    I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[x] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Aaron Halegua*            **Date** 9/23/2024

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2024, I filed the foregoing document **BRIEF OF MEMBERS OF CONGRESS REPRESENTATIVE NADLER ET AL., AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS-APPELLANTS** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the 9th Circuit electronic filing system ECF.

I hereby certify that all parties are registered and will be served electronically via the Ninth Circuit electronic filing system ECF.

Dated: September 23, 2024

By: _s/ Aaron Halegua_
Aaron Halegua

*Attorney for Amici Curiae*