# United States Court of Appeals for the Ninth Circuit

KEO RATHA, ET AL.,

*Plaintiffs-Appellants,*

v.

RUBICON RESOURCES, LLC,

*Defendant-Appellee.*

Appeal from the District Court for the Central District of California,
No. 2:16-cv-04271-JFW

## BRIEF OF WASHINGTON LEGAL FOUNDATION AS *AMICUS CURIAE* IN SUPPORT OF NEITHER PARTY ON REHEARING EN BANC

Cory L. Andrews
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave. NW
Washington, DC 20036
(202) 588-0302

Joshua M. Wesneski
Sydney Hargrove
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW
Washington, DC 20036
(202) 682-7000
joshua.wesneski@weil.com

*Counsel for Amicus Curiae*

# CORPORATE DISCLOSURE STATEMENT

Washington Legal Foundation is a non-profit corporation under § 501(c)(3) of the Internal Revenue Code. It has no parent company, issues no stock, and no publicly held company owns a ten percent or greater interest in it.

# TABLE OF CONTENTS

Corporate Disclosure Statement ........................................................ i

*Amicus Curiae*'s Identity, Interest, and Authority to File .......................... 1

Summary of Argument ...................................................................... 2

Argument ........................................................................................ 4

I. The Ninth Circuit's Exception to the Presumption Against Statutory Retroactivity for Clarifying Legislation Is Inconsistent with the Law .......................................................................... 4

    A. The Supreme Court in *Landgraf* Defined the Framework for Retroactivity Analysis ....................................................... 4

    B. The Ninth Circuit Has Created an "Exception" to *Landgraf* for "Clarifying Legislation" ................................................. 7

    C. The "Clarifying Legislation" Exception Is Unjustifiable and Unsupported by the Law .................................................... 10

Conclusion ...................................................................................... 20

Certificate of Compliance ................................................................ 21

Certificate of Service ...................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABKCO Music, Inc. v. LaVere,*
  217 F.3d 684 (9th Cir. 2000) .................................................. 8, 9

*Aldridge v. Williams,*
  44 U.S. (3 How.) 9 (1845) ...................................................... 16

*Bank Markazi v. Peterson,*
  578 U.S. 212 (2016) ............................................................... 13

*Beaver v. Tarsadia Hotels,*
  816 F.3d 1170 (9th Cir. 2016) ................................................. 8

*Beverly Cmty. Hosp. Ass'n v. Belshe (Belshe),*
  132 F.3d 1259 (9th Cir. 1997) ................................... 7, 8, 9, 18

*Conroy v. Aniskoff,*
  507 U.S. 511 (1993) ............................................................... 17

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,*
  447 U.S. 102 (1980) ............................................................... 17

*Ditullio v. Boehm,*
  662 F.3d 1091 (9th Cir. 2011) ................................................. 7

*Fletcher v. Peck,*
  10 U.S. (6 Cranch) 87 (1810) ................................................ 13

*Georgia v. Public.Resource.Org, Inc.,*
  590 U.S. 255 (2020) ............................................................... 13

*Gutierrez-Brizuela v. Lynch,*
  834 F.3d 1142 (10th Cir. 2016) .............................................. 19

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.,*
  921 F.3d 1343 (11th Cir. 2019) .............................................. 10

*Hughes Aircraft Co. v. United States,*
  520 U.S. 939 (1997) ................................................................. 7

*INS v. Chadha,*
  462 U.S. 919 (1983) ............................................................... 15

iii

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994) ................................................................ *passim*

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ....................................................................... 14

*Loving v. United States*,
    517 U.S. 748 (1996) ....................................................................... 18

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ................................................. 12, 16

*Massachusetts v. Mellon*,
    262 U.S. 447 (1923) ................................................................. 13, 15

*Michigan v. Bay Mills Indian Cmty.*,
    572 U.S. 782 (2014) ....................................................................... 19

*Patchak v. Zinke*,
    583 U.S. 244 (2018) ................................................................. 13, 15

*Plaut v. Spendthrift Farm, Inc.*,
    514 U.S. 211 (1995) ....................................................................... 13

