No. 23-55299

---

In the
# United States Court of Appeals for the Ninth Circuit

---

KEO RATHA; SEM KOSAL; SOPHEA BUN; YEM BAN; NOL NAKRY; PHAN SOPHEA; AND SOK SANG,

*Plaintiffs-Appellants*,

v.

RUBICON RESOURCES, LLC,

*Defendant-Appellee.*

---

On Appeal from the United States District Court for the
Central District of California
No. 2:16-cv-04271-JFW
Hon. John F. Walter

---

## BRIEF OF *AMICUS CURIAE* INTERNATIONAL FRANCHISE ASSOCIATION IN SUPPORT OF APPELLEE AND AFFIRMANCE

---

Julia E. Fine
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
Telephone: 202-879-3635
jfine@jonesday.com

Andrew J. Clopton
JONES DAY
150 W. Jefferson, Suite 2100
Detroit, MI 48226-4438
Telephone: 313-230-7902
aclopton@jonesday.com

*Counsel for* Amicus Curiae *International Franchise Association*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 9th Cir. R. 26.1-1, International Franchise Association states that it is a non-profit corporation. It has no parent corporation and no publicly held corporation holds a 10% or greater ownership interest in it.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.....................................................................iii

IDENTITY AND INTEREST OF *AMICUS CURIAE* .............................1

INTRODUCTION...............................................................................3

ARGUMENT .....................................................................................6

   I.   UNDER ITS PLAIN MEANING, "PARTICIPATION IN A VENTURE"
       REQUIRES MORE THAN ORDINARY COMMERCIAL TRANSACTIONS. ......7

     A.   To "Participate in a Venture," the Defendant Must Take Part
        in a Common Undertaking Involving Risk and
        Potential Profit. ............................................................8

     B.   Without More, Parties to a Commercial Transaction Do Not
        Engage in a Common Undertaking. .........................................12

     C.   Lower Courts Have Misconstrued This Element......................18

   II.   THE DEFENDANT MUST HAVE ACTUAL OR CONSTRUCTIVE
       KNOWLEDGE THAT A PARTICULAR VENTURE VIOLATED
       THE TVPRA................................................................................22

   III.   THE DEFENDANT MUST "KNOWINGLY BENEFIT[]" ON ACCOUNT OF
       ITS PARTICIPATION IN A VENTURE THAT VIOLATED THE TVPRA. ..27

CONCLUSION .................................................................................29

CERTIFICATE OF COMPLIANCE.........................................................31

CERTIFICATE OF SERVICE................................................................32

# TABLE OF AUTHORITIES

**Cases**                                                       **Page**

*A.B. v. Hilton Worldwide Holdings Inc.,*
484 F. Supp. 3d 921 (D. Or. 2020)..................................26, 28

*Bistline v. Parker,*
918 F.3d 849 (10th Cir. 2019) ......................................16–17

*Boyle v. United States,*
556 U.S. 938 (2009) ............................................................8

*Browder v. Director, Department of Corrections of Illinois,*
434 U.S. 257 (1978) ..........................................................13

*Burrell v. Staff,*
60 F.4th 25 (3d Cir. 2023) ..................................................17

*C.C. v. Rashid,*
2024 WL 5200543 (D. Nev. Dec. 20, 2024) ..........................23

*C.M.S. v. Wyndham Hotels & Resorts, Inc.,*
2025 WL 824369 (S.D. Cal. Mar. 14, 2025) ...................18, 21

*Doe #1 v. Red Roof Inns,*
21 F.4th 714 (11th Cir. 2021)................1, 11, 14, 19–20, 22, 24, 26, 28

*Doe 1 v. Apple Inc.,*
96 F.4th 403 (D.C. Cir. 2024)................................. 11, 13–14, 16–17, 20

*Doe v. Scottsdale Inns LLC,*
2024 WL 3494375 (D. Ariz. July 22, 2024) ..........................24

*Doe v. Wyndham Hotels & Resorts,*
2025 WL 85831 (E.D. Cal. Jan. 7, 2025).............................21

*Does 1-6 v. Reddit, Inc.,*
51 F.4th 1137 (9th Cir. 2022)...............................................7

*F.A.A. v. Cooper*,
566 U.S. 284 (2012 ..............................................................9

*G.G. v. Salesforce.com, Inc.*,
76 F.4th 544 (7th Cir. 2023)............................................ 16, 20, 22, 26

*J.B. v. G6 Hospitality, LLC*,
2021 WL 4079207 (N.D. Cal. Sept. 8, 2021) ......................................21

*J.C. v. Choice Hotels International*,
2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) ......................................21

*J.M. v. Choice Hotels International, Inc.*,
2023 WL 3456619 (E.D. Cal. May 15, 2023)......................................21

*K.H. v. Riti, Inc.*,
2024 WL 505063 (11th Cir. Feb. 9, 2024) ...................................... 14, 20

*M.A. v. Wyndham Hotels & Resorts*,
425 F. Supp. 3d 959 (S.D. Ohio 2019) ........................................19–20

*Nye & Nissen v. United States*,
336 U.S. 613 (1949) ..............................................................10

*Perrin v. United States*,
444 U.S. 37 (1979) ...............................................................6

*Pioneer Investment Services Co. v. Brunswick Associates Ltd. P'ship*,
507 U.S. 380 (1993) ..............................................................10