*Princess Cruises, Inc. v. United States*,
    397 F.3d 1358 (Fed. Cir. 2005) .....................................................11

*Ratha v. Rubicon Res., LLC (Ratha II)*,
    111 F.4th 946 (9th Cir. 2024), *vacated*, 129 F.4th 1212 (9th
    Cir. 2025) (mem.) ..................................................................... 2, 9

*Red Lion Broad. Co. v. FCC*,
    395 U.S. 367 (1969) ....................................................................... 18

*Robertson v. Seattle Audubon Soc'y*,
    503 U.S. 429 (1992) ....................................................................... 13

*Stern v. Marshall*,
    564 U.S. 462 (2011) ....................................................................... 14

## Secondary Sources

William Baude & Stephen E. Sachs, *The Law of
    Interpretation*, 130 Harv. L. Rev. 1079 (2017) ..........................11

United States House of Representatives: History, Art & Archives, *Terms of Service for Members of the House of Representatives at the Close of the 117th Congress (2021-2023)*, https://perma.cc/VNX4-BEP4 (Jan. 3, 2023)............................. 18

## ***AMICUS CURIAE*'S IDENTITY, INTEREST, AND AUTHORITY TO FILE**[1]

Washington Legal Foundation ("WLF") is a nonprofit, public-interest law firm and policy center with supporters nationwide. WLF promotes free enterprise, individual rights, limited government, and the rule of law. WLF often files *amicus* briefs to advocate for the proper application of legal and equitable principles.

WLF offers no opinion on whether or to what extent the 2023 amendment to the Trafficking Victims Protection Reauthorization Act ("TVPRA") can or should be applied to conduct predating its enactment. Instead, WLF writes to offer its perspective on the proper mode of legal analysis in answering that question, both here and in other contexts. WLF contends that the Ninth Circuit's "clarifying legislation" exception to the ordinary test for retroactive application is contrary to binding precedent, contravenes the constitutional separation of powers, and misunderstands the process of legislation. The *en banc* Court should take this opportunity to correct this Circuit's precedent on this issue.

---

[1] All parties have consented to the filing of this brief. No party's counsel authored any part of this brief. No one, apart from WLF and its counsel, contributed money intended to fund the brief's preparation or submission.

## SUMMARY OF ARGUMENT

Retroactive application of statutory enactments "has long been disfavored." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 268 (1994). Consistent with that foundational principle, in *Landgraf* the Supreme Court affirmed the general rule that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." 511 U.S. at 272. Under the *Landgraf* test, a court must examine (1) whether Congress has expressly prescribed the application of a statute to pre-enactment conduct and (2) if not, whether applying the statute to pre-enactment conduct would give the statute retroactive effect. *See id.* at 280. Without an express congressional statement otherwise, statutes that substantively alter a party's rights do not apply to pre-enactment conduct. *See id.*

Rather than apply the *Landgraf* framework, the panel in this case determined the retroactive effect of the 2023 amendment to the TVPRA by asking whether that amendment served only to "clarify the intent of an earlier Congress." *Ratha v. Rubicon Res., LLC (Ratha II)*, 111 F.4th 946, 959 (9th Cir. 2024), *vacated*, 129 F.4th 1212 (9th Cir. 2025) (mem.). The panel undertook that inquiry because of previous panel decisions that recognized a so-called "exception" to *Landgraf* for statutory amendments that purport to "clarify" the law rather than alter it. *See id.*

WLF respectfully submits that this Court should dispense with the "clarifying legislation" exception and decide this case—and all other retroactivity cases—on the basis of *Landgraf*'s framework. The "clarifying legislation" exception is inconsistent with *Landgraf*. Although the Court in *Landgraf* identified certain statutes—including jurisdictional, prospective relief, and procedural statutes—whose application to pre-enactment conduct does not give rise to retroactivity concerns, "clarifying legislation" was not among those exceptions. Such amendments in fact raise the precise same fairness and notice concerns as any other substantive change in the law.