*Ratha v. Phatthana Seafood Co., Ltd. (Ratha I)*,
26 F.4th 1029 (9th Cir. 2022).................................................4, 26

*Ratha v. Phatthana Seafood Co., Ltd.*,
2017 WL 8293174 (C.D. Cal. Dec. 21, 2017).............................. 4, 12, 25

*Ratha v. Phatthana Seafood Co., Ltd.*,
2023 WL 2762044 (C.D. Cal. Mar. 3, 2023) ........................................4

*Ratha v. Rubicon Resources, LLC (Ratha II)*,
111 F.4th 946 (9th Cir. 2024)....................................................4

*Ricchio v. McLean,*
  853 F.3d 553 (1st Cir. 2017) ......................................................... 15–16

*Rodriguez v. Pan American Health Organization,*
  29 F.4th 706 (D.C. Cir. 2022) ............................................................ 17

*Rosemond v. United States,*
  572 U.S. 65 (2014) .................................................................... 9–10

*S.C. v. Hilton Franchise Holding LLC,*
  2024 WL 4773981 (D. Nev. Nov. 12, 2024) ........................................ 20

*S.J. v. Choice Hotels International, Inc.,*
  473 F. Supp. 3d 147 (E.D.N.Y. 2020) ........................................... 26–27

*S.E.C. v. Berkeley Healthcare Dynamics, LLC,*
  2022 WL 42807 (9th Cir. Jan. 5, 2022) ............................................. 12

*Smith v. City of Jackson, Mississippi,*
  544 U.S. 228 (2005) ............................................................... 10–11

*Spokeo v. Robins,*
  578 U.S. 330 (2016) .................................................................... 25

*United States v. Afyare,*
  632 F. App'x 272 (6th Cir. 2016) ......................................................... 8

*United States v. Hinkson,*
  585 F.3d 1247 (9th Cir. 2009) .......................................................... 12

*Wisconsin Central Ltd. v. United States,*
  585 U.S. 274 (2018) ..................................................................... 6

**Statutes**

18 U.S.C. § 1589 ...................................................................... 23–24

18 U.S.C. § 1591 ......................................................................... 10

18 U.S.C. § 1595 .................................................... 3, 6, 12, 22–25, 27

## Other Authorities

Black's Law Dictionary (11th ed. 2019)............................. 8–9, 11, 24, 27

Oxford English Dictionary (2d ed. 1989) ........................................ 8–9, 27

Restatement (Second) of Torts (Am. L. Inst. 1965) ................................. 11

Webster's Third New International Dictionary (1976) ........................ 8–9

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* International Franchise Association ("IFA") is the world's largest membership organization for franchisors, franchisees, and franchise suppliers. IFA seeks to protect and promote franchising by educating lawmakers, the judiciary, and the public, and defending the future of the franchising community.

IFA has a significant interest in this case, which involves the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"). Hundreds of TVPRA cases—including one resulting in the Eleventh Circuit's landmark decision in *Doe #1 v. Red Roof Inns*, 21 F.4th 714 (11th Cir. 2021)—have arisen in the hospitality-industry context. In these cases, plaintiffs have sued hotel franchisors, franchisees, and other companies, seeking to hold them liable for crimes that actual traffickers allegedly perpetrated behind closed doors in hotel

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), IFA states that no party's counsel authored this brief in whole or in part; and no party or party's counsel, or any other person (other than IFA, its members, and its counsel), contributed money intended to fund the preparation or submission of this brief. In addition, pursuant to Federal Rules of Appellate Procedure 29(a)(2) and 29(a)(4)(D) and Ninth Circuit Rule 29-2(a), IFA states that all parties to this appeal have consented to the filing of this brief.

rooms. Given IFA's interest in a proper interpretation of the TVPRA, IFA has participated as an *amicus* in cases like *Red Roof Inns*.

This case involves labor trafficking, rather than sex trafficking, and does not involve the hospitality industry. Nevertheless, this Court's decision could have profound implications for TVPRA litigation in the hospitality context because the same civil cause of action under 18 U.S.C. § 1595(a) applies to both contexts. Here, Appellants seek to hold Rubicon liable as a participant in a venture under § 1595(a) with the company that trafficked them. But, according to the district court, Rubicon's relationship with that company was limited to buying its products. Likewise, plaintiffs often seek to hold hotel franchisors and franchisees liable for participating in ventures with traffickers simply by renting them hotel rooms. These ordinary, buyer-seller transactions do not constitute "participation in a venture" under the TVPRA.

Make no mistake: IFA and its members vigorously oppose human trafficking in all its forms. But a holding that ordinary commercial transactions can establish "participation in a venture" would significantly expand liability for hotel franchisors and franchisees alike. To be clear, the first question presented is whether § 1595(a)'s

"attempt[] . . . to benefit" element is retroactive. This Court need not reach, and in this posture should not reach, the merits of the § 1595(a) claim. But, to the extent the Court addresses the merits, IFA has a profound interest in ensuring that this Court—which has not yet defined this TVPRA element or others—adheres to the ordinary meaning of the TVPRA's text.

## INTRODUCTION

The TVPRA currently provides a civil cause of action for "a victim of a violation of this chapter" against "the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)[.]" 18 U.S.C. § 1595(a). In this case, Appellants seek to hold Rubicon Resources, LLC, liable for participating in a venture with Phatthana, a Thai seafood corporation that allegedly subjected them to forced labor.