Moreover, the "clarifying legislation" exception elevates Congress's interpretation of the law over the Judiciary's, violating separation of powers and background constitutional principles. At bottom, the exception rests on an inaccurate and unrealistic view of the legislative process, presuming that a later Congress can accurately divine the subjective intent of an earlier Congress. At the very least, the exception should not apply when a precedential decision in a jurisdiction has already construed the relevant statutory provision.[2]

---

[2] For purposes of this brief, WLF assumes that the 2023 amendment is "clarifying legislation." WLF offers no view on whether that is in fact the case.

**ARGUMENT**

**I.** **The Ninth Circuit's Exception to the Presumption Against Statutory Retroactivity for Clarifying Legislation Is Inconsistent with the Law**

An exception to the presumption against retroactivity applicable where a statute purportedly clarifies existing law rather than changes it runs afoul of Supreme Court precedent, as well as the presumption's legal and policy underpinnings.

**A.** **The Supreme Court in *Landgraf* Defined the Framework for Retroactivity Analysis**

*Landgraf* is the seminal case espousing the two-step analysis used to determine the propriety of applying a new statute to pre-enactment conduct. *Landgraf* addressed and resolved an "apparent tension" between two canons of statutory construction: (i) that a court must apply the law in effect at the time it renders its decision and (ii) that retroactivity is disfavored in the law. 511 U.S. at 264. As the Court observed, "the presumption against retroactive legislation is deeply rooted in our jurisprudence and embodies a legal doctrine centuries older than our Republic." *Id.* at 265. That presumption is supported by "[e]lementary considerations of fairness dictat[ing] that individuals should have an opportunity to know what the law is and to conform their behavior accordingly," as well as the general rule that "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place[.]" *Id.* (citation

omitted).  The Court further observed that the so-called "antiretroactivity principle" is supported by several constitutional provisions, including the *Ex Post Facto* Clause, the Fifth Amendment's Takings Clause, and the Due Process Clause.  *Id.* at 266.

At the same time, not all changes in the law substantively alter a party's rights at the time of the alleged conduct, and therefore may apply to pre-enactment conduct without raising any due process or fairness concerns.  For example, where an "intervening statute authorizes or affects the propriety of *prospective* relief," application of that provision to past conduct is not truly "retroactive," because the change affects only the prospective rights of the parties.  *Id.* at 273 (emphasis added).  Rules conferring or ousting jurisdiction speak only to the power of the court permitted to hear a case and thus do not raise the same fairness concerns as substantive changes in the law.  *Id.* at 274.  And procedural rules also do not disturb existing, or impose additional, obligations on a party because they regulate secondary conduct, not the primary conduct giving rise to a legal action.  *Id.* at 275.  The Court did not suggest at any point that a purported "clarification" by Congress of existing law was akin to these examples of non-retroactive application.

Reconciling these two principles, the Court affirmed the general rule that the traditional presumption against retroactive application of legislation should not be disturbed absent congressional language requiring that result. *See id.* at 265–79. Under the test established in *Landgraf*, a court confronted with a statute that one party seeks to apply to pre-enactment conduct must determine whether Congress has expressly prescribed the statute's proper temporal reach. *Id.* at 280. If so, the court must follow Congress's direction and the inquiry ends there. *Id.* If there is no express congressional command, however, a court must then determine if applying the statute to pre-enactment conduct would have retroactive effect: Whether it impairs the rights a party had when he or she acted, increases a party's liability for past conduct, or imposes new duties with respect to completed transactions. *Id.* If application of the statute to pre-enactment conduct would have retroactive effect, the "traditional presumption teaches that [the statutory change] does not govern absent clear congressional intent favoring such a result." *Id.* Such a framework, the Court reasoned, "will generally coincide with legislative and public expectations" about "how statutes ordinarily operate." *Id.* at 272.