The district court initially granted summary judgment in favor of Rubicon, holding that there was no evidence that (1) Rubicon participated in a venture with Phatthana; (2) Rubicon knew or should have known

about Phatthana's alleged human trafficking; or (3) Rubicon benefitted from Phatthana's alleged trafficking. *Ratha v. Phatthana Seafood Co., Ltd.*, 2017 WL 8293174, at \*4–6 (C.D. Cal. Dec. 21, 2017). This Court affirmed on the third ground. *Ratha v. Phatthana Seafood Co., Ltd. (Ratha I)*, 26 F.4th 1029, 1044–45 (9th Cir. 2022). Congress then amended § 1595 to make actionable an "attempt" to benefit from participation in a venture, prompting Appellants to move for relief from judgment under Fed. R. Civ. P. 60(b)(6). The district court denied the motion, holding that the amendment was not retroactive and, even if it were, that the change in law would not affect the other two grounds for its decision. *Ratha v. Phatthana Seafood Co., Ltd.*, 2023 WL 2762044, at \*4–5 (C.D. Cal. Mar. 3, 2023). This Court affirmed on the retroactivity question. *Ratha v. Rubicon Resources, LLC (Ratha II)*, 111 F.4th 946, 969 (9th Cir. 2024). Judge Graber disagreed, and also noted that she would reverse the district court's ruling on the merits of the TVPRA claim. *Id.* at 976 n.5 (Graber, J., dissenting).

IFA takes no position on the retroactivity issue. But, should the Court reach the merits of the TVPRA claim, it should take the opportunity to conduct a text-driven analysis of the statute. In recent

years, district courts have been grappling with a flood of TVPRA participant claims seeking to hold hospitality companies (even including franchisors) liable for sex trafficking that occurs on their properties. Courts have sometimes failed to define the elements of the cause of action in accord with their ordinary meaning, tainting their subsequent efforts to apply those terms to the facts alleged. In these cases, hotels receive a rental fee (which courts deem to qualify as a knowing benefit) when they happen to rent a room to a criminal who is trafficking a victim (which courts say qualifies as participation in a venture). All that matters, therefore, is whether the hotel should have known that the criminal was trafficking the victim. This reads fundamental language out of § 1595(a) and thus significantly expands the scope of liability.

According to the district court's factual findings, this case, too, involves ordinary buyer-seller transactions and (at least an attempted) benefit flowing from those transactions; and it involves general, industry-wide knowledge, not plaintiff- or even venture-specific knowledge. Given the limited scope of this Court's review under Rule 60(b), it should not reach these merits questions. But if this Court were to address them, it

should confirm that, based on the TVPRA's plain text, participant liability does not attach in these circumstances.

## ARGUMENT

A person may be civilly liable under the TVPRA for "knowingly benefit[ing], or attempt[ing] or conspir[ing] to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a). Broken down into its logical order, that means that the plaintiff must establish that: (1) the defendant participated in a venture; (2) the venture engaged in an act in violation of the TVPRA; (3) the defendant knew or should have known that the venture violated the TVPRA; and (4) the defendant knowingly benefited from its participation in that venture.

"As usual" in statutory interpretation, the Court must interpret these "words consistent with their 'ordinary meaning . . . at the time Congress enacted the [TVPRA].'" *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). Some lower courts have unfortunately not performed this critical task. This failure has led courts to effectively read out key terms like

"venture" and "participation" from the statute, resulting in an expansion of liability that Congress did not intend.  This Court, should it reach the merits of the TVPRA claim, should join the Eleventh and D.C. Circuits in conducting a text-driven interpretation of the statute.

## I. UNDER ITS PLAIN MEANING, "PARTICIPATION IN A VENTURE" REQUIRES MORE THAN ORDINARY COMMERCIAL TRANSACTIONS.

As the Ninth Circuit has already confirmed, in a participant suit under § 1595(a), "the most important component is the *defendant*['s] own conduct—its 'participation in the venture.'"  *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1142 (9th Cir. 2022).  Thus, the first step is to define the term "venture" and identify the venture—and the second, to define the term "participation" and determine whether a defendant participated in the venture.  By defining these terms, and interpreting the evidence in light of those definitions, this Court will correct confusion among lower courts, many of which have held that parties on opposite sides of buyer-seller transactions have somehow participated in a venture.  But such transactions are not enough to constitute "participation in a venture" under its ordinary meaning.

**A.    To "Participate in a Venture," the Defendant Must Take Part in a Common Undertaking Involving Risk and Potential Profit.**

*First*, the Court should define the centerpiece of the participant claim: the "venture."  It is the venture that must have "engaged in an act in violation of this chapter," and it is the venture in which a defendant must participate.