**B. The Ninth Circuit Has Created an "Exception" to *Landgraf* for "Clarifying Legislation"**

In many cases, the Ninth Circuit has correctly applied the *Landgraf* framework and embraced the "time honored presumption that unless Congress has clearly manifested its intent to the contrary, the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Ditullio v. Boehm*, 662 F.3d 1091, 1099 (9th Cir. 2011) (quoting *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 946 (1997)) (alterations and citation omitted). In the context of the TVPRA, for example, the Ninth Circuit applied *Landgraf* to deny retroactive application to a statutory amendment creating a civil liability provision. *See id.* at 1099–101. The Court held that in amending the statute to add the civil liability provision, Congress had included no express statement of retroactive application. *See id.* at 1099. And the Court concluded that statutes authorizing punitive and compensatory damages for past conduct create new liabilities and, therefore, would have retroactive effect if applied to pre-enactment conduct. *See id.* at 1100.

But the Ninth Circuit has also developed an "exception" to *Landgraf* for statutory amendments that purport only to "clarify" the law, rather than change it. *Beverly Cmty. Hosp. Ass'n v. Belshe (Belshe)*, 132 F.3d 1259, 1265 (9th Cir. 1997). The rationale for this exception is that if a statutory amendment "merely clarifies what [the statute] was originally

intended to mean," then "the only function of [the amendment] . . . is to state more clearly what the law already was—it has no retroactive effect that might be called into constitutional question." *Id*. at 1265. Under this reasoning, "clarifying legislation is not subject to any presumption against retroactivity and is applied to all cases pending as of the date of its enactment." *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 689 (9th Cir. 2000) (citing *Belshe*, 132 F.3d at 1265). According to those panels that have adopted this rule, "no *Landgraf* analysis is required if an amendment merely serves to clarify rather than change the substance of existing law." *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1186 (9th Cir. 2016) (citing *ABKCO Music*, 217 F.3d at 689–90).

The Court has developed what is essentially a two-part framework to analyze whether a statutory amendment qualifies for the "clarifying legislation" exception to *Landgraf*, with the ultimate inquiry being whether the amendment is "truly a 'clarification' of the prior statute (as Congress said)" or instead is actually a substantive change in law. *Belshe*, 132 F.3d at 1265. To answer that question, courts first ask whether the prior enactment was ambiguous and generated inconsistent judicial opinions, which lends itself to an inference that Congress, through the new enactment, was clarifying the law. *See ABKCO Music*, 217 F.3d at 691 ("An amendment in the face of an ambiguous statute or dispute among the

courts as to its meaning indicates that Congress is clarifying, rather than changing, the law." (citations omitted)).   Then, courts examine textual indications that Congress intended the amendment to be clarifying, including the statute's title and legislative history.  *See Belshe*, 132 F.3d at 1265–66; *see also ABKCO Music*, 217 F.3d at 690–91 (considering House Reports and congressional statements to support Congress's intention for the new statute to clarify existing law).   If the Court determines, on the basis of these two inquiries, that Congress intended to merely "clarify" the law—that is, state what the statute "has meant all along"—there is no presumption against retroactivity and the amendment may apply to pre-enactment conduct even in the absence of an express statement of retroactivity.  *See ABKCO Music*, 217 F.3d at 691 (quoting *Belshe*, 132 F.3d at 1266).

In the panel decision here, the Court considered this "exception" to the *Landgraf* framework and analyzed "the time and circumstances surrounding [the 2023 TVPRA amendment] to determine if Congress intended to confirm what a prior enactment has always meant," focusing in particular "on whether the prior enactment was ambiguous and generated inconsistent judicial opinions."  *Ratha II*, 111 F.4th at 960 (citation omitted).   The Court ultimately concluded that the 2023 amendment to the TVPRA did *not* qualify for the "clarifying legislation" exception to *Landgraf*.  *See id.* at 969.  Still, the Court confirmed that *had* it determined that

the amendment was "clarifying," it could be "applied to all cases pending as of the date of its enactment." *Id.* at 959 (citation omitted).

### C. The "Clarifying Legislation" Exception Is Unjustifiable and Unsupported by the Law

The Ninth Circuit's "clarifying legislation" exception cannot be reconciled with *Landgraf*, background constitutional principles, or the realities of the legislative process.