A *venture* ordinarily is understood to be a risky undertaking in which the parties agree to pursue a common purpose.  One dictionary, for example, defines a venture as "[a]n undertaking that involves risk; esp., a speculative commercial enterprise."  *Venture*, Black's Law Dictionary (11th ed. 2019).  Another defines it as "[a]n enterprise of a business nature in which there is considerable risk of loss as well as chance of gain; a commercial speculation."  *Venture*, Oxford English Dictionary 520 (2d ed. 1989).  "[E]ach of these definitions [of 'venture'] requires an undertaking of some kind directed to some defined end."  *United States v. Afyare*, 632 F. App'x 272, 279 (6th Cir. 2016) (*per curiam*); *see also Boyle v. United States*, 556 U.S. 938, 946 (2009) ("That an 'enterprise' must have a *purpose* is apparent from the meaning of the term in ordinary usage, i.e., a '*venture*,' 'undertaking,' or 'project.'") (quoting Webster's

Third New International Dictionary 757 (1976) (emphasis added)); *F.A.A. v. Cooper*, 566 U.S. 284, 292 (2012) ("[I]t is a cardinal rule of statutory construction that, when Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken." (citations omitted)).

*Next*, the Court must explain what a defendant must do to *participate* in a venture. "Participation" is defined as "[a] taking part, association, or sharing (with others) in some action or matter." *Participation* (def. 2(b)), Oxford English Dictionary (2d ed. 1989); *see Participation*, Black's Law Dictionary (11th ed. 2019) ("[t]he act of taking part in something"). To participate in a venture, then, the defendant must act to further the common purpose of the risky undertaking.

The Supreme Court has embraced this understanding in the aiding-and-abetting context. To be deemed an "active participant" in a criminal offense, a defendant must (1) "decide[] to join in the criminal venture[] and share in its benefits" and (2) "tak[e] the requisite act" by which "he intends to facilitate that offense's commission." *Rosemond v. United States*, 572 U.S. 65, 76–78 (2014). The defendant must "'*participate in*

[*the venture*] as in something that he wishes to bring about' and 'seek by his action to make it succeed.'" *Id.* (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949)) (emphasis added).

Again, Congress embodied this understanding of participation in a venture in the TVPRA's criminal sex-trafficking provision. That provision defines "participation in a venture" in part as "knowingly assisting, supporting, or facilitating a violation of [§ 1591(a)(1)]." 18 U.S.C. § 1591(e)(4). Congress thus made clear that *participation* connotes intentional acts—assisting, supporting, and facilitating.[2] Here, too, Congress's decision to track the ordinary meaning of *participation* in a related provision confirms that this Court should give it its ordinary meaning in § 1595(a). *See Smith v. City of Jackson, Miss.* 544 U.S. 228,

---

[2] To be clear, courts have generally held that the § 1591(e)(4) definition does not apply in the context of § 1595(a). *See infra* Section II (explaining the level of knowledge required for participant liability); *infra* at 11–12 (explaining the difference between trafficking and non-trafficking ventures). But the definition at least remains probative insofar as it confirms that Congress embraced the ordinary meaning of *participation* standing alone to constitute intentional acts in furtherance of some purpose. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) ("Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.'" (citation omitted)).

233 (2005) ("[W]hen Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.").

Putting these two terms together, "participation in a venture" in § 1595(a) requires the defendant to "t[ake] part in a common undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021); *see Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024) ("participation in a venture" means "taking part or sharing in an enterprise or undertaking that involves danger, uncertainty, or risk, and potential gain").[3]

The "common undertaking or enterprise," meanwhile, can take different forms. A plaintiff might seek to establish that the defendant participated in a criminal venture, like a sex-trafficking or labor-trafficking venture. In that case, the plaintiff must show that the

---

[3] This understanding is reinforced by the well-known concept of a *joint venture*: an undertaking by multiple people bound together by "an express or implied agreement" and "a common purpose that the group intends to carry out." *Joint Venture*, Black's Law Dictionary (11th ed. 2019); *see also* Restatement (Second) of Torts § 491 cmt. c (Am. L. Inst. 1965) (same).

defendant took steps to carry out, assist, or facilitate the venture's unlawful purpose. A plaintiff might instead argue that the defendant participated in a non-criminal venture. The plaintiff must then show that the defendant took active steps to further that venture's purpose. And that venture—even if not expressly framed as a trafficking venture—must itself still "engage[] in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a).

## B. Without More, Parties to a Commercial Transaction Do Not Engage in a Common Undertaking.

The district court found that Rubicon's "business relationship with Phatthana . . . was limited to ordering seafood products from Phatthana's Songkhla factory." *Ratha v. Phatthana Seafood Co., Ltd.*, 2017 WL 8293174, at *2 (Dec. 21, 2017).[4]

---

[4] IFA takes no position on the disputes over the evidentiary record aired in the parties' briefs regarding Rubicon's relationship with Phatthana. IFA simply notes that in this posture, on a Rule 60(b) motion, it would be irregular for this Court to hold that the district court "abused its discretion" in weighing Rule 60(b) factors based on a purported fact dispute in a prior summary judgment order. *See United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (*en banc*) ("[W]e will affirm a district court's factual finding unless that finding is illogical, implausible, or without support in inferences that may be drawn from the record."); *see also, e.g.*, *SEC v. Berkeley Healthcare Dynamics, LLC*, 2022 WL 42807, at *2 (9th Cir. Jan. 5, 2022) (noting that a "dissatisfaction with [a] factual finding" in an earlier "summary

**1.** A typical buyer-seller relationship of this sort, without more, does not constitute taking part in a common undertaking involving risk and potential profit. That is, the fact that two parties engage in commercial transactions does not show that they are pursuing any shared goal. This remains true even if one of the parties is involved in criminal activities. Two circuit decisions—neither cited in Appellants' *en banc* petition—prove the point.