**1.** The "clarifying legislation" exception contravenes *Landgraf*. At the outset, *Landgraf* identifies no exception to its framework for statutory amendments that purport only to "clarify" the law, even though the Court identified several examples of statutory changes that could apply to pre-enactment conduct without having an impermissible retroactive effect. *See* 511 U.S. at 273–75. If the Court had intended to leave a gaping hole in the *Landgraf* framework for any statutory enactment titled or deemed "clarifying," it surely would have said so. *See Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1358 (11th Cir. 2019) ("We presume that the Supreme Court does not hide elephants in such well-disguised mouseholes."). Indeed, the Federal Circuit reached this precise conclusion in rejecting the "clarifying legislation" exception, explaining that the exception "conflicts with the court's obligation to weigh the various factors described in *Landgraf*" and "provides little insight into whether

a retroactive effect would result in a particular case." *Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1363 (Fed. Cir. 2005).

More fundamentally, the rationale for the *Landgraf* framework applies with no less force to purported "clarifying" amendments than to express substantive changes in the law. The Supreme Court explained that the presumption against retroactive application is grounded in "the unfairness of imposing new burdens on persons after the fact" and the strength of the "Legislature's unmatched powers" to "sweep away settled expectations suddenly[.]" *Landgraf*, 511 U.S. at 266, 270. While acknowledging that "[a]ny test of retroactivity will leave room for disagreement in hard cases," the Court observed that "familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance." *Id.* at 270.

Those principles are in full effect for supposedly "clarifying" amendments. Parties plan their conduct on the assumption that statutes will be applied according to their terms and consistently with established tools of statutory construction. *See generally* William Baude & Stephen E. Sachs, *The Law of Interpretation*, 130 Harv. L. Rev. 1079 (2017). When Congress retroactively alters precedential law in the name of "clarification," it upsets those "settled expectations" and exposes parties to liability for conduct they could not reasonably have understood to be prohibited by the law.

*Landgraf*, 511 U.S. at 265. Congress very well may have the power to do that, but the antiretroactivity presumption "helps ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness." *Id.* at 268.

A later Congress's genuine belief that courts have misinterpreted or misapplied a statute does not alter any of that analysis. In fact, the Court in *Landgraf* observed that one of the reasons Congress might elect to expressly give a statute retroactive effect is "to correct mistakes" in the existing law. 511 U.S. at 268. But even in those circumstances—where the change serves "entirely benign and legitimate purposes"—Congress must make its intent clear. *Id.* at 267–68. In short, what matters is not Congress's subjective intent or motivation for enacting a statutory change— which is what the "clarifying legislation" exception seeks to probe—but the objective effect of that change on settled expectations and conduct.

**2.** The "clarifying legislation" exception undermines the role of the Judiciary. For centuries, the Supreme Court has recognized that "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). Under the Constitution, "[t]o the legislative department has been committed the duty of making laws, to the executive the duty of executing them, and to the judiciary the duty of interpreting and applying them in cases properly

brought before the courts." *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923); *see also Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 136 (1810) ("It is the peculiar province of the legislature to prescribe general rules for the government of society; the application of those rules to individuals in society would seem to be the duty of other departments."). "The general rule is that neither department may invade the province of the other . . . ." *Mellon*, 262 U.S. at 488.

For that reason, "Congress, no doubt, may not usurp a court's power to interpret and apply the law to the circumstances before it." *Bank Markazi v. Peterson*, 578 U.S. 212, 225 (2016) (alteration and citation omitted). This division of authority of course "does not inhibit Congress from *amending* applicable law," *id.* at 226 (emphasis added) (alteration and citation omitted), and the Supreme Court has long held that such an amendment may apply to pre-enactment conduct where expressly contemplated by Congress, *see Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 226 (1995). Thus, "Congress violates Article III when it compels findings or results under old law," but not "when it changes the law." *Patchak v. Zinke*, 583 U.S. 244, 250 (2018) (plurality op.) (alterations and quotation marks omitted) (citing *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 438 (1992)); *see also Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 293 (2020) (Ginsburg, J., dissenting) ("[T]he role of the legislature encompasses the

process of 'making laws'—not construing statutes after their enactment."
(citation omitted)).