In *Doe v. Apple*, the D.C. Circuit held that technology companies did not participate in a venture with their cobalt suppliers, who "facilitate[d] forced labor." 96 F.4th at 415. The parties were simply "on opposite sides of an arms-length transaction"—the suppliers "sell cobalt" while the companies "buy cobalt." *Id.* The companies did not "own [an] interest in their suppliers" or "share in [their] profits and risks." *Id.* The transaction, standing alone, did not provide "a factual basis to infer a common purpose," meaning that the plaintiffs failed to establish a "shared enterprise" between the parties. *Id.* at 415–16. The court

judgment order" "is not a basis for relief from judgment under Rule 60(b)(6)"). Indeed, "an appeal from denial of Rule 60(b) relief does not bring up the underlying judgment for review." *Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 263 n.7 (1978).

concluded that "purchasing a commodity, without more, is not 'participation in a venture' with the seller.  *Id.* at 416; *see also id.* at 415 ("[S]omething more than engaging in an ordinary buyer-seller transaction is required to establish 'participation.'").

And in *Red Roof Inns*, the Eleventh Circuit similarly concluded that hotel companies did not participate in "sex trafficking ventures" simply by renting rooms to traffickers.  21 F.4th at 726.  To support their venture theory, the plaintiffs claimed that the hotels rented rooms to those that they knew or should have known were engaged in trafficking.  *Id.* at 726–27.  But that was not enough to show that the hotels "took part in the common undertaking of sex trafficking" with the traffickers.  *Id.* at 726.  "[A]llegations of financial benefit [from renting rooms] alone are not sufficient to establish that the defendant participated in a sex trafficking venture and observing signs of sex trafficking 'is not the same as participating in it.'"  *K.H. v. Riti, Inc.*, 2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024) (quoting *Red Roof Inns*, 21 F.4th at 726).

In short, a party to a commercial transaction does not, without more, participate in a venture with the counterparty—whether framed

as a business venture or a criminal one. The transaction, standing alone, does not establish that the parties shared any common goal.

**2.** Appellants point to several circuit decisions that have supposedly "found [that] a wide range of conduct constitutes 'participating in a venture.'" Appellants Br. 40. But these decisions, though they do not invoke the phrase's ordinary meaning, are nevertheless consistent with it. And none holds that ordinary commercial transactions are sufficient.

Start with *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017). Contrary to Appellants' assertion, the defendant motel operators did not participate in a venture with the plaintiff's trafficker merely by "renting [a] motel room" or "receiving money as rent." Appellants Br. 41, 44. Rather, the plaintiff's trafficker "had prior commercial dealings with the [operators], which the parties wished to reinstate for profit"—*i.e.*, "the gainful business" of using a "sex slave" to "supply[] sexual gratification"— as evidenced by their "exchanging high-fives in the motel's parking lot while speaking about 'getting this thing going again.'" *Ricchio*, 853 F.3d at 555. The operators would "visit the rented quarters to demand further payment," all while witnessing the plaintiff's "obvious physical deterioration" and "nonchalantly ignor[ing] [the plaintiff's] plea for help

in escaping." *Id.* Under these circumstances, it was "inferable" that the operators "associat[ed] with [the trafficker] in an effort to force [the plaintiff] to serve their business objective." *Id.* In other words, the parties "acknowledged the illegal purpose of the[ir] relationship" and "shared in the benefits and the risk." *Apple*, 96 F.4th at 415 (discussing *Ricchio*).

In *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023), the plaintiff did not allege that Salesforce simply "s[old] software solutions" to Backpage. Appellants Br. 44. Instead, the plaintiff alleged that Salesforce, pursuant to a series of contracts, delivered personalized tools to "facilitate[] the growth" of Backpage, a business that she alleged trafficked her and many others. *G.G.*, 76 F.4th at 549, 560. For instance, Salesforce supplied Backpage with "targeted solutions addressed to the needs of [its] business," assessed its "operational needs," and provided "active, ongoing support" "tailored" to those needs. *Id.* at 560. Indeed, the court confirmed that "'participation' requires more than providing off-the-shelf . . . products or services." *Id.* at 562.

The defendants in *Bistline v. Parker*, 918 F.3d 849 (10th Cir. 2019), participated in a venture under 18 U.S.C. § 1589(b) not by "providing

legal services," Appellants Br. 44, but by allegedly creating a "scheme . . . designed *expressly* for the purpose of facilitating [forced labor] and also ensuring that [they] would personally reap ample benefits therefrom," 918 F.3d at 874–75. Finally, in *Burrell v. Staff*, 60 F.4th 25 (3d Cir. 2023), a county municipal authority signed a contract with a private corporation to provide it with nearly-free prison labor. *Id.* at 37–40. The two entities allegedly agreed to "share the profits earned by exploiting plaintiffs' . . . nearly free labor." *Id.* at 38. The court thus held that they participated in a venture under § 1589(b) not just by virtue of the fact that they were "parties to a contract." Appellants Br. 40.[5]

To the extent Rubicon's relationship with Phatthana consisted of merely buying shrimp from its factory, as the district court found, the two entities did not "participate in a venture" for purposes of § 1595(a). This

---

[5] Appellants also claim that the D.C. Circuit held that "acting as a financial intermediary . . . constitutes participation." Appellants Br. 41 (citing *Rodriguez v. Pan Am. Health Org.*, 29 F.4th 706, 710, 717 (D.C. Cir. 2022)). Not so. The court held that "PAHO's [alleged] conduct of 'moving money for a fee' constituted 'commercial activity carried on in the United States,'" such that PAHO was not immune under the Foreign Sovereign Immunities Act's "commercial activity exception." 29 F.4th at 711, 717; *see Apple*, 96 F.4th at 415 (mere "transactions" not enough).