There is good reason for allocating responsibility in this way. "Unlike
the political branches, the courts . . . by design exercise neither Force nor
Will, but merely judgment." *Loper Bright Enters. v. Raimondo,* 603 U.S.
369, 385 (2024) (citation and quotation marks omitted). Assigning to the
Judiciary the responsibility of interpreting the law promotes the "steady,
upright and impartial administration of the laws," undertaken "independ-
ent of influence from the political branches." *Id.* (citation omitted); *see also
Stern v. Marshall*, 564 U.S. 462, 484 (2011) ("[T]he Framers sought to en-
sure that each judicial decision would be rendered, not with an eye toward
currying favor with Congress or the Executive, but rather with the clear
heads and honest hearts deemed essential to good judges." (alterations,
citation, and quotation marks omitted)).

The "clarifying legislation" exception contravenes these constitutional
principles by allowing Congress to "say what the law is" (or rather, what
it always supposedly was) through a purported "clarification," instead of
to "change" the law and then prescribe the temporal reach of the statute
(or defer to the judicial presumption against retroactive application). In-
terpreting a statutory amendment as effectively declaring that a judicial
interpretation of a statute was *wrong*—because it incorrectly interpreted

the meaning of a statute—elevates Congress's interpretation of the law over that of the Judiciary's. But it is the Judiciary, not Congress, that must interpret the laws, *see Mellon*, 262 U.S. at 488, and Congress has no power to declare the proper "result[]" for a case "under old law," i.e., under the statute as originally enacted, *Patchak*, 583 U.S. at 250 (plurality op.) (citation and quotation marks omitted)).

The distinction between the power to interpret (held by the courts) and the power to make substantive law (held by Congress) is no matter of mere form. As noted above, demanding an express statement of retroactivity "helps ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness." *Landgraf*, 511 U.S. at 268. In other words, a court should have confidence that Congress made a thoughtful and deliberate decision to give a statute retroactive application before it applies that statute to pre-enactment conduct. The presumption against retroactivity also helps to hold Congress politically accountable for its lawmaking, an essential check on the power of the legislative branch to impair or declare the rights of citizens. *See INS v. Chadha*, 462 U.S. 919, 997 (1983) (White, J., dissenting) ("In a democracy it is the electorate that holds the legislators accountable for the wisdom of their choices."). Put otherwise, if Congress makes the policy determination that a statutory change should be applied retroactively, it must

accept the political consequences of that determination by saying so expressly in the statute—Congress cannot simply label a statutory amendment "clarifying" and rely on the courts to divine its intent on retroactivity.

Only the courts may "say what the law is." *Marbury*, 5 U.S. (1 Cranch) at 177. If Congress is dissatisfied with how its laws have been interpreted and applied, it can change the law to compel a different outcome, and it may elect to make that change in the law retroactive to pre-enactment conduct. But what Congress may not do is sit above the Judiciary as a final arbiter of how its statutes should have been interpreted by courts in prior cases. The "clarifying legislation" exception allows Congress to do just that, disrupting the delicate balance of powers among the Branches.

**3.** The "clarifying legislation" exception additionally depends on the incorrect assumption that a subsequent Congress is a reliable determinant of a prior Congress's "intent." The Supreme Court has long recognized that the "law as it passed is the will of the majority of both houses, and the only mode in which that will is spoken is in the act itself." *Aldridge v. Williams*, 44 U.S. (3 How.) 9, 24 (1845); *see also id.* ("In expounding this law, the judgment of the court cannot, in any degree, be influenced by the construction placed upon it by individual members of Congress in the de-

bate which took place on its passage, nor by the motives or reasons assigned by them for supporting or opposing amendments that were offered.").  As Justice Scalia put it, "[w]e are governed by laws, not by the intentions of legislators."  *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring).  It is therefore a fraught exercise to attempt to divine what a legislature *meant*, rather than simply to examine what it actually *said*.

Here, though, the issue is not simply resort to legislative intent:  It is deference to Congress's subjective *belief* about what a *prior* Congress intended.  Thus, even to the extent subjective legislative intent should be probed at all, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one."  *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117 (1980) (citation omitted).  And that makes good sense—a subsequent Congress has no special expertise in divining the intent of an earlier Congress whose membership may have been materially different.