Court should make clear that an ordinary commercial transaction, alone, is insufficient to establish 'participation in a venture' under the TVPRA.

### C. Lower Courts Have Misconstrued This Element.

Some district courts, both in this Circuit and others, have analyzed this element without properly defining "participation in a venture." This problem is particularly prevalent in the hospitality context, where, as here, the relevant transactions are ordinary commercial transactions. Courts frequently hold that plaintiffs can establish a hotel's "participation in a venture" by "showing a continuous business relationship between a defendant hotel and a sex trafficker where the defendant rented rooms to people it knew or should have known were engaged in sex trafficking." *E.g.*, *C.M.S. v. Wyndham Hotels & Resorts, Inc.*, 2025 WL 824369, at *7 (S.D. Cal. Mar. 14, 2025) (quotation omitted). This standard subjects hotels to participant liability for engaging in nothing more than ordinary, arms-length transactions with traffickers— which does not constitute "participation in a venture" under its ordinary meaning. Here, Appellants likewise argue that Rubicon had a "continuous business relationship" with their trafficker, Phatthana. Reply Br. 16.

This "continuous business relationship" language traces back to an early hotel TVPRA case, *M.A. v. Wyndham Hotels & Resorts*, 425 F. Supp. 3d 959 (S.D. Ohio 2019). There, in assessing whether the hotels themselves could be liable under § 1595(a), the court never considered the ordinary meaning of "participation in a venture." Instead, the court deemed it sufficient for a plaintiff to allege "a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *Id.* at 970. And the court concluded that the hotels "participated in a venture" simply by "repeatedly rent[ing] rooms" to the trafficker. *Id.* at 970–71.

The *M.A.* court's fundamental error is that, by failing to identify and follow the ordinary meaning of "participation in a venture," the court never asked whether the hotels and the trafficker took part in a *common* undertaking or enterprise. Had the court done so, the result arguably would have been different because the plaintiff in *M.A.* alleged the hotels' participation in a *sex-trafficking* venture, *id.* at 971—yet there was no serious claim that the hotels themselves "took part in the common undertaking of sex trafficking with . . . sex traffickers," *Red Roof Inns*, 21

19

F.4th at 726. But even if the plaintiff had not labeled the alleged venture a sex-trafficking venture, the result should still have been different had the court asked the right question. A room rental—an ordinary transaction between a hotel and its guest—does not establish that the parties took part in *any* common undertaking or shared *any* common purpose. *See Apple*, 96 F.4th at 415. Perhaps for these reasons, an Eleventh Circuit panel recently repudiated the "continuous business relationship" standard that Appellants urge here, explaining that "this test is not set out in the statute or described in our caselaw." *K.H.*, 2024 WL 505063, at *2 n.5.[6]

Despite the decision's flaws, district courts have repeatedly followed *M.A.*'s framework. *See, e.g.*, *S.C. v. Hilton Franchise Holding LLC*, 2024 WL 4773981, at *4 (D. Nev. Nov. 12, 2024) ("[Plaintiff] . . .

---

[6] In a different context, the Seventh Circuit cited the "continuous business relationship" test after explaining that "participation" requires "culpable assistance to a wrongdoer" and "a desire to promote the wrongful venture's success." *G.G.*, 76 F.4th at 559. The court did not attempt to define "participation in a venture" according to its ordinary meaning. *See id.* But the court opined that the plaintiffs' allegations would satisfy the Eleventh Circuit's test. *See id.* at 562 ("Salesforce 'took part in' the expansion and success of Backpage—a 'common undertaking or enterprise involving risk and potential profit.'") (quoting *Red Roof Inns*, 21 F.4th at 725).

plausibly alleges that the Hampton Inn participated in a venture by undertaking a course of repeat business with [her trafficker], renting him rooms twice per week on average for a year."); *J.B. v. G6 Hosp., LLC*, 2021 WL 4079207, at *15 (N.D. Cal. Sept. 8, 2021) ("Plaintiff alleges a pattern of conduct between Holiday Motel and [her] trafficker" based on the trafficker's repeated room rentals); *J.C. v. Choice Hotels Int'l*, 2020 WL 6318707, at *7 (N.D. Cal. Oct. 28, 2020) (Plaintiff "plausibly pleads that defendants directly 'participated in a venture' by providing lodging to people it [sic] knew or should have known were engaged in her sex trafficking.") (emphasis omitted).  Some courts have recognized that "participation in a venture" requires a common undertaking or enterprise, but have held that plaintiffs can make the requisite showing by establishing a "continuous business relationship"—*i.e.*, a hotel repeatedly renting rooms to a trafficker.  *See, e.g.*, *C.M.S.*, 2025 WL 824369, at *7–8; *Doe v. Wyndham Hotels & Resorts*, 2025 WL 85831, at *5–6 (E.D. Cal. Jan. 7, 2025); *J.M. v. Choice Hotels Int'l, Inc.*, 2023 WL 3456619, at *3–4 (E.D. Cal. May 15, 2023).