Here, for example, the 2023 amendment purports to "clarify" the intent of a Congress from 15 years before.  Of the 435 Representatives who were eligible to vote on the 2023 amendment, only 110 served in Congress during the 2008 amendment (the House sponsor of the 2008 amendment was not among those in office for the 2023 amendment).  *See* United States

House of Representatives: History, Art & Archives, *Terms of Service for Members of the House of Representatives at the Close of the 117th Congress (2021–2023)*, https://perma.cc/VNX4-BEP4 (Jan. 3, 2023). The remaining 325 House members have no stronger basis to declare the intent of the prior Congress than any member of the Judiciary—the mere fact that they carry the same government title as their predecessors does not make them expert historians of legislative intent.

In *Belshe*, a panel of this Court asserted that "[i]t has been established law since nearly the beginning of the republic . . . that congressional legislation that thus expresses the intent of an earlier statute must be accorded great weight." 132 F.3d at 1265. But in the case the panel cited for that proposition—*Red Lion Broad. Co. v. FCC*, 395 U.S. 367 (1969)—the Supreme Court held simply that it was proper as a matter of statutory construction to give weight to a statement in a later statute that validated and ratified the existing interpretation of a statute by an administrative body. *See id.* at 380–82; *see also Loving v. United States*, 517 U.S. 748, 770 (1996) (observing that subsequent statute identified provision in dispute as the relevant source of authority for challenged action). Taking into account the perspective of the legislature with respect to how to apply a stat-

ute *prospectively* is far different from using such a statement to justify *retroactive* application of that interpretation in the face of contrary judicial precedent.

**4.** At the very least, the "clarifying legislation" exception cannot apply in a jurisdiction where binding precedent already forecloses the interpretation advanced by a subsequent Congress. Reliance interests are at their zenith when a federal court with the power to bind lower courts declares the meaning of a statute. *See Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1151 (10th Cir. 2016) (Gorsuch, J., concurring) ("[T]he framers sought to ensure that the people may rely on judicial precedent about the meaning of existing law until and unless that precedent is overruled or the purposefully painful process of bicameralism and presentment can be cleared."). Indeed, that is the premise of *stare decisis*, which "promotes the even-handed, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 798 (2014) (citation omitted).

When applied in jurisdictions where a court has already authoritatively interpreted the relevant statutory provision, the "clarifying legislation" exception reduces the predictive value of judicial opinions and intro-

duces uncertainty for issues that should be deemed resolved. Parties cannot plan their conduct effectively if they lack confidence that binding precedent will remain in force. There is, of course, always the possibility of precedent being overturned or a statute being amended with retroactive effect, but the "clarifying legislation" exception threatens to make statutory indeterminacy the rule rather than the rare exception. If the Court elects to retain the "clarifying legislation" exception in any form, it should narrow the exception to only those circumstances where there is no preexisting binding precedent on point.

## CONCLUSION

For all these reasons, this Court should reject any exception to the presumption against statutory retroactivity for clarifying legislation.

Respectfully submitted,

_/s/ Joshua M. Wesneski_

| | |
|---|---|
| Cory L. Andrews | Joshua M. Wesneski |
| WASHINGTON LEGAL FOUNDATION | Sydney Hargrove |
| 2009 Massachusetts Ave. NW | WEIL, GOTSHAL & MANGES LLP |
| Washington, DC 20036 | 2001 M Street NW, Suite 600 |
| (202) 588-0302 | Washington, DC 20036 |
| | (202) 682-7000 |
| | Joshua.Wesneski@weil.com |

March 25, 2025

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies pursuant to Fed. R. App. P. 32(g) that the Brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f), this document contains 4,348 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Century Schoolbook font in 14 point size.

*/s/ Joshua M. Wesneski*

Joshua M. Wesneski
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
Joshua.Wesneski@weil.com

March 25, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

*/s/ Joshua M. Wesneski*

Joshua M. Wesneski
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
Joshua.Wesneski@weil.com

March 25, 2025