If a "continuous business relationship" simply means a series of ordinary transactions, it is not equivalent to a common undertaking or

enterprise with a shared purpose.  By clarifying the plain meaning of "participation in a venture," and explaining that ordinary commercial transactions are insufficient, this Court will help alleviate the confusion in the lower courts.

## II.  THE DEFENDANT MUST HAVE ACTUAL OR CONSTRUCTIVE KNOWLEDGE THAT A PARTICULAR VENTURE VIOLATED THE TVPRA.

If a defendant has indeed participated in an alleged venture, the next question is whether the defendant "knew or should have known [that such venture] has engaged in an act in violation of this chapter."  18 U.S.C. § 1595(a).  That question, in turn, has two subparts—one concerning the actions of the venture, and the other relating to the mental state of the defendant relative to those actions.

**1.**  The first step is to confirm an underlying assumption of this language in the statute: namely, that the alleged venture *has*, in fact, "engaged in an act in violation of this chapter."  *Id.*; *see G.G.*, 76 F.4th at 553 (the plaintiff must establish "the existence of a venture that violated [the TVPRA]"); *Red Roof Inns*, 21 F.4th at 725 (same).  To prove up that assumption, therefore, a plaintiff must show that the alleged venture actually "engaged in an act in violation of this chapter."  18

U.S.C. § 1595(a).  The referenced chapter is Chapter 77 of Title 18 of the United States Code, which contains various provisions targeting, among other things, slavery, forced labor, and sex trafficking.  In this case, one of the underlying criminal allegations is forced labor in violation of 18 U.S.C. § 1589.  Thus, the venture must have, for instance, "knowingly provide[d] or obtain[ed] the labor or services of a person by . . . means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person."  18 U.S.C. § 1589(a)(1).

Some district courts have neglected this element.  In one case, for instance, the court suggested that a defendant somehow participated in a "commercial venture" with itself by operating its hotel-casino business.  *C.C. v. Rashid*, 2024 WL 5200543, at *9–10 (D. Nev. Dec. 20, 2024).  But the court disagreed that the defendant itself criminally trafficked her under § 1591 (the TVPRA's criminal sex-trafficking provision).  *Id.* at *11.  The court's order thus failed to appreciate that the *venture itself* must violate the TVPRA—that is, that it must perpetrate the plaintiff's trafficking.  Likewise, another court held that a hotel franchisor and its franchisee allegedly participated in a "commercial venture" that violated the TVPRA—yet it did not even discuss whether the franchisor or

franchisee perpetrated the plaintiff's trafficking.  *Doe v. Scottsdale Inns LLC*, 2024 WL 3494375, at \*4–5 (D. Ariz. July 22, 2024).

Given this confusion, the Court should clarify that any venture must itself violate the TVPRA.

**2.**  The next inquiry is scienter.  The court must ask whether the defendant "knew or should have known" that the alleged venture in which it participated engaged in "an act in violation of this chapter."  18 U.S.C. § 1595(a).  The most natural reading of "knew or should have known" is that it requires a defendant's actual or constructive knowledge.  "Knew" bespeaks actual knowledge—that is, "[d]irect and clear knowledge." *Knowledge*, Black's Law Dictionary (11th ed. 2019).  And "should have known" means "[k]nowledge that one using reasonable care or diligence should have." *Id.*; *see Red Roof Inns*, 21 F.4th at 725 (adopting same definitions).

Thus, in a forced-labor case, the defendant must actually or constructively know that the alleged venture in which it participated "knowingly provide[d] or obtain[ed]" the victim's "labor or services" through "force" or "physical restraint."  18 U.S.C. § 1589(a).

In the district court, Appellants argued that Rubicon "knew or should have known that Phatthana allegedly engaged in force labor based," in large part, "on general reports about human trafficking in Thailand." 2017 WL 8293174, at *5.[7] The district court rejected this evidence, explaining that Rubicon's knowledge of the venture's forced labor "cannot be based solely" on these "general reports." *Id.*

The court was right to do so. The statute requires the defendant to have knowledge that the "venture" of which it was a part "engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). And that particular venture must be the one that harmed the plaintiff, who is authorized to sue under § 1595 by virtue of her status as a "victim of a violation of this chapter." *Id.*; *see Spokeo v. Robins*, 578 U.S. 330, 338 (2016) (a plaintiff has standing only if she has suffered an injury "that is fairly traceable to the challenged conduct of the defendant").

General knowledge of a trafficking problem in a particular industry, therefore, does not establish § 1595(a)'s knowledge

---

[7] At summary judgment, Appellants also cited certain "reports and letters by advocacy groups" regarding the factory, but the district court found that these, too, were "conflicting and sometime [sic] unsubstantiated general reports." *Id.* at *5.

requirement. This Court held as much in its first *Ratha* decision. *Ratha I*, 26 F.4th at 1046 ("[T]hat Wales should have known of labor abuses in the Thai shrimp industry *generally*" does not "support an inference that Wales knew or should have known of the specifically alleged TVPRA violations at the Songkhla factory between 2010 and 2012."). Other circuits agree with that same basic principle—*i.e.*, industry knowledge does not suffice. *See, e.g.*, *Red Roof Inns*, 21 F.4th at 725 (requiring plaintiff-specific knowledge); *G.G.*, 76 F.4th at 557 (requiring venture-specific knowledge but noting that, in some cases, "knowledge of the specific victim goes hand-in-glove with knowledge of the 'venture'"); *id.* at 568–69 (Kirsch, J., dissenting) (explaining that plaintiff-specific knowledge is always required).

Most courts have acknowledged the same principle in the hospitality context as well. *Red Roof Inns*, 21 F.4th at 725; *see, e.g.*, *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) ("[K]nowledge or willful blindness of a general sex trafficking problem in low-budget lodgings does not satisfy the *mens rea* requirements of the TVPRA."); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938 (D. Or. 2020) (same); *see also G.G.*, 76 F.4th at 557 (agreeing that

knowledge of "sporadic sex trafficking in low-budget hotels generally" does not "show constructive knowledge of a particular sex trafficking venture" (citing *S.J.*, 473 F. Supp. 3d at 154)).

Given the district court's prior factual finding that Appellants' evidence consists solely of general reports, Appellants cannot establish that Rubicon knew or should have known that its supposed venture with Phatthana violated the TVPRA.

## III. THE DEFENDANT MUST "KNOWINGLY BENEFIT[]" ON ACCOUNT OF ITS PARTICIPATION IN A VENTURE THAT VIOLATED THE TVPRA.

If the defendant participated in a venture and knew or should have known that the venture engaged in a violation of the TVPRA, the final question is whether the defendant "knowingly benefit[ed], or attempt[ed] or conspire[d] to benefit, financially or by receiving anything of value[,] from" that participation. 18 U.S.C. § 1595(a). The word "knowing" means "[h]aving or showing awareness or understanding" or "deliberate; conscious." *Knowing*, Black's Law Dictionary (11th ed. 2019); *see also Knowingly*, Black's Law Dictionary (11th ed. 2019). And the word "from" connotes a causal relationship. *See, e.g.*, *From* (def. 14), Oxford English Dictionary (2d ed. 1989) ("[d]enoting ground, reason, cause, or motive: [b]ecause of, on account of, owing to, as a result of, through").

The best understanding of the "knowingly benefits . . . from" element, therefore, is that a defendant must know all of the circumstances underlying satisfaction of the § 1595(a) elements above— that is, that the defendant participated in a venture that it knew or should have known engaged in a TVPRA violation—and have received (or attempted to receive) a benefit that the defendant knows to be *tied to its participation* in the alleged venture. *See Red Roof Inns*, 21 F.4th at 724 (the plaintiff must establish that "the defendant knew it was receiving some value *from participating in the alleged venture*") (emphasis added). Indeed, if the rule were otherwise, it would read out the words "from participation in a venture" from the statute. The statute would instead have to say that the defendant "knew or should have known about an act in violation of this chapter, and knowingly benefited (or attempted to benefit) therefrom."

In the hospitality context, district courts have incorrectly held that the "knowingly benefits" element "merely requires that [the] [d]efendant knowingly receive a financial benefit"—and "the rental of a hotel room" or "royalties from that rental" qualifies as such. *A.B.*, 484 F. Supp. 3d at 936 (collecting cases). But these courts fail to recognize that this element

does not appear in the statute in the abstract. It is not enough for a defendant to receive a financial benefit; instead, the defendant must knowingly benefit *on account of* its participation in an alleged venture. And a hotel's room rental revenue typically results not from a common undertaking with a trafficker, but rather from at most an arms-length commercial transaction.

The same is true in this case. To the extent that Rubicon's attempted benefit resulted from its buyer-seller transactions with Phatthana, rather than any shared enterprise, there was no attempt to knowingly benefit *from* participation in a venture. Thus, even if 1595(a)'s attempted benefit amendment is retroactive, the statute would not support Appellants' construction of this element.

## CONCLUSION

For the foregoing reasons, if the Court addresses the merits of the § 1595(a) claim under the TVPRA, IFA urges the Court to affirm.

Respectfully submitted,

/s/ Andrew J. Clopton

Julia E. Fine
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
Telephone: 202-879-3635
jfine@jonesday.com

Andrew J. Clopton
JONES DAY
150 W. Jefferson, Suite 2100
Detroit, MI 48226-4438
Telephone: 313-230-7902
aclopton@jonesday.com

*Counsel for* Amicus Curiae *International Franchise Association*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with (1) the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and Ninth Circuit Rule 29-2(c)(3) because, as calculated by Microsoft Word 2024, it contains 6,029 words, excluding the items exempted by Federal Rule of Appellate Procedure 32(f); and (2) the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2024 in a 14-point Century Schoolbook font.

Dated: April 8, 2025

*/s/ Andrew J. Clopton*
Andrew J. Clopton

*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2025, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: April 8, 2025

/s/ *Andrew J. Clopton*
Andrew J. Clopton

*Counsel for Amicus Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-55299

I am the attorney or self-represented party.

**This brief contains** | 6,029 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

　☐ it is a joint brief submitted by separately represented parties.
　☐ a party or parties are filing a single brief in response to multiple briefs.
　☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____ .

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Andrew J. Clopton | **Date** | 04/08/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*